ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Papa, Inc.,<br><br>                    Defendants. | Case No: 3:21-cv-06326-RS<br><br>**DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**<br><br>TAC Filed: 9/14/2022<br>Trial Date:        Not set |

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  PROCEDURAL AND FACTUAL BACKGROUND......................................................3

    A.  Papa's Business Operations. ..........................................................................3

    B.  Papa Classifies Pals As Independent Contractors And Treats Them Like It.....................................................................................................................4

    C.  Papa Suggests That Pals Follow Its Visit Standards, But In Practice, Does Not Enforce Most Of Them. ...........................................................................5

    D.  Pals Choose What Support To Provide And When, Where, And How To Provide It....................................................................................................6

    E.  Pals Choose When and Whether To Break For Meals And Rest Periods; Papa Never Impedes Or Discourages Pals' Rights To Control Their Schedules. ...................................................................................................8

    F.  Plaintiffs' Experiences Differ From Other Pals....................................................8

III.  LEGAL STANDARD..........................................................................................10

IV.  THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR CLASS CERTIFICATION. .............................................................................................11

    A.  Plaintiffs Are Neither Typical Of The Class Nor Adequate Representatives. ............................................................................................11

    B.  Individual Issues Predominate The Minimum Wage and Overtime Subclass........................................................................................................13

    C.  Individual Issues Predominate The Meal Period Subclass. .................................16

        1.  Papa has a practice to "provide" meal periods; that it has no written policy reflecting the same proves nothing. ............................................16

        2.  The Donohue presumption creates myriad liability questions under these facts..................................................................................19

    D.  Individual Issues Predominate The Rest Period Subclass. .................................21

    E.  Individual Issues Predominate The Expenses Subclass......................................22

    F.  Individual Issues Will Predominate Damages Calculations. .............................25

    G.  Plaintiffs' Derivative Claims Cannot Be Certified Either. .................................27

    H.  Class Treatment Is Not Superior Under These Facts.........................................28

V.  CONCLUSION.................................................................................................29

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alberts v. Aurora Behav. Health Care*,
241 Cal. App. 4th 388 (2015) ........................................................................ 20

*In re: AutoZone, Inc.*,
2016 WL 6834138 (N.D. Cal. Nov. 21, 2016) ................................................. 14

*Avilez v. Pinkerton Gov't Servs., Inc.*,
596 F. App'x. 579 (9th Cir. 2015) .................................................................. 12

*Bowerman v. Field Asset Services, Inc.*,
60 F.4th 459 (9th Cir. 2023) .................................................................... 10, 25

*Briggs v. OS Rest. Servs., LLC*,
2020 WL 6260001 (C.D. Cal. Aug. 26, 2020) ................................................. 23

*Brinker Rest. Corp. v. Superior Ct.*,
53 Cal. 4th 1004 (2012) ...................................................... 16, 17, 19, 21

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) ................................................. 12

*Castillo v. Bank of America National Ass'n*,
2019 WL 3818954 (C.D. Cal. July 16, 2019) ............................................ 13, 27

*Dilts v. Penske Logistics, LLC*,
267 F.R.D. 625 (S.D. Cal. 2010) .................................................................. 21

*Donohue v. AMN Servs., LLC*,
11 Cal. 5th 58 (2021) ............................................................................ 19, 20

*Duran v. U.S. Bank Natl. Assn.*,
59 Cal. 4th 1 (2014) ..................................................................................... 1

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................................ 13

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ................................................................. 11, 12

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
42 Cal. 4th 554 (2007) ................................................................................ 24

*Grissom v. Vons Companies, Inc.*,
1 Cal. App. 4th 52 (1991) ............................................................................ 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 12

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........................................................................ 12

Case No.: 3:21-cv-06326-RS

**DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**

*Huerta v. CSI Elec. Contractors*,
  15 Cal. 5th 908 (2024) ................................................................................................ 16

*James v. Uber Techs. Inc.*,
  338 F.R.D. 123 (N.D. Cal. 2021) .............................................................................. 24

*Johnson v. Serenity Transp., Inc.*,
  2018 WL 3646540 (N.D. Cal. Aug. 1, 2018) .......................................................... 24

Lawson v. PPG Architectural Finishes, Inc., No. SACV1800705AGJPRX, 2019
  WL 3308827 (C.D. Cal. June 21, 2019) ............................................................ 22, 23

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) ..................................................................................... 10

*Marsh v. First Bank of Delaware*,
  2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ............................................................. 12

*Morillion v. Royal Packing Co.*,
  22 Cal 4th 575 (2000) ................................................................................................ 15

*Norman v. Arcs Equities Corp.*,
  72 F.R.D. 502 (D.C.N.Y. 1976) ........................................................................... 12, 13

*Ordonez v. Radio Shack, Inc.*,
  2013 WL 210223 (C.D. Cal. Jan. 17, 2013) .......................................................... 14

*Roman v. Jan-Pro Fran. Intl., Inc.*,
  342 F.R.D. 274 (N.D. Cal. 2022) .................................................................. 16, 17, 21

*Soares v. Flowers Foods, Inc.*,
  320 F.R.D. 464 (N.D. Cal. 2017) .............................................................................. 11

*Stuart v. RadioShack Corp.*,
  641 F. Supp. 2d 901 (N.D. Cal. 2009) ..................................................................... 22

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .................................................................................................... 11

*Valencia v. VF Outdoor, LLC*,
  2022 WL 4397084 (E.D. Cal. Sept. 23, 2022) .................................................. 13, 17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................. 10, 11

*Washington v. Joe's Crab Shack*,
  271 F.R.D. 629 (N.D. Cal. 2010) .............................................................................. 22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  268 F.R.D. 604 (N.D. Cal. 2010) .............................................................................. 21

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................................... 28

**Statutes**

Cal. Lab. Code § 512 .................................................................................................... 16

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Cal. Lab. Code § 2802 ......................................................................................................... 22, 24

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................................... 25

Fed. R. Civ. P. 23(a) ................................................................................................................. 10

Fed. R. Civ. P. 23(a)(3) ............................................................................................................. 11

Fed. R. Civ. P. 23(a)(4) ............................................................................................................. 12

Fed. R. Civ. P. 23(b) ................................................................................................................. 10

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 11, 28

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................................... 28

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

ACTIVE 702496006v1

# I. INTRODUCTION

To hear Plaintiffs Jennifer Pardo and Evangeline Matthews ("Plaintiffs") tell it in their Motion for Class Certification ("Motion"), Defendant Papa Inc.'s ("Papa") liability — and therefore the question of certification in this case — "relies solely" on resolving one question: were they, and the 3,872 individuals they seek to represent (called, "Pals"), independent contractors or not?

Of course, this Court knows better, and there is a reason why even the California Supreme Court has acknowledged that misclassification cases are difficult, if not impossible, to litigate on a classwide basis.[1] That reason—a Russian doll of liability questions, the outermost of which addresses only whether common evidence will resolve the misclassification question and leaves unanswered whether common evidence resolves each underlying claim—is epitomized here. Certainly, even if the threshold misclassification question can be resolved with common evidence, individual issues will overwhelm each of Plaintiffs' underlying claims and the facts prove it:

First, Plaintiffs are not typical of the class. Both Plaintiffs offered false testimony in support of their claims, calling into question their adequacy class representatives. Besides, unlike 99.9% the class, Plaintiffs did not sign a class action waiver. Courts have consistently concluded that plaintiffs who are not subject to an arbitration clause with a class action waiver are not adequate representatives of putative class members that are. Class certification is improper for this reason alone.

Second, Plaintiffs' minimum wage and overtime claims are ill suited for class treatment. These claims rest on Plaintiffs' theory that Papa's Visit Standards policy *requires* Pals to perform work without pay. Ignoring for the moment that this policy didn't even exist until May of last year, the problem with Plaintiffs' theory is that they fail to offer any evidence that Papa consistently applied the Visit Standards policy in practice after it was created.  In fact, the available evidence proves Papa did not. Courts have been reluctant to certify classes in the

---

[1] *See Duran v. U.S. Bank Natl. Assn.*, 59 Cal. 4th 1, 27 (2014)

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

ACTIVE 702496006v1

absence of evidence that an unlawful policy consistently applied to putative class members.

Third, individual issues predominate Plaintiffs' meal period subclasses because their theories of liability—that (1) Papa lacks a written policy memorializing that it provides meal periods; and (2) the absence of time records raise a rebuttable presumption of liability—cannot be resolved with common proof. To start, the absence of a written policy to provide meal periods does <u>not</u> equate to common evidence that Papa uniformly failed to authorize and permit them. Besides, the evidence shows that Papa always "provides" meal periods because it neither maintains nor retains control over how, when, where, or how long Pals perform services. Plaintiffs offer absolutely no evidence to the contrary. What's more, the presumption of liability afforded by the absence of time records is just that, a presumption. Papa must still have the opportunity to show that it provided meal periods, but that Pals chose not to take them. Plaintiffs offer no plan to show how this proof can be managed on a classwide basis without turning into a trial for each individual Pal.

Fourth, Plaintiffs' rest period claims are individualized. Plaintiffs have no common evidence that Papa failed to provide rest periods or that Papa undermined, discouraged, or impeded Pals from taking them.

Fifth, no common evidence shows that Papa required Pals to incur any cellphone or internet expenses. The fact that interfacing with the Papa App requires an internet or active cellular connection cannot form the basis for class certification where Pals have access to and could have used free sources of internet. Resolution of this issue will therefore require this Court to address individualized inquiries including whether such expenses were reasonably necessary or incurred out of preference or convenience to Pals. And as to transportation and commute expenses, common evidence shows Papa paid Pals for those. This claim cannot proceed on a classwide basis.

Sixth, damages will be near impossible to calculate. Plaintiffs cannot rely on the App's data for their minimum wage and overtime claims because it is insufficient for a myriad reasons, including that it fails to track time spent outside the App and that Pals frequently fail to end visits or stop times. And their claim for expenses is far too individualized to manage damages

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

1  calculations in any common way. Damages will predominate any trial of the claims in this matter,

2  and Plaintiffs offer next to nothing in way of a trial plan to manage them.

3  Finally, a class action is not the superior method for managing litigation of the claims

4  alleged in this case. Plaintiffs' claims require each Pal to litigate numerous and substantial issues

5  to establish liability, and damages may prove impossible to calculate entirely.

6  There can be no doubt that class certification is improper, and this Court should deny

7  Plaintiffs' Motion accordingly.

8  **II.  PROCEDURAL AND FACTUAL BACKGROUND**

9  **A.  Papa's Business Operations.**

10  Papa is an application-based technology company that connects people in need (called,

11  "Members") with people that want to provide certain non-medical support tasks and

12  companionship. Declaration of Dani Bchara in Support of Defendant's Opposition to Class

13  Certification ("Bchara Decl.") ¶ 5. The marketplace is paid for by Medicare Advantage,

14  Medicaid, commercial health plans, and employee benefit plans (called "Clients"). *Id.* The

15  Clients offer to their constituents Papa and its Pal network as a supplemental companionship

16  service benefit. Papa provides the platform, or marketplace, to enable safe and effective

17  connections between Members and Pals. *Id.* Papa does not provide any services to Members, nor

18  does Papa have any privity of contract with Members. *Id.* Neither Papa, nor any of its subsidiaries

19  or affiliates, retains any control over the services that Pals ultimately perform. *Id.*

20  Papa does, however, provide services to its Clients, and the marketplace Papa powers is

21  merely a part of the overall value proposition that Papa sells to its Clients. *Id.* ¶ 6. Papa's market

22  differentiator is its set of developed technologies that enable Papa to (i) focus on specific goals

23  for specific Client populations, (ii) provide detailed analytics to Clients on their Members' care

24  needs, trends, and successful health care gap closures, and (iii) enabling Clients to collaborate

25  with other third parties to quickly and efficiently get their Members timely support. *Id.* Papa's

26  Clients rely on Papa's advanced technology to address health care gaps and social determinants

27  of health affecting their membership population more effectively. *Id.* This ultimately leads to

28  healthier Members and lower long-term health-plan costs. *Id.* Here's how Pal's fit in: they

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

provide companionship and support services directly to Members ("Services"). *Id.* ¶ 7. These Services have been shown to promote independence (by helping older adults age in place), reduce inequities (by reaching historically marginalized populations), cure loneliness (by connecting isolated adults with compassionate listeners), control health care costs (by supporting Members' access to preventative health care services, helping Members obtain their medications and ensuring they get to their medical appointments) and improve overall outcomes (by helping Members feel physically and mentally healthier). *Id.*

**B. Papa Classifies Pals As Independent Contractors And Treats Them Like It.**

An independent contractor agreement—previously called the End User License Agreement ("EULA") and currently called the Papa Pal Agreement, together the "Pal Agreement"—governs the relationship between Papa and Pals. Bchara Decl. ¶ 8. The Pal Agreement contains an arbitration clause, with a class waiver, and over 99.9% of the class have agreed to arbitrate all their disputes with Papa, including this one. *Id.*

The application process for Pals consists of a background check (which Papa is required by contract with its Clients, and by law in certain instances, to procure), agreeing to the Pal Agreement, attesting to various safety related commitments (to demonstrate that a Pal meets the qualifications to perform the Services in accordance with Clients' requests), and reviewing an orientation video that explains how to use the App and the like. *Id.* ¶ 9.

Once Pals are approved to use Papa's platform, Papa exercises little to no control over them. *Id.* ¶ 10. Pals are completely free to choose to accept any available visit presented in the App. *Id.* Papa tracks visits and mileage (if applicable) through the App for ease of payment purposes. *Id.* It also asks Pals to certify when the visit has been completed so Papa can pay the Pal. *Id.*

In California, Papa pays Pals an hourly rate—which can be adjusted based on demand—and transportation pay (which is pay for transporting Members as part of the Service provided) by the mile. *Id.* ¶ 11. Until March 16, 2023, Papa also paid Pals commute pay, for all travel expenses to and from a visit. *Id.* After that date, Papa increased the hourly rate and folded commute expense pay into the hourly rate such that currently, Papa intends the hourly rate to

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

compensate Pals for commute expenses and visit time. *Id.* Transportation pay is still paid separately. *Id.* Although the hourly rate has always exceeded the minimum wage, Pals are still free to negotiate different rates with Papa, and to accept or reject rates if they deem a rate unacceptable. *Id.* Pals can also contact Papa support for any pay issues. *Id.*

Papa does not require Pals to incur any expenses, and tools are not required to perform any Service. *Id.* ¶ 12. If a Pal wants to use Papa's App, they must be connected to the internet or a data plan, but Papa does not require Pals to purchase an internet or data plan and Pals are free to access free sources of internet to interface with the App, including at the library or retail establishments. *Id.* That said, Papa does have a practice of reimbursing Pals for reasonably necessary expenses, including for parking and tolls. *Id.*

### C. Papa Suggests That Pals Follow Its Visit Standards, But In Practice, Does Not Enforce Most Of Them.

Papa's Visit Standards policy—which didn't even exist until May 9, 2023— provides Pals with general common-sense guidelines to use before, during, and after visits. Bchara Decl. ¶ 13. The Visit Standards suggest that Pals, for example, review visit details, arrive on time and leave on time, be SAFE, and to avoid engaging in behaviors that are simply not professional (e.g., bringing others such as family members or pets to the visit, sharing Member information, using recreational drugs or alcohol while driving or otherwise as it could endanger the well-being of the Member or Pal, and engaging in criminal behavior). *Id.*

Except for the behaviors that Papa asks Pals to never engage in (e.g., behavior that could endanger the safety of the Pal or a Member), these guidelines are suggestions, and Papa does not enforce this policy in practice. *Id.* Significantly, Papa has no record of ever disciplining a Pal for failing to: confirm visits, call a Member, or complete or incorrectly completing visit feedback. *Id.* Consequently, not every Pal follows these guidelines:

- Plaintiff Matthews admitted that she did not consistently confirm visits by calling Members, and that she was never disciplined or removed from the platform for failing to do so. Ex. 3 to Declaration of Ellen Bronchetti in Support of Defendant's Opposition to Class Certification ("Bronchetti Decl."),

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Deposition of Evangeline Matthews ("Matthews Dep.") 211:8–22.

- Plaintiff Pardo provided no testimony that she was forced to follow the Visit Standards at all. Exhibit 2 to Bronchetti Decl., Deposition of Jennifer Pardo ("Pardo Dep.").

- Papa's declarants explained that whether they call Members to confirm visits depends on the type of relationship they have with the Member. *See* Ex. 4 to Bronchetti Decl., Declaration of Priscilla Hoyt ("Hoyt Decl.") ¶ 14; Ex. 8 to Bronchetti Decl., Declaration of Zerina Gacanovic ("Gacanovic Decl.") ¶ 13; Ex. 10 to Bronchetti Decl., Declaration of Jennifer Martin ("Martin Decl.") ¶ 12; Ex. 11 to Bronchetti Decl., Declaration of Marsi Haney ("Haney Decl.") ¶ 14; Ex. 13 to Bronchetti Decl., Declaration of Makayla Johnson ("Johnson Decl.") ¶ 13.

- Papa's declarants also understand that the Visit Standards are not requirements. *See* Martin Decl. ¶ 16; Haney Decl. ¶ 20; Johnson Decl. ¶ 19.

- And, while some Pals regularly choose to provide feedback after a visit, they understand they are not required to do so. *See* Martin Decl. ¶ 15; Haney Decl. ¶ 19; Johnson Decl. ¶ 18.

### D. <u>Pals Choose What Support To Provide And When, Where, And How To Provide It.</u>

Pals can choose to accept visits that align with their Services preference. Bchara Decl. ¶ 14. Services include, for example, providing companionship (such as playing board games, watching television or movies, discussing thoughts, feelings, news, and experiences), grocery shopping (including driving to and from the store, picking up grocery items from a list, putting away groceries), health reminders (including helping the Member schedule appointments and wellness checks, such as, reminding the Member to get their eyes checked), helping Members obtain their medications from the pharmacy, transportation (including taking the Member on trips to places of worship, doctor appointments, community centers, events, libraries, parks and trails, to visit friends and family), errand assistance (like driving to and from a store or pharmacy or

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

accompanying Members to places like the bank or salon), parental support (including engaging in fitness activities and games, going to the park, overseeing meal time), exercise assistance (such as attending exercise classes with the Member, encouraging the Member to join them on a walk, assisting the Member with exercise), technology help (including setting up personal devices, assisting Members with social media, showing Members how to stream services, assisting with telehealth appointments), pet help (including pet walking, pet companionship, filling water or food bowls, making grooming appointments), and house task assistance (such as light dusting, folding clothes, prepping meals, clearing the table, organizing, though nothing that would amount to work that a professional would perform). *Id.*

Pals also choose when, where, and how they would like to provide the Services. *Id.* ¶ 15. After signing up to be a Pal, the App works something like this: (1) if a Pal wants to work, Pals see a list of available visits in their area (visits are sorted by distance from the Pal and can be filtered by time and day of the week); (2) Pals can view details about visits, including the date, time, location, duration, and the Services the Member wants help with; (3) Pals find a visit that is a good fit—it fits their schedule, location requirements, and what Services they're willing to perform—then scroll to the bottom of the visit screen and tap 'Accept Visit'; (4) Pals confirm the visit, with a tap on the App; and (5) Pals either (a) for an in-person visit, start commute, then start and complete the visit; or (b) for a virtual visit, start and complete the visit. *Id.*

Because Papa's marketplace is driven by a Pal's choice, the Pal experience is unique and individual. Some Pals provide only one type of Service—say, in-person companionship or errand help—while others may offer to help a Member with all Services, provided the Member lives in a specific geographic area. *Id.* ¶ 16. Still other Pals only do virtual visits. *Id.*

Pals can choose to complete a single visit, several visits a day, or none at all, based entirely on their preferences. *Id.* ¶ 17. After all, Papa imposes no requirements to accept or complete visits. *Id.* Pals also choose how to complete the Services they provide. *Id.* Papa does not tell Pals how to be companions or carry out the Services, leaving the "how" completely in the Pal's hands. *Id*

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

### E. **Pals Choose When and Whether To Break For Meals And Rest Periods; Papa Never Impedes Or Discourages Pals' Rights To Control Their Schedules.**

Because Pals set their own visit schedules, they decide when to take meal or rest periods. Bchara Decl. ¶ 18. In creating their schedule, Pals may, for example, choose to offer a single Service a day, allowing for time for a meal or rest period after. *Id.* Alternatively, they may choose to schedule a longer Service, and take a meal or rest period during the Service, or to forgo one altogether. *Id.* Most Pals perform visits that are shorter than three and a half hours. *Id.* ¶ 19. The average visit completed in California is approximately 118 minutes; the average in-person visits is just over 2 hours, while the average virtual visit is 21 minutes. *Id.* But Pals can and do schedule longer visits, subject to a visit maximum that is set by the Member's health plan. *Id.* The current visit maximum is five hours, meaning that at least one Client permits visits of up to five hours, but many Clients only offer a maximum of two to four hours. *Id.* In every instance, Papa's practice is to leave it up to Pals to manage their meal and rest period needs. *Id.* Papa provides reasonable opportunity to take meal and rest periods because it never controls how Pals perform Services, and never impedes or discourages meal or rest periods while on a visit or otherwise. *Id.*

Significantly, the App encourages breaks between visits. It does so by preventing visits from being scheduled if within 15 minutes from the end of prior scheduled visit. *Id.* ¶ 21. Since visits are with few exceptions, offered at the half or full hour mark, Pals often see a forced 30-minute break between visits. *Id.*

### F. **Plaintiffs' Experiences Differ From Other Pals.**

Plaintiff Pardo signed up to be a Pal on October 20, 2020. Bchara Decl. ¶ 22. During the time she was using Papa's platform, which she has testified at her deposition was from 2020 until February 2022, she performed just five visits. *Id.*; Pardo Dep. at 67:13–25, 68:1–25, 69:1–18. These visits lasted between 5 and 20 minutes, and each was performed virtually. Bchara Decl. ¶ 22.

Plaintiff Matthews conducted 1,224 visits from June 17, 2020, to March 7, 2022, and all of them were virtual. *Id.* ¶ 23. The longest visit was 1 hour and 47 minutes and the shortest visit

was 5 minutes. *Id.* By her own testimony, she treated being a Pal as a telemarketer job, attempting to schedule and complete as many visits as possible in a day. *See* Matthews Dep. at 41:12–15 ("No different than a lot of telemarketing jobs that I do."); 47:20–23 ("[T]he [Papa] app was actually very, very advanced for, for telemarketing."); 50:25–51:2 ("I had a full day to make as many calls that I wanted to, which isn't uncommon in telemarketing, to do something like that."); 141:5–8 ("It's not uncommon in telemarketing to have a pool of calls to go through and pull calls out of them to make the phone calls."). That type of platform use stands in stark contrast to the way most Pals use the App. In fact, around 57% of the class never had a day with over 3.5 hours worked on a visit, 80% never had a day over 5 hours worked, and 96% never had a day with over 8 hours worked. Declaration of Alison Rose in Support of Defendant's Opposition to Class Certification ("Rose Decl.") at Exhibit 28.

Neither Plaintiff signed Papa's arbitration agreement. *Id.* ¶¶ 22–23. By contrast over 99% of the class they seek to represent did. *Id.* ¶ 8.

Both Plaintiffs offered false testimony that they were later forced to recant. Plaintiff Pardo testified that she spent time on standby and driving from one location to another. Declaration of Plaintiff Jennifer Pardo in Support of Motion for Class Certification ("Pardo Decl.") ¶ 13, ECF No. 86-2. In her deposition she admitted that she did neither:

- "Q: And did you use your car at all for any of the visits performed through Papa's platform? A: No." Pardo Dep. at 109:8–11.
- "Q: Did you actually have to drive anywhere to do your visits? A. No." Pardo Dep. at 115:2–4.
- "Q: And did you ever spend time on standby? A. No." Pardo Dep. at 115:5–8.

Plaintiff Matthews testified that she used her personal vehicle to travel to visits and incurred related expenses. Declaration of Plaintiff Evangeline Matthews in Support of Motion for Class Certification ("Matthews Decl.") ¶ 7, ECF No. 86-1. In her deposition, she admitted she performed only virtual visits and never drove at all:

- "Q: You never did a single in-person visit when you performed services for Papa; is that right? A: That's correct." Matthews Dep. at 180:10–13.

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

- "Q: Did you or did you not have to pay any additional expense for automobile insurance to work with Papa? A: Additional insurance? Q: Correct. A. No." Matthews Dep. at 191:7–14.

- "Q: Did you, you never had to use your personal vehicle to travel to and from visits with defendant's customers; is that correct? A: Yes, that's correct." Matthews Dep. at 196:10–15.

- "Q: So under perjury, the statement that you said, in addition, although I used my personal vehicle to travel to and from visits with defendant's customers, that's not a true statement, correct? . . . Q: Is it or is it not a true statement? A: Of Course, it's not a true, it's an error on my part, because I made a mistake when I read that. I don't know why – no, it's not a true statement." Matthews Dep. at 197:20–25, 198: 2–25.

## III.     LEGAL STANDARD

Class actions are the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify departing from this rule, Plaintiffs must satisfy the requirements of both Rule 23(a) and at least one requirement of Rule 23(b). *See Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 471 n.8 (9th Cir. 2023). In deciding whether to certify the class Plaintiffs seek to represent, four requirements are of utmost importance here: (1) commonality; (2) typicality; (3) predominance; and (4) superiority. *See Leyva v. Medline Indus.,* 716 F.3d 510, 512 (9th Cir. 2013).

The commonality requirement rests on the premise that "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation and internal quotation marks omitted). Claims are therefore only worthy of certification when they "depend upon a common contention," and that contention "must be of such a nature that it is capable of

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and internal quotation marks omitted).

To demonstrate typicality, Plaintiffs must show that their claims are typical of the class and that they will fairly and adequately represent absent class members. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(a)(3)).

Finally, Plaintiffs must show superiority, or that the class action device is the superior method to resolve their claims. *See Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal. 2017). In assessing this requirement, courts examine: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

## IV. THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.

Plaintiffs' Motion seeks to certify a class of all individuals who performed work for Papa in California and were classified as independent contractors from August 12, 2018 to the date of trial. The class includes eight subclasses relating to purported (1) unpaid minimum wages; (2) unpaid overtime wages; (3) unprovided meal breaks; (4) unprovided rest periods; (5) waiting time penalties; (6) inaccurate wage statements; and (7) unreimbursed expenses. For the reasons below, this Court should refuse to certify all of them.

### A. <u>Plaintiffs Are Neither Typical Of The Class Nor Adequate Representatives.</u>

To demonstrate typicality, Plaintiffs must show that their claims are typical of the class. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d at 1030 (citing Fed. R. Civ. P. 23(a)(3)). "The test of typicality is whether other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Plaintiffs must also be able to fairly and adequately protect the interests of the class. *See id.* at 1031 (citing Fed. R. Civ. P. 23(a)(4)). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs are not typical of the class of Pals they seek to represent for at least two reasons.

To demonstrate adequacy, Plaintiffs must show that they can fairly and adequately represent the interests of absent class members. *See Marsh v. First Bank of Delaware*, 2014 WL 554553, at *4 (N.D. Cal. Feb. 7, 2014). A class representative is "inadequa[te] [] where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.* at *9. Applying this rule, courts have found plaintiffs to be inadequate where they have offered untruthful testimony in the litigation directly relevant to the litigation. *See e.g.*, *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (D.C.N.Y. 1976).

Plaintiffs cannot satisfy either requirement. First, Plaintiffs did not sign an arbitration agreement whereas 99.9% of the class did. Bchara Decl. ¶¶ 8, 22–23. Courts in this Circuit have consistently held that a named plaintiff's failure to sign an arbitration agreement with a class action waiver forecloses that plaintiff from representing class members that have. *See Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *7 (N.D. Cal. Dec. 21, 2018). Such plaintiffs are not typical or adequate representatives because "those who signed such waivers have potential defenses that [the named plaintiff] would be unable to argue on their behalf." *Id.* (citing *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x. 579 (9th Cir. 2015).

Second, both Plaintiffs provided testimony that was at best mistaken—and at worst, a complete lie—concerning their experiences with Papa, calling into question whether they can fairly and adequately protect the interests of the class. *See supra* Part II.F. Although they later

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

recanted testimony that Papa proved was obviously false, Papa can reasonably suspect that Plaintiffs' other claims are untrue as well. They are inadequate representatives and class certification should be denied. *See Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (D.C.N.Y. 1976) (denying certification where plaintiff was both evasive and untruthful in his deposition).

Plaintiffs are neither typical of the class nor adequate representatives. Class certification should be denied for these reasons alone.

### B. Individual Issues Predominate The Minimum Wage and Overtime Subclass.

Plaintiffs seek to certify a minimum wage and overtime class based on the theory that Papa maintains a policy or practice—namely Papa's Visit Standards, and the fact that the Papa App interface requires Pals to schedule their own visits—that *requires* Pals to perform work that Papa does not compensate for.[2] This theory of recovery is not amenable to common proof.

First, there is no merit to Plaintiffs' claim that the Visit Standards serve as common proof that Papa required Pals to engage in work. "Where plaintiff[s] seek[] class certification on the theory that the defendant employed a uniform unlawful policy or practice—as is the case here—the Court must consider whether the plaintiff[s] provided substantial evidence that the entire class was subject to the same allegedly [unlawful] practice." *Valencia v. VF Outdoor, LLC*, 2022 WL 4397084, at *9 (E.D. Cal. Sept. 23, 2022) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). Plaintiffs have not done so here. Just the opposite. The evidence shows that Visit Standards did not uniformly apply to the class:

- Papa's Person Most Knowledgeable, Dani Bchara, made clear that the Visit Standards represent "best practice[s]" that Papa "encourage[s] . . . [Pals] to do," and noted that for most of the guidelines, there would be no consequence for failing to follow them. Ex. 1 to Bronchetti Decl., Deposition of Dani Bchara ("Bchara Dep.") 169:9–10, 171:7–8.

---

[2] Plaintiffs' overtime theory appears to be derivative of their minimum wage claim. Because this Court should not certify the minimum wage claim, it should not certify the overtime claim either. *See Castillo v. Bank of America National Ass'n*, 2019 WL 3818954, at *14 (C.D. Cal. July 16, 2019) (because class certification was not appropriate, there was no basis to certify the derivative wage statement class).

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

- Papa has no record of ever disciplining any Pal for failing to: (1) provide feedback in the Papa app following a visit, (2) confirm visits with Members, or (4) failing to call a Member. Bchara Decl. ¶ 13.

- Plaintiff Matthews' experience confirms that the Visit Standards did not uniformly apply in practice and that they were not enforced. In her own words, confirmation calls were "part of the new app, not the old app, and I stopped doing it towards to the end"; "I know I stopped making them. I don't know if it's something we agreed upon." Matthews Dep. at 215:19–24, 226:10–12. She also agreed that Papa never disciplined her for not following the Visit Standards. *Id.* at 224:14 – 226:18.

- Plaintiff Pardo offered no testimony that Papa applied the Visit Standards to her at all. *See generally*, Pardo Dep.

- Moreover, as explained by Papa's declarants, the Visit Standards are not requirements. *See* Martin Decl. ¶ 16; Haney Decl. ¶ 20; Johnson Decl. ¶ 19. Although Pals may provide feedback after a visit, declarants explained that they are not required to provide feedback and have not been disciplined by Papa for not doing so. *See* Martin Decl. ¶ 15; Haney Decl. ¶ 19; Johnson Decl. ¶ 18. Papa's declarants also explained that they do not always call Members to confirm visits in advance. *See* Hoyt Decl. ¶ 14; Gacanovic Decl. ¶ 13; Martin Decl. ¶ 12; Haney Decl. ¶ 14; Johnson Decl. ¶ 13.

Courts have denied class certification based on similar facts. *See In re: AutoZone, Inc.*, 2016 WL 6834138, at *1 (N.D. Cal. Nov. 21, 2016) (recognizing that courts routinely deny certification where there is not a consistently applied uniform policy); *Ordonez v. Radio Shack, Inc.*, 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) (in the face of competing evidence that an illegal policy actually applied in practice, plaintiff's testimony that an illegal policy may have existed was insufficient to support a finding that common issues predominated). This Court should deny class certification here too.

Second, Plaintiffs' argument that Papa requires them to schedule visits fares no better.

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Papa's entire platform operates on the principle of choice: Pals can choose to schedule a visit or to not schedule a visit at all. Bchara Decl. ¶ 17. Certainly, the data shows some Pals never made a single visit, and around 25% of Pals completed a single visit and then never scheduled a visit again. *See* Rose Decl. ¶ 36. Papa does not monitor or track the time Pals spend reviewing visit details and designing their schedules to fit their needs. Bchara Decl. ¶ 24. And Pals are free to — and in fact do—schedule visits during paid visit time. *See e.g.*, Ex. 6 to Bronchetti Decl., Declaration of Sandra Rodriguez ("Rodriguez Decl.") ("If a visit involves taking a member to a doctor appointment, for example, I am free to [*sic*] what I want to do. I can and do use this time for my own personal reasons, to take breaks, to use the restroom, to check my personal email, to schedule other visits with members, etc."). Since *when* to schedule visits is also up to the Pal, individualized issues will predominate whether Papa is liable for failing to pay for scheduling time—even if it were deemed compensable. This is because the Court would have to resolve whether the Pal was paid for scheduling because such time overlapped with a visit. Plaintiffs offer absolutely no common evidence to address these types of issues, proving that no common evidence can prove liability for these claims in one stroke.

Third, in the absence of substantial evidence that a consistently applied policy or practice required Pals to engage in recommended tasks, like confirming visits or providing visit feedback, individualized issues will predominate this claim. The reason: to determine whether Papa failed to pay minimum wage for all tasks it suffered and permitted Pals to work, this Court would have to assess whether (1) Pals were subject to Papa's control when carrying out such activities; or (2) Papa knowingly suffered or permitted such activities. *See Morillion v. Royal Packing Co.*, 22 Cal 4th 575, 587 (2000) (recognizing that while California law requires an employer to pay its employees minimum wage for all time employees are subject to the control of their employer, including time employees are knowingly suffered or permitted to work, "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative' of whether an activity is compensable.") Resolving these claims would therefore require this Court to answer questions like (1) did Papa have knowledge of this activity? (2) were Pals permitted to effectively use their time for their own purposes? (3)

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

did the activity benefit the Pal or Papa? and (4) did Papa enforce the activity through disciplinary measures? *See e.g.*, *Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908, 919 (2024) (listing the factors relevant to determining whether an employer has the requisite control for purposes of determining whether activity is compensable).

The facts in this case are therefore exactly like those in *Roman v. Jan-Pro Fran. Intl., Inc.*, 342 F.R.D. 274, 298 (N.D. Cal. 2022). There, as here, plaintiffs sued a defendant claiming that it misclassified them—and a class of other individuals. *Id.* There, as here, plaintiffs sought to certify a minimum wage class, based on the theory that the defendant had no policy to pay minimum wages to putative employees. *Id.* And there—as this Court should here—the court declined to certify the class, noting that (1) the absence of a policy did not equate to the existence of a uniformly applied unlawful policy; (2) the purported employer used a pay rate that exceeded the minimum wage throughout the class period; and (3) plaintiffs offered no common evidence—statistical or otherwise—to establish that the employer both knew work was occurring and failed to pay the minimum wage for that work. *Id.* Certification of Plaintiffs' minimum wage and overtime claims are improper for the same reasons.

Plaintiffs' minimum wage and overtime claims are ill suited for class treatment.

**C.    Individual Issues Predominate The Meal Period Subclass.**

Plaintiffs seek to certify their meal period subclass based on two theories of liability: (1) Papa had no written policy to provide meal periods; and (2) a rebuttable presumption of liability arises from Papa's failure to maintain time records showing whether meal periods were taken. Neither theory supports class treatment.

> **1.    *Papa has a practice to "provide" meal periods; that it has no written policy reflecting the same proves nothing.***

An employer satisfies its obligation to provide meal periods "if it relieves its employees of all duty, relinquishes control over their activities[,] [] permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1040 (2012). Significantly, there is no legal requirement that an employer maintain a *written* policy to provide meal breaks. *See* Cal.

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Lab. Code. § 512 (detailing the obligation to provide meal periods of 30 minutes); *Brinker*, 53 Cal. 4th at 1040 (explaining that "[a]n employer's duty with respect to meal breaks is an obligation to provide a meal period," and describing what is required to satisfy this obligation, which does not include a written policy to provide meal breaks). For this reason, "[t]he absence of a [] policy is not the same as an existing, unlawful policy. Such an absence . . . does not evidence an unlawful practice that makes defendant likely to have failed to [comply with the law]." *Roman v. Jan-Pro Fran. Intl., Inc.*, 342 F.R.D. 274, 298 (N.D. Cal. 2022).

And that is exactly why Plaintiffs' request to certify their meal period claims should fail here. Papa does not dispute that it has no written policy to provide meal breaks. But that failure does not equate to common evidence that Papa failed to "provide" meal breaks. Indeed, the only common evidence before this Court shows that Papa has a practice to provide meal breaks. Specifically, no Papa policy or practice impedes or discourages meal breaks. Bchara Decl. ¶ 19. Instead, the Papa App provides Pals with choices. Pals can choose whether to book a visit, when to book a visit, the duration of any visit, and how to perform any Services while on that visit. *Id.* ¶¶ 17–19. A Pal can decide to book multiple short visits, with time for meal breaks in between. *Id.* A Pal can choose to book a single longer visit, and to take a break while on that visit or after. *Id.* Or a Pal can choose not to book a visit at all. *Id.* And since a Pal's schedule is completely up to the Pal, Papa's platform offers Pals every opportunity to take an uninterrupted 30-minute meal period. *Id.* ¶ 19. Papa need not relinquish control over any Pal because Papa never retains any control over Pals in the first place. Pals have full flexibility and autonomy in managing their schedules. *Id.* ¶ 17. Pals are free to structure their days as they see fit and can choose when and how long to take a break. *Id.* ¶ 18.

Plaintiffs' theory of recovery is therefore nothing more than an attempt to argue that an employer's policy, consistently applied, is commonly suited for class treatment. But as discussed in Part III.A., *supra*, "where plaintiff[s] seek[] class certification on the theory that the defendant employed a uniform unlawful policy or practice—as is the case here—the Court must consider whether the plaintiff[s] provided substantial evidence that the entire class was subject to the same allegedly [*unlawful*] practice." *Valencia v. VF Outdoor, LLC*, 2022 WL 4397084, at *9 (E.D.

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Cal. Sept. 23, 2022). Plaintiffs have offered no evidence that the entire class was subject to the same unlawful practice — that Papa had a practice to deprive Pals of meal breaks. Rather, the evidence shows Papa had a practice to provide meal periods, and that it never interfered with Pals right to take them:

- Papa's Person Most Knowledgeable explained that Papa has a practice of authorizing and permitting meal periods. Bchara Decl. ¶ 19. Such breaks are permitted in Pals ability to create their own schedules and Pals ability to take reasonable breaks during visits, if needed. *Id.* Papa does not impede or discourage Pals from taking meal breaks. *Id.*

- The Papa application is set up in such a way that authorizes Pals to take an effectively 30-minute break in between visits.[3] Pals cannot schedule back-to-back visits because the application forces Pals to take a 15-minute break in between visits, and, with limited exceptions, visits are available on the half and full hour mark. Bchara Decl. ¶ 21. As explained by Papa's declarants, "[i]f I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one." Ex. 5 to Bronchetti Decl., Declaration of Kellie Hynds ("Hynds Decl.") ¶ 6; Ex. 7 to Bronchetti Decl., Declaration of Nancy Gonzales ("Gonzales Decl.") ¶ 7; Ex. 9 to Bronchetti Decl., Declaration of Cassie King ("King Decl."); ¶ 7; Gacanovic Decl. ¶ 6; Rodriguez Decl. ¶ 7; Hoyt Decl. ¶ 6; Johnson Decl. ¶ 7.

- Papa's declarants also testified that (1) they understand they can take an uninterrupted meal period of at least 30 minutes, (2) no Member has ever tried to interfere with them taking a meal period, and (3) no employee of Papa has interfered with them taking a meal period, nor told them they cannot take an

---

[3] While the technical rule on Papa's back-end requires a 15-minute buffer between visits, (i) nearly 90% of all visits are scheduled for the top or the bottom of the hour; and (ii) if an actual visit goes over the scheduled visit time (i.e., 11:01, the Pal would be prohibited from scheduling an impromptu visit on the quarter-hour). *See* Bchara Decl. ¶ 21; Rose Decl. ¶ 38. This is what creates the forced break Pals regularly see. Bchara Decl. ¶ 21.

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

uninterrupted 30-minute meal period. King Decl. ¶ 12; Gacanovic Decl. ¶ 10; Gonzales Decl. ¶ 11; Rodriguez ¶ 12; Hoyt Decl. ¶ 11; Johnson Decl. ¶ 10.

- Plaintiff Matthews also confirmed that Papa never told her she was not permitted to take a meal period. *See* Matthews Dep. at 121:16–23. When asked whether "anyone at Papa, either in writing or verbally, [told] [her] [she] [was] not permitted to take any breaks," she answered "[o]kay. Well, they didn't say it's not, in writing or in person, say you could not take a break, no, they did not." *Id.* As Plaintiff Matthews made her own schedule, she herself chose not to take breaks. *See id.* at 145:15–20, 146:6–7. She testified that taking breaks is "not [her] style," and that she "[does not] make money by getting up and getting something to eat." *Id.*

- And Plaintiff Pardo offered no testimony supporting that Papa prohibited, interfered, prevented, impeded, or discouraged her from taking meal breaks. In fact, she testified that she never complained to Papa that she missed a meal period. "Q: You never complained that you had a missed meal period; is that true? A: Yes, that's true." Pardo Dep. 120:24–25; 121:1.

Class certification of Plaintiffs' meal period claim should be denied based on this theory.

        **2.**       *The Donohue presumption creates myriad liability questions under these facts.*

Although courts presume that an employer is liable for failing to provide legally compliant meal periods when that employer's time records show missed, short, or late meal periods, this presumption does not result in "automatic liability" or mandate class certification. *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 75, 77 (2021) ("Applying the presumption does not mean that time records showing missed, short, or delayed meal periods result in 'automatic liability' for employers."); *see Brinker*, 53 Cal. 4th at 1053 (even if rebuttable presumption of liability on meal period claim exists, denial of class certification may still be appropriate). Instead, the presumption merely shifts the burden to an employer to show it (1) compensated employees for noncompliant meal periods; or (2) provided lawful meal periods but employees

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

ACTIVE 702496006v1

chose to work anyway. *See Donohue*, 11 Cal. 5th at 77. A party need not "definitively rebut the presumption" at certification; it need only show that the presumption cannot be addressed with common evidence. *See Alberts v. Aurora Behav. Health Care*, 241 Cal. App. 4th 388, 420 (2015).

Liability for failing to provide meal periods cannot be resolved classwide based on the complete absence of time records. To prove Papa provided a compliant meal period but that a particular Pal waived their right to take it, Papa must have the opportunity to inquire into whether: (1) a Pal preferred to take a meal period at a later time; (2) the Pal received any contrary instructions from anyone to not take a break; (3) the Pal has documentation that Papa or a Member interfered with a Pal's right to take a meal break during a visit; (4) a Pal's allegation that they didn't receive a break is consistent with their scheduling choices on any given day; (5) the Services each Pal provided were virtual or in person; (6) the scheduling preferences of each Pal; (7) the impact of the App's forced 30-minute break between each Service; and (8) whether the nature of the Services the Pal provided—which vary by each Pal and each visit—unduly interfered with the opportunity to take breaks. These questions predominate over the single question Plaintiffs seek to resolve by introducing the complete absence of records showing that Pals took meal breaks.

To be sure, several Pals have already testified that they were provided meal periods, and that Papa's data does not accurately reflect whether they took a meal break on any given day:

- "I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one." King Decl. ¶ 12.

- "I do not clock in and out for meal periods using the app. But I always take meal periods if I am completing a longer visit. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day." Gacanovic Decl. ¶ 11; *see also* Gonzales Decl. ¶ 14; *see also* Hynds Decl. ¶ 13; *see also* Rodriguez Decl. ¶ 14; *see also* Hoyt Decl. ¶ 12; *see also* Johnson Decl. ¶ 11.

Plaintiffs offer no plan to manage these individualized inquiries and it's not clear they can. Representative testimony, surveys, and statistical analysis are inappropriate tools because

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Papa's waiver defense operates "to extinguish [Papa's] liability [not] only to diminish the amount of a given plaintiff's recovery." *Brinker*, 53 Cal. 4th at 1054 (adopted "in full" by *Donohue*). As a result, courts that have used such evidence have generally done so where, unlike here, the employer's defense relates to trying and managing individualized issues relating to damages. *See e.g.*, *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) (permitting use of representative testimony where *liability* could be established through common evidence); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (refusing use of representative testimony where liability could not be established through common evidence). This case cannot be certified on the complete absence of time records either.

### D. Individual Issues Predominate The Rest Period Subclass.

Plaintiffs seek to certify their rest period claim based on the exact same theory as their meal period claim: that Papa did not have a written policy to provide rest periods. *See* Motion at 21. This theory fails for the same reasons asserted in Part III.B.1., *supra*: no law requires an employer to have a written policy to provide rest periods and the absence of a written policy does not equate to common evidence of an unlawful practice consistently applied. *See Roman v. Jan-Pro Fran. Intl., Inc.*, 342 F.R.D. 274, 298 (N.D. Cal. 2022). Besides, the available evidence shows a practice to provide rest periods too:

- "I may have a significant amount of downtime. If a visit involves taking a member grocery shopping, for example, I am free to what I want to do. I can take a break, talk on the phone, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it." King Decl. ¶ 10.

- "I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member." Gonzales Decl. ¶ 10.

- "Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am free

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

to [*sic*] what I want to do. I can and do use this time for my own personal reasons, to take breaks, to eat, to talk on the phone with my daughter, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it." Gacanovic Decl. ¶ 8.

- "If a visit involves taking a member to a doctor appointment, for example, I am free to what I want to do. I can and do use this time for my own personal reasons, to take breaks, to use the restroom, to check my personal email, to schedule other visits with members, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it." Rodriguez Decl. ¶ 11.

Since Plaintiffs have offered no common evidence of a consistently applied policy or practice to deprive Pals of rest periods, let alone substantial evidence of such a practice, certification of this claim must be denied outright. *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010) (finding where an employee "has established that its time records will not show when rest breaks were taken . . . . individualized analyses must be conducted to determine whether and when rest breaks were not taken").

**E.  Individual Issues Predominate The Expenses Subclass.**

Labor Code section 2802 requires employers to indemnify employees for reasonable expenses incurred as a direct consequence of the performance of their duties. *See* Cal. Lab. Code § 2802. A few caveats, however, ensure that employers aren't forced to foot the bill for every possible expense. First, expenses an employee incurs out of their preference or convenience are not reimbursable. *See e.g.*, *Lawson v. PPG Architectural Finishes, Inc.*, No. SACV1800705AGJPRX, 2019 WL 3308827, at *7 (C.D. Cal. June 21, 2019). Second, expenses must be reasonable and necessary. Cal. Lab. § 2802; *Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 57 (1991) (recognizing that expenses would not be reimbursable where "an employee's expenditure of money . . . [is] totally unnecessary . . . and highly unreasonable."). And finally, liability requires proof that the employer knew or had reason to know that employees have incurred such expenses. *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009).

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Plaintiffs claim that certification of their cellphone and internet expenses subclass is appropriate because Papa *required* Pals to incur cellphone costs, cellphone data charges, and home internet expenses. This is inaccurate: although use of the App requires a connection to the internet or active cellular connection, there is absolutely no reason why Pals cannot make use of free Wifi to access the App. *See* Bchara Decl. ¶ 12. Free Wi-Fi is available at numerous retail establishments and at public libraries and Plaintiffs cite to no common policy that Papa required Pals to incur internet or data charges to access the App. Consequently, any expenses Pals incurred using their own data or Wi-Fi to connect to the App were incurred out of their preference or convenience and are not reimbursable. *See e.g.*, *Lawson v. PPG Architectural Finishes, Inc.*, 2019 WL 3308827, at *7 (C.D. Cal. June 21, 2019). Several Pals admit as much: "I understand that I could use free internet at library or a coffee shop to access the application. I choose to access the application using my cellular plan for my own convenience." Haney Decl. ¶ 17; *see also* Martin Decl. ¶ 14 ("I understand that I could use free internet available at a library or coffee stop to access the Papa application, but I choose to access the application using my own internet/cellular plan for my own convenience."); *see also* Johnson Decl. ¶ 17 ("I understand I could use free internet at a library or coffee shop, but I choose to access the app using my own cellular plan for my own convenience."). Given this, at the very least, certification of this claim will require individualized inquiries into whether (1) it was reasonably necessary for each Pal to use their personal data plans or home internet where free sources are or were available; and (2) Pals chose to use their cell phone data plans and home internet for personal convenience. Certification of this subclass should be denied. *See Briggs v. OS Rest. Servs., LLC*, 2020 WL 6260001, at *21 (C.D. Cal. Aug. 26, 2020) (denying class certification on claim for failure to reimburse expenses where plaintiffs did not provide common evidence of practice requiring purchase).

Plaintiffs' claim for transportation and vehicle use expenses, including expenses incurred commuting, goes nowhere because Papa *pays* Pals for transportation and vehicle use. Bchara Decl. ¶¶ 11–12; *see* section II. B., supra (Pals receive transportation pay and an hourly rate that encompasses visit time and any legally required commute expenses). Plaintiffs' argument then,

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

is essentially that Papa does not pay enough for transportation, and that is not a certifiable theory of recovery. An employer's duty under Labor Code section 2802 is to reimburse employees for expenses they actually incur. Cal. Lab. Code 2802. Accordingly, to determine whether Papa paid enough, this Court would need to inquire whether Papa's method of reimbursement, a fixed amount per mile, adequately compensated Pals for their transportation costs. This would turn on numerous individual issues. Of course, liability in such cases turns "not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007). As explained in *Gattuso:*

> For example, an employee's choice of automobile will significantly affect the costs incurred. An employee who chooses an expensive model and replaces it frequently will incur substantially greater depreciation costs than an employee who chooses a lower priced model and replaces it less frequently. Similarly, some vehicles use substantially more fuel or require more frequent or more costly maintenance and repairs than others. The choice of vehicle will also affect insurance costs. Other employee choices, such as the brand and grade of gasoline or tires and the shop performing maintenance and repairs, will also affect the actual costs. *Id.*

In short, there is no common way to determine whether Papa's method of reimbursement failed to adequately reimburse Pals for transportation costs.

These individualized inquiries are exactly why Plaintiffs' reliance on *Johnson v. Serenity Transp., Inc.*, 2018 WL 3646540, at *14 (N.D. Cal. Aug. 1, 2018) and *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 139 (N.D. Cal. 2021) is misplaced. In those cases, the court certified the expense reimbursement claims because there was common evidence that the employer had no policy to reimburse at all. *See Johnson v. Serenity Transp., Inc.*, 2018 WL at *14 (reimbursement policy only compensated drivers for mileage in excess of 20 or 30 miles and failed to compensate drivers for mileage less than 20 or 30 miles, required purchase or lease of van-like vehicles, business license, fuel, or maintenance); *James v. Uber Techs. Inc.*, 338 F.R.D. at 139 (no reimbursement

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

1  policy at all). The complete absence of a policy to reimburse meant that liability could be determined

2  without further inquiry at all. That is simply not the case here, where there is a policy to reimburse

3  Pals for vehicle use. This Court should refuse to certify Plaintiffs' expense reimbursement claim.

4  **F.**  **Individual Issues Will Predominate Damages Calculations.**

5  Although "the presence of individualized damages cannot, by itself, defeat class

6  certification," this rule cannot be applied to swallow Rule 23(b)'s requirement that common

7  questions "predominate over **_any_** questions affecting only individual members." Fed. R. Civ. P.

8  23; *see Bowerman v. Field Asset Services, Inc.*, 60 F.4th at 469 (denying certification where

9  issues going to damages predominated in the absence of any expert or reliable representative

10  evidence to calculate damages). Stated differently, before granting class certification, a court

11  must be implicitly satisfied that questions going to damages will not predominate over individual

12  ones. *Id.* This will be nearly impossible here.

13  First, Plaintiffs have no plan to address how they will calculate damages. They have

14  neither retained an expert nor explained how, under the facts here, expert or representative

15  testimony can reliably measure damages to each Pal if liability can be determined on the merits.

16  Second, Plaintiffs' testimony exemplifies the questions the parties will be forced to

17  answer if this case is permitted to proceed as a class:

18  - Plaintiff Matthews repeatedly testified that she has no records to support the

19  amount of time she worked that she was allegedly unpaid. Instead, Plaintiff

20  Matthews estimates are based on "what [she] think[s] [her] time is worth."

21  Matthews Dep. at 134:3–5. Damages cannot be calculated on such a basis. When

22  asked whether she ever spent less than 15 minutes completing notes after a call,

23  she stated: "I never timed myself how long I took my notes . . . I've given you a

24  fair estimate of what I think my time is worth." *Id.* at 134:1–5. She was also asked

25  whether she "ever keep track of how many hours [she] [was] performing work for

26  Papa," to which she replied: "I did not." *Id.* at 101:8–12.

27  - There are many other instances where Plaintiff Matthews explicitly testifies that

28  she has no records to support her allegations. She was asked "[s]o, 15 minutes a

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Case No.: 3:21-cv-06326-RS

day, each day, you're claiming you were not paid for time you spent communicating with Papa; is that right," to which she replied "I can't give you an exact time, or even - - I just don't know. I didn't track that information." Matthews Dep. at 83:24–25-84:1, 84:8–10. And when asked what time she started work on a specific day, she testified, "[w]ell, I would assume I started probably about 15 minutes before my shift, before the first call, but I'm really not sure. I didn't keep a log. I didn't keep track of this. I'm sorry I didn't keep track of my hours. I should have kept a better log." *Id.* at 135:6–15.

- With respect to the time Plaintiff Matthews claims she spent taking notes, she again testifies that she has nothing to support her allegations. When asked, "[d]id it ever take you less than 15 minutes to complete notes of a call? And I'm talking about a 2-minute call, for example," she could not answer the question, explaining "I don't know, because I didn't keep a log, a call log like that." Matthews Dep. at 134:7–13.

- Similarly, Plaintiff Pardo testified she "wasn't keeping track" of the visits she completed. Pardo Dep. at 62:15–20. She also does not recall exactly how long she spent filling out surveys after visits, nor did she provide any testimony that she tracked how long these surveys took her. *Id.* at 79:3–7.

Third, as Papa's expert details more fully in her declaration, Plaintiffs have offered no plan or analysis indicating: 1) How they intend to manage individualized issues with respect to incurred expenses; 2) How they intend to demonstrate failure to pay minimum wage and/or overtime; or 3) How they intend to demonstrate failure to provide meal and rest breaks. With respect to each of these items, the available data suggests that individualized inquiry may be required to determine liability and subsequent damages, if any. Rose Decl. ¶ 9.

- As to expenses, phone, and internet costs will vary by Pal based on what Service provide and plan is selected. Rose Decl. ¶ 10. Plaintiffs offer no plan to explain, for example, how to allocate expenses to their line to the extent they were on a family plan. Plaintiffs have also failed to specify how internet expense should be

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

ACTIVE 702496006v1

computed if a Pal is using public or otherwise free Wi-Fi to conduct a visit or other alleged work-activities. *Id.* The analysis of expenses could be further complicated if Pals also perform work for other app-based companies (i.e., whether they are also running Uber, Lyft, Instacart, or other applications on their phone that are using data at the same time they are running the Papa app), and how any costs for that time should be allocated to Papa. *Id.* Specifically, the available data is insufficient to determine expenses incurred by Pals. *Id.*

- As to vehicle expenses, Plaintiffs have no plan to determine what expenses Pal actually incurred, or to refute that Papa's mileage reimbursement method was insufficient. Indeed, Papa's expert opines that the IRS rate may not be a reliable measure and further that the mileage rate that Papa did provide likely over-reimbursed many Pals. Rose Decl. ¶ 11.

- As to minimum wage, overtime, and breaks, the data is simply insufficient to determine hours spent outside of completing a visit. Rose Decl. ¶ 12. What's more, the data shows that Pals frequently do not record the end time of started visits leading to incomplete information about actual time spent in a visit. *Id.* Additionally, Plaintiffs provide no method to quantify time spent purportedly performing work outside the App, e.g., following the Visit Standards.

Damages simply cannot be adjudicated without inquiry into each Pal's experience, so class certification is inappropriate.

### G. Plaintiffs' Derivative Claims Cannot Be Certified Either.

Plaintiffs concede their wage statement, waiting time, and unfair business practices claims are derivative of the underlying meal and rest break, minimum wage, overtime, and reimbursement claims. Motion at pp. 23–24. Their derivative claims cannot be litigated on a class-wide basis for the same reasons discussed above. *See, e.g.*, *Castillo v. Bank of America National Ass'n*, 2019 WL 3818954, at *14 (C.D. Cal. July 16, 2019) (because class certification was not appropriate, there was no basis to certify the derivative wage statement class).

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

**H.**    **Class Treatment Is Not Superior Under These Facts.**

Plaintiffs offer absolutely no method or plan to try any of the individualized issues in this case, relying solely on their contention that common questions predominate the misclassification issue. They are mistaken.

"If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). Courts evaluate the four factors enumerated in Rule 23(b)(3) to determine whether the class action device serves its purpose: reducing litigation costs and promoting greater judicial efficiency. *See id.* Most relevant under these facts is the fourth factor, which considers the difficulties likely to be encountered in the management of a class action. *See* Fed.R.Civ.P. 23(b)(3)(D). Applying that factor here leads to one conclusion: the complexities of class treatment here weigh heavily against certification.

As described above, because Plaintiffs do not offer common evidence to establish their claims—e.g., evidence of an unlawful policy consistently applied—each Pal will be forced to litigate substantial separate issues to establish their right to recover.

And even after these issues are litigated, the parties will still have to litigate individual damages issues. There is no fair way to establish the amount of damages each Pal would be entitled to even if liability can be proven because too many individualized issues pervade the damages calculation. For example, as to the minimum wage and overtime claims alone, how long Pals spent choosing a visit that fits their individual needs, including selecting the location, duration, and type of visit request or Service requested, will vary by each individual Pal, and each day. How long Pals spent confirming visits will vary based on each Pal too. Did the Pal merely tap the confirm visit button in the App, did they call the Member to confirm, did they do both? Did they leave a message? Did they talk to the Member and for how long? Papa has no data to answer these questions so the only way they can fairly be answered is through the testimony of the Pals themselves.

Class treatment will not improve litigation efficiency here.

Case No.: 3:21-cv-06326-RS

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

## V.  CONCLUSION

For the foregoing reasons, Papa respectfully requests that the Court deny Plaintiffs'
Motion.

Dated: September 30, 2024                **GREENBERG TRAURIG, LLP**

By: */s/Ellen M. Bronchetti*
ELLEN M. BRONCHETTI (SBN 226975)
TAYANAH MILLER (SBN 299123)


Attorneys for Defendant
PAPA, INC.

Case No.: 3:21-cv-06326-RS

DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

ACTIVE 702496006v1