ELLEN BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: 619-848-2500
Facsimile: 949-732-6501
Ellen.Bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PARDO AND EVANGELINE MATTHEWS, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PAPA, INC.<br><br>    Defendant. | CASE NO. 3:21-cv-06326-RS<br><br>**DECLARATION OF ELLEN BRONCHETTI IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Trial Date: None |

# DECLARATION OF ELLEN BRONCHETTI

I, ELLEN M. BRONCHETTI, declare as follows:

1. I am an attorney at law duly licensed to practice before this court. I am a shareholder at Greenberg Traurig, LLP, attorneys of record for Defendant PAPA, Inc. ("Defendant")

2. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

3. This declaration is submitted in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification.

4. On December 15, 2023, Plaintiffs' counsel took the deposition of Defendant's Person Most Qualified, Dani Bchara. True and correct copies of the relevant excerpts of the deposition of Mr. Bchara are attached hereto as **Exhibit 1**.

5. On October 3, 2023, Defendant's former counsel took the deposition of Plaintiff Jennifer Pardo. True and correct copies of the relevant excerpts of the deposition of Ms. Pardo are attached hereto as **Exhibit 2**.

6. On September 16, 2024, I took the deposition of Plaintiff Evangeline Matthews. True and correct copies of the relevant excerpts of the deposition of Ms. Matthews are attached hereto as **Exhibit 3**.

7. On August 26, 2024, Priscilla Hoyt, a person who uses Defendant's App to provide certain non-medical support tasks and companionship (called, a "Pal"), executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Hoyt is attached hereto as **Exhibit 4.**

8. On August 27, 2024, Kellie Hynds, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Hynds is attached hereto as **Exhibit 5.**

9. On August 28, 2024, Sandra Rodriguez, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Rodriguez is attached hereto as **Exhibit 6.**

10.     On September 11, 2024, Nancy Gonzales, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Gonzales is attached hereto as **Exhibit 7.**

11.     On September 23, 2024, Zerina Gacanovic, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Gacanovic is attached hereto as **Exhibit 8.**

12.     On September 24, 2024, Cassie King, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. King is attached hereto as **Exhibit 9.**

13.     On September 25, 2024, Jennifer Martin, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Martin is attached hereto as **Exhibit 10.**

14.     On September 25, 2024, Marsi Haney, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Haney is attached hereto as **Exhibit 11.**

15.     On September 27, 2024, Jenny Maradiaga, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Maradiaga is attached hereto as **Exhibit 12.**

16.     On September 27, 2024, Makayla Johnson, a current Pal, executed a declaration in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification. A true and correct copy of the declaration of Ms. Johnson is attached hereto as **Exhibit 13.**

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed on September 30, 2024.

By_____
ELLEN M. BRONCHETTI

DECLARATION OF ELLEN BRONCHETTI IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Exhibit 1**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


Jennifer Pardo, Evangeline
Matthews, individually and
on behalf of all others
similarly situated,

        Plaintiffs,

vs.

        CASE NO.
        3:21-cv-06326-RD

Papa, Inc.,

        Defendant.

_____


REMOTE VIDEO DEPOSITION OF DANI BCHARA

December 15, 2023

8:37 a.m.

Los Angeles, California


Reported By:
Brandi R. Celestino
CSR No. 13640
APPEARING REMOTELY FROM ANAHEIM, CALIFORNIA

1    that correct?

2         A    Yes.

3         Q    Which means before arriving at the visit, the

4    Pal has to make sure to read over the visit tasks and

5    any important notes about the member and the health

6    plan that are provided."

7              That's an expectation that the Pal performs;

8    is that correct?

9         A    That is the guideline or best practice that

10   we encourage our Pals to do.

11        Q    And expect them to follow; is that correct?

12        A    I guess it depends on what you mean by

13   "expect them to follow."

14        Q    Well, I'm just reading from the document.

15             What does Papa mean when it says, "You are

16   expected to follow the visit standards below for every

17   visit"?  Do you know?

18        A    Yes.  These are things that we encourage our

19   Pals to do.

20        Q    Is your understanding of encouragement

21   different than expectation?

22        A    Maybe I'm getting too hung up on words.

23        Q    They basically mean the same thing to you?

24        A    I mean, I think the -- I guess the difference

25   would be the -- yeah.  I would call them guidelines.

1   document 339, it says, "What happens if I don't follow

2   Papa's visit standards?"

3        And it says, "Failure to follow our visit

4   standards may result in suspension or permit removal

5   from the platform."

6        Is that true?

7     A   Again, it depends.  For the majority of

8   these, there would be no consequence.

9     Q   Why does it not say that here in the FAQ?  Do

10   you know?

11     A   Well, it does.

12     Q   What does it say?  How does it say that?

13     A   It says, "May result."

14     Q   So your interpretation of that is that

15   communicates that there will be no repercussions for

16   failing to abide by these standards?

17     A   I wouldn't necessarily say that.

18        MR. LEBE:  I'm going to take a very quick

19   break.  I'm going to talk to my team.  I think this is

20   an okay time to suspend the deposition.  I've talked

21   to counsel -- I think that was off the record -- about

22   a second day, and understanding he's not agreeing to

23   anything on the record, but we'll meet and confer, and

24   hopefully resolve that without court intervention.  We

25   can put anything else we want to put on the record

1                    REPORTER'S CERTIFICATE

2            I, Brandi Celestino, a Certified Shorthand

3    Reporter, do hereby certify:

4            That the foregoing proceedings were taken

5    before me at the time and place therein set forth, at

6    which time the witness was put under oath by me;

7            That the testimony of the witness, the

8    questions propounded, and all objections and statements

9    made at the time of the examination were recorded

10   stenographically by me and were there after transcribed;

11           That a review of the transcript by the deponent

12   was requested;

13           That the foregoing is a true and correct

14   transcript of my shorthand notes so taken.

15           I further certify that I am not a relative or

16   employee of any attorney of the parties, nor financially

17   interested in the action.

18           I declare under penalty of perjury under the

19   laws of California that the foregoing is true and

20   correct.

21

22   Dated:  December 15, 2023

23   _Celestino_

24   _____

25   Brandi Celestino

**Exhibit 2**

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3     _____
                              )
4     JENNIFER PARDO,         )
      Individually and on     )
5     behalf of all others    )
      similarly situated,     )
6                             )No. 3:21-cv-06326
                 Plaintiff,   )RS
7                             )
        vs.                   )
8                             )
      PAPA, INC.,             )
9                             )
                 Defendant.   )
10    _____)

11

12     VIDEOTAPED DEPOSITION OF JENNIFER PARDO

13            San Lorenzo, California

14            Tuesday, October 3, 2023

15                  Volume I

16

17

18

19

20

21   Reported by:
     CRYSTAL WHITE
22   CSR No. 13841

23   Job No. 6119705

24

25   PAGES 1 - 124

                                    Page 1

| | | |
|---|---|---|
| 1 | minutes? | 11:57:26AM |
| 2 | A.  No. | 11:57:26AM |
| 3 | Q.  So -- okay.  So you think then they were | 11:57:41AM |
| 4 | over five minutes long? | 11:57:45AM |
| 5 | A.  Yes, I just don't know the exact time. | 11:57:49AM |
| 6 | Q.  I understand.  And I'm still gonna get push | 11:57:52AM |
| 7 | on this a little bit to see if I can get your best | 11:57:56AM |
| 8 | estimate.  So do you know if they were over ten | 11:57:56AM |
| 9 | minutes long, any of them? | 11:57:59AM |
| 10 | A.  I would say they were around that range of | 11:58:02AM |
| 11 | time like the ten minutes. | 11:58:13AM |
| 12 | Q.  Okay.  So they lasted around ten minutes | 11:58:15AM |
| 13 | each, that is your best estimate? | 11:58:18AM |
| 14 | A.  Yes. | 11:58:25AM |
| 15 | Q.  Do you recall how many visits you actually | 11:58:26AM |
| 16 | completed through Paps's platform? | 11:58:36AM |
| 17 | A.  No. | 11:58:39AM |
| 18 | Q.  Do you have an estimate? | 11:58:45AM |
| 19 | A.  I would say no.  I wasn't keeping track at | 11:58:48AM |
| 20 | the time. | 11:59:10AM |
| 21 | Q.  Okay.  We'll look at something in a minute | 11:59:10AM |
| 22 | that might help, help us figure that out.  But you | 11:59:13AM |
| 23 | don't have any records of your own that would show | 11:59:17AM |
| 24 | how many visits you completed? | 11:59:20AM |
| 25 | A.  No, I mean they were definitely on the | 11:59:23AM |

Page 62

| | | |
|---|---|---|
| 1 | visits that you reviewed and then the visits that | 12:52:14PM |
| 2 | were actually completed.  Do you have any reason | 12:52:20PM |
| 3 | looking at these today to doubt the accuracy of | 12:52:27PM |
| 4 | them? | 12:52:31PM |
| 5 | MR. LEBE:  Objection.  Calls for a legal | 12:52:33PM |
| 6 | conclusion. | 12:52:37PM |
| 7 | You can answer. | 12:52:39PM |
| 8 | BY MS. RONEY: | 12:52:46PM |
| 9 | Q.  Let me know if you need me to scroll up or | 12:52:48PM |
| 10 | down so you can see everything. | 12:52:51PM |
| 11 | A.  I'm sorry, can you repeat the question? | 12:53:02PM |
| 12 | Q.  Sure. | 12:53:04PM |
| 13 | My question was do you have any reason to | 12:53:05PM |
| 14 | doubt that these records from Paps's system is | 12:53:07PM |
| 15 | accurate? | 12:53:12PM |
| 16 | MR. LEBE:  Calls for a legal conclusion.  Vague. | 12:53:13PM |
| 17 | THE WITNESS:  No. | 12:53:19PM |
| 18 | BY MS. RONEY: | 12:53:20PM |
| 19 | Q.  So looking as we're now at the second page, | 12:53:22PM |
| 20 | which is the one marked Papa 17, the bottom half of | 12:53:26PM |
| 21 | this page, it shows payments for four visits that | 12:53:31PM |
| 22 | were completed, would you agree with that? | 12:53:38PM |
| 23 | A.  Yes. | 12:53:41PM |
| 24 | Q.  And does this refresh your memory at all | 12:53:46PM |
| 25 | about how many visits you completed through Paps's | 12:53:52PM |

Page 67

| | | |
|---|---|---|
| 1 | platform? | 12:53:56PM |
| 2 | MR. LEBE: Calls for speculation. | 12:53:57PM |
| 3 | THE WITNESS: Yes. | 12:54:06PM |
| 4 | BY MS. RONEY: | 12:54:10PM |
| 5 | Q. So would you agree then that you completed | 12:54:10PM |
| 6 | four visits? Ms. Pardo, are you still thinking? | 12:54:14PM |
| 7 | A. Yes. So were you -- were you referring to | 12:54:55PM |
| 8 | like complete visits or -- because I know there was | 12:55:22PM |
| 9 | many calls. I know some were -- it was definitely | 12:55:28PM |
| 10 | more than four. I don't know if you meant complete | 12:55:41PM |
| 11 | or -- | 12:55:46PM |
| 12 | Q. Yeah, so I'm referring to actual visits that | 12:55:46PM |
| 13 | you completed. | 12:55:49PM |
| 14 | MR. LEBE: Is there a pending question? | 12:56:00PM |
| 15 | MS. RONEY: I believe so, unless I missed her | 12:56:02PM |
| 16 | answer. | 12:56:05PM |
| 17 | Q. Ms. Pardo, had you answered? I'm sorry. | 12:56:06PM |
| 18 | A. No. No. Then the answer is yes. | 12:56:08PM |
| 19 | Q. Okay. And now what I think you were | 12:56:15PM |
| 20 | referring to, if we go back up to this first page | 12:56:18PM |
| 21 | and zoom in a little bit so you can see better in | 12:56:21PM |
| 22 | the fourth column there it shows visit status and | 12:56:25PM |
| 23 | there's -- there is four or five -- there's five | 12:56:28PM |
| 24 | visits that showed reviewed and then there's five | 12:56:30PM |
| 25 | visits that showed terminated. And I'm assuming | 12:56:33PM |

Page 68

| | | |
|---|---|---|
| 1 | that terminated means those visits were not | 12:56:37PM |
| 2 | completed for one reason or another.  Is that -- is | 12:56:38PM |
| 3 | that what you were thinking of when you said there | 12:56:41PM |
| 4 | may have been other visits that didn't get | 12:56:45PM |
| 5 | completed? | 12:56:50PM |
| 6 | A.  Yes. | 12:56:51PM |
| 7 | Q.  And for the other visits that were not | 12:56:51PM |
| 8 | completed, is that because you cancelled them?  And | 12:56:55PM |
| 9 | if you don't recall, that's okay, too. | 12:57:05PM |
| 10 | A.  I don't recall. | 12:57:12PM |
| 11 | Q.  But, in any event, there were some visits | 12:57:12PM |
| 12 | that you had signed up for for one reason or another | 12:57:15PM |
| 13 | did not end up happening; is that right? | 12:57:18PM |
| 14 | A.  Yes. | 12:57:20PM |
| 15 | Q.  Okay.  And we think that these four visits | 12:57:22PM |
| 16 | shown on the second page here, these are the ones | 12:57:26PM |
| 17 | that were actually complete? | 12:57:29PM |
| 18 | A.  Yes. | 12:57:30PM |
| 19 | Q.  Okay.  Great.  So I'm gonna try to shortcut | 12:57:31PM |
| 20 | this a little bit.  Am I correct in thinking that if | 12:57:40PM |
| 21 | I ask you about one of these visits specifically, | 12:57:45PM |
| 22 | like the visit on December 21st, 2020, you see that | 12:57:50PM |
| 23 | invoice there?  There's one that says December 31st, | 12:57:55PM |
| 24 | 2020? | 12:57:55PM |
| 25 | A.  Yeah, I see it. | 12:57:58PM |

Page 69

| | | |
|---|---|---|
| 1 | A.  An estimate would be five or ten minutes | 01:13:22PM |
| 2 | just depending on what you wanted to say or -- | 01:13:42PM |
| 3 | Q.  But at least for the visits that we have up | 01:13:48PM |
| 4 | on the screen here, these four, do you recall | 01:13:51PM |
| 5 | exactly how long you spent filling out surveys after | 01:13:54PM |
| 6 | these visits? | 01:13:58PM |
| 7 | A.  No. | 01:13:59PM |
| 8 | Q.  I'm gonna go ahead and take this down just | 01:13:59PM |
| 9 | for a minute and we may put it back up later but -- | 01:14:06PM |
| 10 | or at least I think I'm going to.  There we go.  All | 01:14:16PM |
| 11 | right. | 01:14:16PM |
| 12 | If you needed to cancel a visit that you had | 01:14:42PM |
| 13 | signed up for, do you know what the procedure was? | 01:14:48PM |
| 14 | MR. LEBE:  Assumes facts. | 01:14:58PM |
| 15 | THE WITNESS:  All I can recall is I have to do | 01:15:06PM |
| 16 | an advance.  I just don't remember how advance they | 01:15:10PM |
| 17 | would want it. | 01:15:15PM |
| 18 | BY MS. RONEY: | 01:15:18PM |
| 19 | Q.  Okay.  What would you -- would you have to | 01:15:19PM |
| 20 | do something on the app to cancel a visit? | 01:15:23PM |
| 21 | A.  Yes. | 01:15:26PM |
| 22 | Q.  And what would you do in the app? | 01:15:30PM |
| 23 | A.  Sorry.  My memory is a little mixed up.  I | 01:15:33PM |
| 24 | don't know if I had to call the company like their | 01:16:09PM |
| 25 | number or send like a -- or some kind of button that | 01:16:13PM |

Page 79

| | | |
|---|---|---|
| 1 | A.  Yeah, I don't. | 02:16:09PM |
| 2 | Q.  It also says in paragraph 44 that you and | 02:16:17PM |
| 3 | other class members were not reimbursed for use of | 02:16:25PM |
| 4 | your cars; do you see that there? | 02:16:30PM |
| 5 | A.  Yes. | 02:16:32PM |
| 6 | Q.  And -- go ahead. | 02:16:36PM |
| 7 | A.  Yeah, I was just saying yes I do see. | 02:16:38PM |
| 8 | Q.  Okay.  And did you use your car at all for | 02:16:41PM |
| 9 | any of the visits you performed through Paps's | 02:16:46PM |
| 10 | platform? | 02:16:49PM |
| 11 | A.  No. | 02:16:50PM |
| 12 | Q.  It also says in paragraph 44 that you were | 02:16:51PM |
| 13 | not reimbursed for other transportation expenses. | 02:16:59PM |
| 14 | You didn't have any transportation expenses at all | 02:17:04PM |
| 15 | for these virtual visits that you did; right? | 02:17:07PM |
| 16 | A.  Yes, that's correct. | 02:17:11PM |
| 17 | Q.  And then it says here as well internet, did | 02:17:19PM |
| 18 | you use your home internet for connecting to Paps's | 02:17:24PM |
| 19 | app for these visits? | 02:17:28PM |
| 20 | A.  Yes. | 02:17:30PM |
| 21 | Q.  And you also used your home internet for | 02:17:32PM |
| 22 | other purposes not related to the Papa app; right? | 02:17:35PM |
| 23 | A.  Yes. | 02:17:39PM |
| 24 | Q.  Do you know roughly how much the internet | 02:17:42PM |
| 25 | cost per month? | 02:17:55PM |

Page 109

| | | |
|---|---|---|
| 1 | BY MS. RONEY: | 02:26:23PM |
| 2 | Q. Did you actually have to drive anywhere to | 02:26:23PM |
| 3 | do your visits? | 02:26:26PM |
| 4 | A. No. | 02:26:27PM |
| 5 | Q. And did you ever spend time on standby? | 02:26:32PM |
| 6 | MR. LEBE: Objection. Vague. Calls for a legal | 02:26:40PM |
| 7 | conclusion. | 02:26:43PM |
| 8 | THE WITNESS: No. | 02:26:47PM |
| 9 | BY MS. RONEY: | 02:26:48PM |
| 10 | Q. Is there anything else about that sentence | 02:26:55PM |
| 11 | that is incorrect? | 02:26:58PM |
| 12 | A. No, that was it. | 02:27:03PM |
| 13 | Q. Okay. I want to look at paragraph 14. Can | 02:27:05PM |
| 14 | you actually read this entire paragraph out loud for | 02:27:09PM |
| 15 | us, please? | 02:27:14PM |
| 16 | A. The whole paragraph? | 02:27:15PM |
| 17 | Q. Yes, please, so all three sentences. | 02:27:19PM |
| 18 | A. "The foregoing policies applied not only to | 02:27:24PM |
| 19 | me but to all Papa Pals working for Papa Inc. across | 02:27:31PM |
| 20 | the United States. I am aware that these policies | 02:27:36PM |
| 21 | and practices reused in" -- "or used and are still | 02:27:39PM |
| 22 | being used by Papa Inc. nationwide. I am also aware | 02:27:43PM |
| 23 | that the job description, job duties and | 02:27:47PM |
| 24 | compensation, structure of all Papa Pals were | 02:27:50PM |
| 25 | consistent throughout the United States." | 02:27:54PM |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | had been a technological issue? | 02:35:29PM |
| 2 | MR. LEBE: Asked and answered. Vague. | 02:35:33PM |
| 3 | THE WITNESS: Well, yes, it was because of that | 02:35:41PM |
| 4 | technology issue. | 02:35:59PM |
| 5 | BY MS. RONEY: | 02:36:02PM |
| 6 | Q. Okay. Any other complaints that you made to | 02:36:03PM |
| 7 | Papa at any time since you started performing work | 02:36:07PM |
| 8 | through their platform? | 02:36:11PM |
| 9 | MR. LEBE: Objection. Vague. | 02:36:13PM |
| 10 | THE WITNESS: No, that was the only one. | 02:36:16PM |
| 11 | BY MS. RONEY: | 02:36:19PM |
| 12 | Q. Okay. And so you never complained to Papa | 02:36:19PM |
| 13 | that you had incurred expenses that weren't being | 02:36:24PM |
| 14 | reimbursed? | 02:36:27PM |
| 15 | MR. LEBE: Same objection. | 02:36:34PM |
| 16 | THE WITNESS: Can you repeat the question? | 02:36:45PM |
| 17 | BY MS. RONEY: | 02:36:46PM |
| 18 | Q. You never complained to Papa that you had | 02:36:47PM |
| 19 | incurred expenses that weren't reimbursed? | 02:36:49PM |
| 20 | A. Yes, that's true. | 02:36:54PM |
| 21 | Q. And you never complained that you missed a | 02:37:04PM |
| 22 | rest break; is that true? | 02:37:09PM |
| 23 | A. That's true. | 02:37:11PM |
| 24 | Q. You never complained that you had missed a | 02:37:15PM |
| 25 | meal period; is that true? | 02:37:19PM |

Page 120

| | | |
|---|---|---|
| 1 | A. Yes, that's true. | 02:37:26PM |
| 2 | Q. You never complained you thought you were | 02:37:28PM |
| 3 | owed more money than you had been paid; is that | 02:37:33PM |
| 4 | true? | 02:37:36PM |
| 5 | A. That is true. | 02:37:37PM |
| 6 | Q. And you never complained that you thought | 02:37:41PM |
| 7 | Papa didn't give you enough information about what | 02:37:44PM |
| 8 | you thought you'd been paid and earned; is that | 02:37:47PM |
| 9 | true? | 02:37:50PM |
| 10 | A. Yes, that's true. | 02:37:50PM |
| 11 | Q. So other than that one complaint about the | 02:37:57PM |
| 12 | technology issue and a cancelled visit, you didn't | 02:38:00PM |
| 13 | make any complaints of any kind; right? | 02:38:04PM |
| 14 | A. Yes, that's true. | 02:38:07PM |
| 15 | MS. RONEY: Okay. That is all the questions | 02:38:13PM |
| 16 | that I have. Counsel, I am going to be holding this | 02:38:15PM |
| 17 | deposition open because it does seem like there's | 02:38:18PM |
| 18 | some documents that's were relevant to our discovery | 02:38:22PM |
| 19 | request that have not been produced, so we can meet | 02:38:25PM |
| 20 | and confer about that off line. | 02:38:28PM |
| 21 | But to that end, I'm going to ask the court | 02:38:29PM |
| 22 | reporter or the videographer as well if they could | 02:38:30PM |
| 23 | please get us an official record of how much time we | 02:38:32PM |
| 24 | were on the record asking questions. And, of | 02:38:36PM |
| 25 | course, if you have any redirect you'd like to do, | 02:38:39PM |

Page 121

```
1        I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4        That the foregoing proceedings were taken before
5   me at the time and place herein set forth; that any
6   witnesses in the foregoing proceedings, prior to
7   testifying, were placed under oath; that a true and
8   correct record of the proceedings was made by me
9   using machine shorthand which was thereafter
10  transcribed under my direction; further, that the
11  foregoing is an accurate transcription thereof.
12       I further certify that I am neither financially
13  interested in the action nor a relative or employee
14  of any attorney of any of the parties.
15       IN WITNESS WHEREOF, I have this date subscribed
16  my name.
17  Dated:  October 16 2023
18
19
20               CRYSTAL WHITE
                 CSR No. 13841
21
22
23
24
25
```

Page 124

**Exhibit 3**

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3

4    JENNIFER PARDO AND EVANGELINE
     MATTHEWS, individually, and
5    on behalf of all others
     similarly situated,
6

7              Plaintiffs,

8         v.                          Case No.
                                      3:21-cv-06326-RS
9    PAPA, INC.,

10             Defendant.
     _____
11

12

13

14         REMOTE VIDEORECORDED DEPOSITION OF

15                EVANGELINE MATTHEWS

16                Winters, California

17                September 16, 2024

18                    Volume I

19

20

21   Reported by:
     CHRIS TE SELLE
22   CSR No. 10836

23   Job No. 10148780

24

25   Pages 1 - 296

1    I want to know more about the work.  I'm

2  more curious about what I'm going to be doing and

3  how much money I'm going to make.  So, I didn't ask

4  questions about them.  I don't really remember the

5  whole training class, or what was said to me during

6  that training class, so, I really don't know.

7    **Q.   So, you don't, sitting here today, you**

8  **don't remember, when you first applied to work at**

9  **Papa, whether you were going to be classified as an**

10  **employee or independent contractor; is that right?**

11    MR. LEBE:  Asked and answered.

12    THE WITNESS:  I knew, I knew I was going to get

13  paid per piece, which is common type of payment for

14  doing telemarketing work.  No different than a lot

15  of telemarketing jobs that I do.

16  BY MS. BRONCHETTI:

17    **Q.   Did you ever ask Papa to be classified as**

18  **an employee?**

19    A.   I did try.  They gave me a kind of a

20  runaround type of answer on how to do that, and, so,

21  but I did apply.  Yes, I did.  I put an application

22  in.

23    **Q.   No, that's not my question.**

24    **Did you ever ask Papa for you to be**

25  **classified as an employee, as opposed to an**

1      A.    Yeah.

2      Q.    So, you said there was a older app and a

3   newer app.

4      A.    Yeah.

5      Q.    From when to when, best estimate of time,

6   did you use the older app?

7      A.    About a little over a year.

8      Q.    So, let's just, again, estimate, June 2020

9   to June 2021?

10     A.    I could tell you that the newer app I used

11  less than six months, maybe, so, I'm sorry, I can't

12  give you --

13     Q.    That's okay.  We're just trying to break

14  it down the best we can, and you're doing a great

15  job.  I get it.

16          So, the older app, let's talk about how

17  you would schedule appointments on the older app.

18  So, walk me through the process of how you would

19  schedule appointments using the older app.

20     A.    This is from what I remember, okay, so I'm

21  going back three years, that they would have, the

22  app was actually very, very advanced for, for

23  telemarketing.

24          The only problem with the app was, well,

25  how it worked is you'd have a time, and then you'd

1    far as you can, schedule as many as you can, so that

2    you have calls for the day.  That's the goal, is to,

3    because, if you didn't have calls, you call somebody

4    up, and here you have a scheduled call, and they

5    don't answer the phone, I don't get paid for that,

6    if they don't answer a call, even though they tell

7    me this is a scheduled appointment.

8            It's not really a scheduled appointment.

9    Out of four calls, if I got four calls in a hour,

10   which didn't always happen, because we're competing,

11   and scrolling, spaces are blank, then, out of four,

12   maybe one or two would answer, maybe not any of

13   them, so there's a lot of times I was working and

14   not getting paid because of that.

15           So --

16       Q.   Okay, let's --

17       A.   -- that's how it works.

18       Q.   Thank you very much.

19           So, who chose the hours that you worked?

20   You did; is that right?

21       MR. LEBE:  Objection.  Vague --

22       THE WITNESS:  I had --

23       MR. LEBE:  -- calls for a legal conclusion.

24       You can answer.

25       THE WITNESS:  I had a full day to make as many

1   calls that I wanted to, which isn't uncommon in

2   telemarketing, to do something like that.

3          (Witness audio unclear, reporter

4   clarification.)

5          THE WITNESS:  It's common.  That's how you do

6   it.  That's how you do it.  You make a, you're

7   competing about getting more calls than the next

8   person.  You want to get as many calls as you want.

9   You want to spend every minute on the phone.

10  That's, that's how you make money is on what calls

11  you get.

12         So, but they could start any time.  I think

13  it's 7 a.m. to 8 or 9.  I don't remember, but there

14  was a big block of time I could call in.  And I

15  could, I could schedule my own hours whatever day I

16  wanted to work.  It wasn't, it wasn't, it wasn't a

17  set time.

18  BY MS. BRONCHETTI:

19         Q.  So, to answer my question, you set the

20  times that you worked each day; is that right?

21         MR. LEBE:  Vague --

22         THE WITNESS:  Yeah, I did.

23         MR. LEBE:  Please --

24  BY MS. BRONCHETTI:

25         Q.  And when you --

1  call.  I didn't hear you.  Could you please repeat

2  the question, please.

3  BY MS. BRONCHETTI:

4       Q.   Did you look for documents that were

5  relevant to your lawsuit, on your computer?

6       MR. LEBE:  Calls for a legal conclusion.

7       You can answer.

8       THE WITNESS:  When do you mean relevant to?

9  You mean last night, or --

10  BY MS. BRONCHETTI:

11      Q.   At any --

12      A.   I'm not sure.

13      Q.   -- time, did you look for documents,

14  evidence that you had to support your claims on your

15  computer?

16      A.   Yes, I did.

17      Q.   And you said you had, perhaps, screenshots

18  of a third of the times when the system crashed and

19  you were not paid.

20           Did you look for those documents that

21  would show you were not paid?

22      A.   I did look through my computer for those

23  documents.  I didn't see them.  I have a lot of

24  documents on my computer.  It's possible I

25  overlooked it, but I have looked for them, yes, I

 1   record read.)

 2       A.   I thought you also included speaking with

 3   the office with your original question.

 4       **Q.   How many minutes a day do you estimate you**

 5   **were not paid to speak with the office?**

 6       MR. LEBE:  Vague.  Asked and answered.

 7       THE WITNESS:  About 15 minutes a day, somewhere

 8   in there.

 9   BY MS. BRONCHETTI:

10       **Q.   So, every day you talked to the office at**

11   **Papa?**

12       A.   In the beginning, it was every day, and

13   then they had the app, so you could talk to them on

14   the app itself, which was hard to get somebody to

15   answer you in the very beginning.  It got a little

16   bit better towards the end.

17       **Q.   So, how many minutes a day are you saying**

18   **that you were communicating, whether on the phone,**

19   **texting, e-mailing with Papa, and not being**

20   **compensated for that time?**

21       A.   I'm not saying that I spoke with them

22   every day.  I'm just giving you an estimate.  I

23   think about 15 minutes a day.

24       **Q.   So, 15 minutes a day, each day, you're**

25   **claiming you were not paid for time you spent**

1  communicating with Papa; is that right?

2      MR. LEBE:  Asked and answered many, many times.

3      You can answer again.

4      THE WITNESS:  I'm not saying that I spoke with

5  them every day.  I'm just giving, you asked for an

6  estimate, daily estimate, and I just gave you a

7  daily estimate.

8      I can't give you an exact time, or even -- I

9  just don't know.  I didn't track that information.

10 They have those records.

11 BY MS. BRONCHETTI:

12     Q.   Okay.  I'm asking what you have, though,

13 so, let's go back.

14          So, how many times a week would you need

15 to communicate with Papa to perform your work, by

16 text, e-mail, or a phone call?

17     MR. LEBE:  Vague.

18     THE WITNESS:  I guess I don't remember.  I

19 don't know.  I don't know it wasn't every day, but

20 it was often.

21 BY MS. BRONCHETTI:

22     Q.   Can you provide --

23     A.   And maybe --

24     Q.   -- an estimate on how many times a week

25 you had to communicate with Papa and were not paid

1    Q.   And can you explain, then, what bonuses

2  you received for your work with Papa.

3    A.   I believe it was every three calls you got

4  25, and then every five calls you got 50, and then

5  every seven calls you got 75, then there's a weekly

6  bonus, and I think the weekly bonus was 50 calls.

7  You got $100, maybe.

8    Q.   Did you ever keep track of how many hours

9  you were performing work for Papa?

10    MR. LEBE:  Asked and answered many, many times.

11    You can answer again.

12    THE WITNESS:  I did not.

13  BY MS. BRONCHETTI:

14    Q.   How often did you receive these bonuses?

15    A.   Tried to get them every week.  Every day

16  and every week was my goal.  Some days, there was no

17  calls on the app to be able to get to your bonus.

18  It wasn't because I wasn't there making calls.  The

19  app wasn't running right, or they just didn't have

20  enough calls on it.  It just varies.

21    Q.   Did anyone at Papa ever tell you that the

22  bonuses were intended to compensate you for the

23  additional items you claim you weren't compensated

24  for, such as conducting notes, scrolling through the

25  app so you can schedule your work?  Did anyone tell

1        A.    Oh.

2        Q.    -- take a break?

3        MR. LEBE:  Counsel, I disagree, and your

4  arguing with her about her responses is, again, not

5  appropriate.  It's asked and answered.

6        You can answer again.

7        THE WITNESS:  I don't, I have never, I don't

8  know how to answer that, because I was, it was

9  never, it shouldn't be, I shouldn't have to have, it

10  should already be, breaks should be something that's

11  scheduled into something.

12        I shouldn't have to, I mean, that's, I don't

13  understand what -- maybe you could rephrase the

14  question for me.  That would be best.

15  BY MS. BRONCHETTI:

16        Q.    Did anyone at Papa, either in writing or

17  verbally, tell you you were not permitted to take

18  any breaks?

19        MR. LEBE:  Vague.  Legal conclusion.  Asked and

20  answered.  Go ahead.

21        THE WITNESS:  Okay.  Well, they didn't say it's

22  not, in writing or in person, say you could not take

23  a break, no, they did not.

24  BY MS. BRONCHETTI:

25        Q.    Thank you for answering the question.

1      THE WITNESS:  I never timed myself how long I

2  took my notes.  I'm giving you a fair estimate.  You

3  asked me to give you a fair estimate.  I've given

4  you a fair estimate about what I think my time is

5  worth.

6  BY MS. BRONCHETTI:

7      Q.   My question's a little bit different.

8           Did it ever take you less than 15 minutes

9  to complete notes of a call?  And I'm talking about

10  a 2 minute call, for example.

11      MR. LEBE:  Calls for speculation.

12      THE WITNESS:  I don't know, because I didn't

13  keep a log, a call log like that.

14  BY MS. BRONCHETTI:

15      Q.   Is it possible?

16      MR. LEBE:  Counsel, she's testified multiple

17  times that she doesn't know, so you're badgering

18  her.  If she doesn't know, she doesn't know.  You

19  have to move on.

20      THE WITNESS:  I don't know.

21  BY MS. BRONCHETTI:

22      Q.   Is it possible you ever spent less than 15

23  minutes recording notes?

24      MR. LEBE:  Asked and answered.

25      You can answer again.

1          THE WITNESS:  I don't know.

2     BY MS. BRONCHETTI:

3          Q.   Is it possible you ever spent more than 15

4     minutes recording notes?

5          A.   I don't know.

6          Q.   Okay, let's look at the 22nd of September,

7     and this is a document you produced this morning.

8               When did you start work on the 22nd of

9     September?

10         A.   Well, I would assume I started probably

11    about 15 minutes before my shift, before the first

12    call, but I'm really not sure.  I didn't keep a log.

13    I didn't keep track of this.  I'm sorry I didn't

14    keep track of my hours.  I should have kept a better

15    log.  I really don't know.

16         Q.   Ma'am, if you could just stick to the

17    question.  It's okay.  We're just trying to figure

18    out what you know, okay?

19              So, to the best of your knowledge, what

20    time did you start work on the 22nd of September?

21         MR. LEBE:  Asked and answered.  You can answer

22    again.

23         THE WITNESS:  Just an estimate, I would assume

24    that I started 15 minutes before 11:30.

25    BY MS. BRONCHETTI:

1      Q.   But that was your goal.  No one from Papa

2   told you that; is that correct?

3      A.   There wasn't -- we were able to go in and

4   pull calls out of the dollar and make the calls as

5   we wanted to and need to.  It's not uncommon

6   practice in telemarketing to have a pool of calls to

7   go through and pull calls out of them and make the

8   phone calls.  It's --

9      Q.   So, the reason --

10      A.   -- pretty --

11      Q.   -- you wanted to --

12      A.   -- common.

13      Q.   I'm sorry, I thought you were finished.

14           So, the reason that you wanted to do three

15   calls on this day, September 22, is because you

16   wanted to get eligible for the bonus; is that

17   correct?

18      MR. LEBE:  Calls for speculation.

19      THE WITNESS:  Right.

20   BY MS. BRONCHETTI:

21      Q.   And you didn't --

22      A.   That's what --

23      Q.   -- have to do --

24      A.   Go ahead.

25      Q.   -- three calls.  You didn't have to do

1      A.    -- I ended my day.

2      **Q.    -- Papa required that you scroll to find**

3   **an additional call for the day; is that right?**

4      A.    There was no set limit on the amount,

5   number of calls made in a day.

6      **Q.    And it's possible between 11:20 and 11:35**

7   **you went and heated up some food, is that possible?**

8      MR. LEBE:  Calls for speculation.

9      THE WITNESS:  You broke up on my end.

10   BY MS. BRONCHETTI:

11     **Q.    Between 11:20 and 11:35, is it possible**

12   **you got up from your work area and went in your**

13   **house to heat up food, to do anything else unrelated**

14   **to Papa?**

15     A.    Probably, no, I probably didn't.  I,

16   that's not my style.  I stay at work, and I work

17   until I'm done.  I don't usually get up.  I don't

18   take breaks unless somebody makes me take a break,

19   but it would be nice to be told take a break every

20   now and then.

21     **Q.    So you're saying it's absolutely**

22   **impossible that you would not have gotten up to take**

23   **a break between these two calls, is that your**

24   **testimony?**

25     A.    I didn't get up during those, between

 1  those calls.

 2      Q.   Well, in this case --

 3      A.   That was a, that's a short day right

 4  there.  It's only a couple of hours.

 5           I'm a hard worker.  I stay at, I stay at

 6  -- I'm trying to make money.  I don't make money by

 7  getting up and getting something to eat.

 8      Q.   Yeah, I know you --

 9      A.   I have a water bottle.

10      Q.   Yeah, you testified earlier you worked

11  from 6 a.m. to 8 p.m. most days.

12           That's not true, is it?

13      MR. LEBE:  Vague.  Calls for --

14      THE WITNESS:  I said, I --

15      MR. LEBE:  -- a legal conclusion.

16      THE WITNESS:  -- said there were days where I

17  could have worked those amount of times.  I don't

18  know.  I don't, didn't keep a log, like I explained.

19  I don't, I didn't say that was set in stone, but

20  there were days I worked 12 hours, so, quite a few

21  days I worked 12 hours.

22  BY MS. BRONCHETTI:

23      Q.   What percentage of the days when you

24  worked for Papa did you work for Papa from 6 a.m. to

25  8 p.m.?

1    exclusively for the use of contracting with Papa; is

2    that correct?

3         A.    No.  I had to buy another phone because it

4    was necessary for multiple reasons.

5         Q.    For personal and professional, correct?

6         A.    That's correct.

7         Q.    You would have had a phone regardless if

8    you worked with Papa or not; is that right?

9         A.    That's correct.

10        Q.    You never did a single in-person visit

11   when you performed services for Papa; is that right?

12        A.    That's correct.  I wanted to, but they

13   weren't in my, my range.

14        Q.    What is your personal cell phone number?

15        A.    530-220-7196.

16        Q.    Do you have any other personal cell phone

17   numbers?

18        A.    I have a Google Voice I don't use.

19        Q.    Have you ever had any other personal cell

20   phone number?

21        A.    I have.

22        Q.    When is the last time you had another

23   personal cell phone number?

24        A.    Maybe a year and a half ago.

25        Q.    What was that number?

1    insurance when I first started.  It was something

2    that was already active, and I'm not even sure how

3    many months it was active for at that point in time,

4    because I didn't make any in-home visits, so I

5    didn't track that.

6         Q.   My question is different.

7              Did you or did you not have to pay any

8    additional expense for automobile insurance to work

9    with Papa?

10        A.   Additional insurance?

11        MR. LEBE:  Vague.

12   BY MS. BRONCHETTI:

13        Q.   Correct.

14        A.   No.

15        Q.   You've signed some declarations in this

16   case?

17        A.   Yes.

18        Q.   Do you read documents before you sign them

19   under the penalty of perjury?

20        A.   I do.

21        Q.   You understand that signing an incorrect

22   statement is committing perjury in the State of

23   California?

24        A.   I --

25        MR. LEBE:  Objection.

1      Q.   Well, ma'am, my question is different.

2   You didn't have to use your personal mobile phone,

3   home Internet, and data plan to book visits with

4   data's customers, did you?

5      MR. LEBE:  Objection.  Compound.

6      THE WITNESS:  I don't know what you mean.  I

7   don't know how somebody would make a call if I

8   didn't use my phone or data.

9   BY MS. BRONCHETTI:

10      Q.   Did you, you never had to use your

11   personal vehicle to travel to and from visits with

12   defendant's customers; is that correct?

13      MR. LEBE:  Asked and answered many times.  You

14   can answer again.

15      THE WITNESS:  Yeah, that's correct.

16   BY MS. BRONCHETTI:

17      Q.   So that statement, in addition, although I

18   used my personal vehicle to travel to and from

19   visits with defendant's customers, defendant failed

20   to adequately reimburse me for gas mileage, wear and

21   tear, necessary maintenance, and for automobile

22   insurance, despite requiring me to possess this

23   insurance.

24          That's not an accurate statement, is it?

25      MR. LEBE:  Objection.

1          THE WITNESS:  I realized --

2          Go ahead.  I'm sorry.

3          MR. LEBE:  Yeah, it's vague.  You can answer

4    the question, though.

5          THE WITNESS:  I realized I misread the

6    paragraph, and I corrected it.

7    BY MS. BRONCHETTI:

8          Q.   Ms. Matthews, that statement is not

9    truthful, correct?  The statement, in addition,

10   although I used my personal vehicle; did you ever

11   use your personal vehicle?

12         MR. LEBE:  Are you withdrawing the previous

13   question?

14   BY MS. BRONCHETTI:

15         Q.   Did you ever use your personal vehicle?

16         MR. LEBE:  It's been asked and answered many

17   times.  You can answer again.

18         THE WITNESS:  I did not.

19   BY MS. BRONCHETTI:

20         Q.   So, under perjury, the statement that you

21   said, in addition, although I used my personal

22   vehicle to travel to and from visits with

23   defendant's customers, that's not a true statement,

24   correct?

25         MR. LEBE:  Asked and answered.  You can answer

1  again.

2       THE WITNESS:  I misread it, and I corrected it.

3  BY MS. BRONCHETTI:

4       **Q.   Why won't you answer, yes or no, is that a**

5  **true statement or not?  Can you answer that**

6  **question?**

7       A.   I've answered al-, the questions already.

8  I didn't use my vehicle.  I did state that, I did

9  agree to that, I signed that, but it was a mistake.

10  I realized it, and I corrected it.

11       **Q.   So, it's an untrue statement; is that**

12  **right?**

13       MR. LEBE:  It's asked and answered.  It's

14  badgering.  We provided an amended declaration of

15  our own, without any request or comment from

16  defendant, in order to correct this, and now you're

17  harassing her about having done that.

18       But you can answer.

19  BY MS. BRONCHETTI:

20       **Q.   Is it or is it not a true statement?**

21       A.   Of course, it's not a true, it's an error

22  on my part, because I made a mistake when I read

23  that.  I don't know why you -- no, it's not a true

24  statement.  I did correct it.  I realized I made a

25  mistake, that I'm sorry about that.

 1  answer, again, so, move on.

 2       MS. BRONCHETTI:  I just want it for the record.

 3  This class representative doesn't think signing

 4  documents under the penalty of perjury is important.

 5  So, we've got that.

 6       MR. LEBE:  Move on, counsel.

 7  BY MS. BRONCHETTI:

 8       Q.   How much time on a given visit did you

 9  spend confirming visits with customers?

10       A.   I think there were some confirmation calls

11  that were made when they had the new app.  Not that

12  many of the confirmation calls I made, because they

13  end up wanting to talk to you right then at that

14  point in time, and then, so, it made two calls, and

15  one you didn't get paid for.  You didn't get paid

16  for the confirmation call, so I would just do it

17  during the scheduled time.

18       Q.   Okay.  So, going back, is it true that you

19  did not make a confirmation call for every visit

20  that you had with every Pal member?

21       A.   No.  What are you, how are you defining a

22  confirmation call?

23       Q.   I don't know, ma'am.  Do you know what

24  that word means?  Because you used it in the --

25       A.   I do.

```
 1        THE WITNESS:  Okay.

 2        MR. LEBE:  You have to slow down.

 3        So, can I hear the question read back, please.

 4   BY MS. BRONCHETTI:

 5        Q.   How many minutes a day --

 6        MS. BRONCHETTI:  I was going to help you.  I

 7   was trying to help.

 8        THE COURT REPORTER:  Thank you.

 9        MR. LEBE:  I don't think that helps, because

10   then there's just a second question.

11        THE COURT REPORTER:  That's very nice of you,

12   thank you very much.

13             (The requested portion was read:

14             Q.  How many minutes a day did you spend

15             confirming calls where you were not paid

16             by Papa for that time?)

17        MS. BRONCHETTI:  Objection.  Calls for a legal

18   conclusion.  You can answer.

19        THE WITNESS:  I can't give you a number.  Papa

20   knows which calls they required a confirmation call

21   for.  It was on part of the new app, not the old

22   app, and I stopped doing it towards the end.  I

23   didn't always do the confirmation towards the end of

24   the time I worked there.

25   BY MS. BRONCHETTI:
```

1   understand that when I'm saying the word,

2   consequence, as an employee, if you are told to do

3   something and you don't do it, your employer can

4   discipline you, right?  Do you agree with --

5        A.   No.

6        Q.   -- that?

7        A.   I agree.  They don't always discipline.

8   Sometimes, you know, give you a warning, whatever,

9   just talk to you about it, but, yeah, there can be

10  consequences, yeah.

11       Q.   Okay.  So, we're talking about the same

12  thing.

13       A.   Uh-huh.

14       Q.   When you didn't make confirmation calls

15  when you worked with Papa, did you ever, were you

16  ever subject to any adverse consequence?

17       A.   They flash something across the screen

18  about the, I can't remember exactly, but the message

19  said about making the confirmation calls as, they

20  always said, put, when you talk about consequences

21  or warning, that's how they used to do it.

22            They flash a message across the screen,

23  and I believe I called them up and talked to them

24  about it, about the situation, but I can't, I can't

25  remember exactly.  This is a long time ago, and I

1    barely remember it.

2        Q.   Okay.  So, sitting here today, did you

3    ever get a written warning for not making

4    confirmation calls, when you didn't make them?

5        A.   If you consider a flash across the screen

6    as a warning, then --

7        Q.   Do you know if the flash across the screen

8    was directly initiated just to you, or was a general

9    message to everybody?

10       MR. LEBE:  Calls for speculation.

11       THE WITNESS:  I don't remember, honestly.  I

12   don't remember if it was because I didn't make a

13   call or if it was for everybody.

14       It's been a long time since I saw that message.

15   BY MS. BRONCHETTI:

16       Q.   And would you get a flash across the

17   screen every time you didn't make this confirmation

18   call?

19       A.   I don't remember.

20       Q.   So, even though you, but you definitely

21   got this flash, and you don't remember what it says;

22   is that right?

23       A.   That's right.

24       Q.   Okay.  And whatever this flash said after

25   you didn't make a confirmation call, you continued

1    to ignore that flash and continued to not make

2    confirmation calls after a certain point; is that

3    right?

4         A.   I don't remember.  Honestly, I don't

5    remember about that.  I believe I called them up and

6    talked to them about it.

7         Q.   Okay.  Okay.  But, after you talked to

8    them, you continued to not make confirmation calls,

9    right?

10        A.   I don't remember the conclusion of the

11   call.  I know I stopped making them.  I don't know

12   if it's something we agreed upon, or --

13        Q.   You don't remember.

14        A.   Yeah.

15        Q.   So, you didn't get kicked off the app

16   because you stopped making these confirmation calls,

17   right?

18        A.   That's right.

19        Q.   Did you read the independent contractor

20   agreement before you signed it?

21        MR. LEBE:  Objection.  Lacks foundation.

22   Vague.

23        THE WITNESS:  I have to see the document that

24   you're speaking about.

25   BY MS. BRONCHETTI:

1      I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby

3   certify:

4      That the foregoing proceedings were taken

5   before me, via videoconference, at the time and

6   place herein set forth; that any witnesses in the

7   foregoing proceedings, prior to testifying, were

8   duly sworn; that a record of the proceedings was

9   made by me using machine shorthand which was

10   thereafter transcribed under my direction; that the

11   foregoing transcript is a true record of the

12   proceedings.

13      Further, that if the foregoing pertains to the

14   original transcript of a deposition in a Federal

15   Case, before completion of the proceedings, review

16   of the transcript [ ] was [X] was not requested.

17      I further certify I am neither financially

18   interested in the action nor a relative or employee

19   of any attorney or party to this action.

20      IN WITNESS WHEREOF, I have this date subscribed

21   my name.

22   Dated: 09/20/2024

23

24

25   _____
                    CHRIS TE SELLE
                    CSR No. 10836

**Exhibit 4**

1 ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
2 12760 High Bluff Drive, Suite 240
San Diego, CA 92130
3 Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com
4
TAYANAH MILLER (SBN 299123)
5 **GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
6 San Francisco, CA 94105
Telephone: (415) 655-1277
7 millerta@gtlaw.com

8 Attorneys for Defendant
PAPA, INC.
9

10 ## UNITED STATES DISTRICT COURT

11 ## NORTHERN DISTRICT OF CALIFORNIA

12 Jennifer Pardo and Evangeline
Matthews, individually and on
13 behalf of all others similarly
situated,
14
              Plaintiffs,
15
      v.
16
Papa, Inc.,
17
              Defendants.
18

| | |
|---|---|
| Case No: 3:21-cv-06326-RS | |

**DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**

TAC Filed: 9/14/2022
Trial Date:      Not set

19
20
21
22
23
24
25
26
27
28

DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

I, Priscilla Hoyt, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal a little over a year ago. There was no required training to become a Pal, but I did review an orientation video that explained what Papa is, how to use the application, and how Pals are paid as part of the application process.

3. As a Pal, I have helped members with companionship, taking them to doctor visits, accompanying them to pick up their prescriptions, helping them exercise, playing games, and transporting them to see other people, among other things. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship and hope there is a service like this for me one day if I need it.

4. I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete twelve visits per month.

5. Most of my visits are one to four hours, with the average being two hours. I have never completed a visit that is longer than four hours. I have never worked over eight hours in a day, forty hours in a week, or seven consecutive days in a row.

6. I do complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one. There are incentives to completing multiple visits in a day, so I often do so.

7. I do not have my own company.

8. I do not have any other employment.

Case No.: 3:21-cv-06326-RS

DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 555595C1-91FF-4FAE-AB56-820F88F84379

9. Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am free to what I want to do. I can and do use this time for my own personal reasons, to take breaks, to eat, to talk on the phone, to get gas, etc. I am always compensated for this downtime. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

10. I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

11. I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I do not complete visits longer than 5 hours.

12. I do not clock in and out for meal periods using the app. But I always take meal periods if I am completing a longer visit. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

13. I use my car to get to members. I do drive as part of the visits that I complete with members.

14. I call members to confirm a visit in advance of the visits I complete. I only do this about 10% of the time because I have set visits with members.

15. I incur mileage expenses for being a Pal. I am always reimbursed for this expense. I use my phone to access the application and get paid, but I do not use it to be a Pal. It takes me seconds to access the application.

16. I am on a family plan for my cellular service.

Case No.: 3:21-cv-06326-RS

DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

17.     If I was able to, I would love to see members outside of the Papa platform. I have not had this opportunity because the members I work with have not run out of visits. If this happened, the member and I would negotiate the rate for any services I perform.

18.     I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

19.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

20.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 555595C1-91FF-4FAE-AB56-820F88F84379

Executed on August ___26___, 2024 at San Clemente, California.

Signed by:

A32CBC2A3F55495...

DECLARATION OF PRISCILLA HOYT IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

**Exhibit 5**

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>Papa, Inc.,<br><br>                Defendants. | Case No.: 3:21-cv-06326-RS<br><br>**DECLARATION OF KELLIE HYNDS IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**<br><br>TAC Filed: 9/14/2022<br>Trial Date:    Not set |

Docusign Envelope ID: 9069A364-22EF-4DA6-A609-227DE3B0BD6D

I, Kellie Hynds, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal around a year and a half ago. There was no required training to become a Pal, but I did review an orientation video that explained what Papa is, how to use the application, and how Pals are paid as part of the application process.

3. As a Pal, I have helped members with house cleaning, taking members to the grocery store, and companionship while completing these tasks. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship.

4. I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete less than ten visits per month, typically on weekends.

5. Most of my visits are two hours. I have never completed a visit that is longer than five hours. Only 5% of my visits go over three hours. I have never worked over eight hours in a day, forty hours in a week, or seven consecutive days in a row.

6. I rarely complete multiple visits in a single day. No more than once a month do I complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

7. I do not have my own company.

8. I am also employed full-time as a therapist during the week.

9. I occasionally perform work for other app-based companies. Specifically, I work occasionally for Uber Eats.

Case No.: 3:21-cv-06326-RS

DECLARATION OF KELLIE HYNDS IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

10.    I personally do not have visits with downtime. However, I am aware that some visits have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am aware that I would be free to what I want to do. I could use this time for my own personal reasons, to take breaks, to eat, to talk on the phone, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

11.    I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

12.    I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I do not complete visits longer than 5 hours.

13.    I do not clock in and out for meal periods using the app. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

14.    I use my car to get to members. I do drive as part of the visits that I complete with members.

15.    I call members to confirm a visit in advance of the visits I complete.

16.    I do not incur expenses being a Pal, other than mileage. I am reimbursed for all mileage. I use my phone to access the application and get paid, but I do not use it to be a Pal. It takes me less than five minutes to access the application. I also use the application to clock-in and clock-out and complete a survey at the end of each visit. The survey takes less than one minute to complete.

17.    I am a Preferred Pal for three members.

18.     As a Preferred Pal, I can reschedule my visits on the application.

19.     I am on a family plan for my cellular service.

20.     I sometimes see members outside of the Papa platform. This usually happens when the member runs out of insurance-paid visits. When this happens, the member and I negotiate the rate for any services I perform.

21.     I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

22.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

23.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

///

///

1       I declare under penalty of perjury under the laws of the State of California

2 and the United States of America that the foregoing is true and correct.

3

4       Executed on August 27, 2024 at _____Riverside_____, California.

5

6

7 _____

      Kellie Hynds

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KELLIE HYNDS IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

# Exhibit 6

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>        v.<br><br>Papa, Inc.,<br><br>                   Defendants. | Case No: 3:21-cv-06326-RS<br><br>**DECLARATION OF SANDRA RODRIGUEZ IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**<br><br>TAC Filed: 9/14/2022<br>Trial Date:     Not set |

I, SANDRA RODRIGUEZ, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal around three years ago. There was no required training to become a Pal.

3. As a Pal, I have helped members with housework, including sweeping, washing dishes, and other cleaning tasks, transporting members to doctor visits, among other things. Being a Pal isn't like a real job. It's like spending time with a family friend. A lot of members see me as family and I also see them as family. Some members have even told me they love me.

4. I appreciate the flexibility of being a Pal. The flexibility of Papa allows me to work another job and take care of my children. For example, I have scheduled my visits to allow me to pick up my son from school.

5. I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete five to ten visits per week.

6. Most of my visits are two hours. I was told that visits cannot go over two hours and fifteen minutes. I have never completed a visit that is longer than three hours. I have worked eight hours in a day with breaks in between my two-hour visits. I have never worked forty hours in a week or seven consecutive days in a row.

7. I do complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

8. I am registered to do work for a company called HopSkipDrive, where I assist with taking children to school. I have not taken a job with them in the past couple months.

DECLARATION OF SANDRA RODRIGUEZ IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 9FE4626C-490D-40C9-8CF6-1ECBE628299F

9.      I also work with a previous member outside the Papa platform for ten hours each week. She has Parkinson's disease, so I assist her with many tasks. I negotiate the rate for the services I preform with her.

10.     When I am transporting a member somewhere, dropping off the member and then picking up the member may be scheduled as two separate visits. This allows me to do anything else I want to during the visits, like picking up my child from school.

11.     Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am free to what I want to do. I can and do use this time for my own personal reasons, to take breaks, to use the restroom, to check my personal email, to schedule other visits with members, etc. Sometimes the members would like me to come into the appointment with them, while others do not. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

12.     I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Members often encourage me to take breaks during my two-hour visits. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

13.     I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I have never completed a visit longer than 5 hours.

14.     I do not clock in and out for meal periods using the app. But I always take meal periods when needed. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

DECLARATION OF SANDRA RODRIGUEZ IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 9FE4626C-490D-40C9-8CF6-1ECBE628299F

15. I use my car to get to members. I do drive as part of the visits that I complete with members.

16. I call members to confirm a visit in advance of the visits I complete.

17. I do not incur expenses being a Pal. I use my phone to access the application and get paid, but I do not use it to be a Pal. It takes me only a couple minutes to access the application.

18. I am on a family plan for my cellular phone.

19. I am a Preferred Pal for many members. I have been with many members since I started as a Pal.

20. I sometimes see members outside of the Papa platform. This usually happens when the member runs out of insurance-paid visits. When this happens, the member and I negotiate the rate for any services I perform.

21. I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

22. I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

Case No.: 3:21-cv-06326-RS

DECLARATION OF SANDRA RODRIGUEZ IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 9FE4626C-490D-40C9-8CF6-1ECBE628299F

23.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on ___08/28/2024___, 2024 at San Diego, California.

DocuSigned by:

_____ _____
4A77C7B8A65A4E0...

Sandra Rodriguez

DECLARATION OF SANDRA RODRIGUEZ IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

**Exhibit 7**

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>   v.<br><br>Papa, Inc.,<br><br>                 Defendants. | Case No.: 3:21-cv-06326-RS<br><br>**DECLARATION OF NANCY GONZALES IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**<br><br>TAC Filed: 9/14/2022<br>Trial Date:    Not set |

I, Nancy Gonzales, declare as follows:

1.     I worked as Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2.     I began working as a Pal around 2022. There was no required training to become a Pal, but Papa does have optional materials for Pals to review at their discretion.

3.     I have not worked as a Pal since April 2024 due to personal reasons.

4.     As a Pal, I have helped members with grocery shopping, cleaning, meal preparation, and going to the store, doctor's appointments, and the gym. Being a Pal isn't like a real job. It's like spending time with a family friend.

5.     I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete 2 to 3 visits per week.

6.     Most of my visits are 2 to 4 hours. I have never completed a visit that is longer than 5 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

7.     I complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

8.     I also perform work for other app-based companies. Specifically, I also perform work for Uber and Lyft. Typically, I would start performing work for Uber and Lyft at 4 a.m. and then would perform a visit or two with Papa later in the day.

9.     Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am free to what I want to do. I can and do use this time for my own personal reasons, to take breaks, to eat, to talk on the phone, etc. Even if there

DECLARATION OF NANCY GONZALES IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: EBBDB0FA-A7B4-40F2-AE47-A9118618BEF1

1   isn't obvious downtime, I am able to take a rest break when I feel like it.

2        10.    I know I can take a rest break—or two—of at least 10 minutes if I

3   want to no matter the length of my visits. No member has ever tried to interfere

4   with me taking a rest break, and no employee of Papa has ever told me I could not

5   take a rest break. Taking a rest break is completely up to me because I control

6   every aspect of my visits with a member.

7        11.    I know I can take a meal break of at least 30 minutes, completely

8   uninterrupted, if I ever need one. No member has ever tried to interfere with me

9   taking a meal period. No employee of Papa has ever told me that I could not take

10  an uninterrupted 30-minute meal period. That said, I do not usually complete

11  visits longer than 5 hours.

12       12.    On the rare occasion I may have completed a visit longer than 5

13  hours, I had significant down time and was able to take rest and meal breaks.

14       13.    About 20% of my visits end before the allotted time, but I am still

15  compensated for the full amount of time the member booked. For example, one

16  time I had a member book an hour with me, but I completed my duties within 20

17  minutes. I was still compensated for the full hour work.

18       14.    I do not clock in and out for meal periods using the app. But I always

19  take meal periods if I am completing a longer visit. The Papa application data

20  would not be an accurate reflection of whether I took a meal period on any given

21  day.

22       15.    I use my car to get to members. I do drive as part of the visits that I

23  complete with members.

24       16.    I call members to confirm a visit in advance of the visits I complete.

25       17.    I do not incur expenses being a Pal. I use my phone to access the

26  application and get paid, but I do not use it to be a Pal. I am on a family plan for

27  my cellular service.

28  //

Case No.: 3:21-cv-06326-RS

DECLARATION OF NANCY GONZALES IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

Docusign Envelope ID: EBBDB0FA-A7B4-40F2-AE47-A9118618BEF1

18. I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

19. I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

20. I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on September __, 2024 at Artesia, California.

Nancy Gonzales

DECLARATION OF NANCY GONZALES IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Case No.: 3:21-cv-06326-RS

**Exhibit 8**

Docusign Envelope ID: D228E5F3-B1D1-43A1-8FB3-546F3C21CCC2

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>Papa, Inc.,<br><br>               Defendants. | Case No.: 3:21-cv-06326-RS<br><br>**DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION**<br><br>TAC Filed: 9/14/2022<br>Trial Date:    Not set |

DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION
TO CLASS CERTIFICATION

Docusign Envelope ID: D228E5F3-B1D1-43A1-8FB3-546F3C21CCC2

I, Zerina Gacanovic, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal around October 2022. There was no required training to become a Pal, but I did review an orientation video that explained what Papa is, how to use the application, and how Pals are paid as part of the application process. It only took a few minutes to watch this video.

3. As a Pal, I have helped members with companionship, cleaning, cooking, and grocery shopping, among other things. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship and hope there is a service like this for me one day if I need it. Papa is a life saver; it helps both members and Pals.

4. I can choose to visit a member whenever I feel like it. My schedule varies. I have completed over 200 hours total as a Pal. Until about two months ago, I worked as a Pal twice a week. This is because I started a new full-time job as an account manager. I currently work with two members as a Preferred Pal. I work with them on the weekends. I appreciate the flexibility that working as a Pal gives me.

5. Most of my visits are 2 hours. I have never completed a visit that is longer than 5 hours. I have only completed two visits lasting longer than 3 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

6. I occasionally complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: D228E5F3-B1D1-43A1-8FB3-546F3C21CCC2

7.     I also previously performed work for other app-based companies. Specifically, I worked for Door Dash, which I stopped doing at the beginning of this year because I liked working for Papa more.

8.     Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I am free to do what I want to do. I can and do use this time for my own personal reasons, to take breaks, to eat, to talk on the phone with my daughter, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

9.     I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

10.     I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I do not usually complete visits longer than 5 hours.

11.     I do not clock in and out for meal periods using the app. But I always take meal periods if I am completing a longer visit. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

12.     I use my personal vehicle to get to members. I do drive as part of the visits that I complete with members.

13.     I sometimes call members to confirm a visit in advance of the visits I complete. With the members I have established relationships, I typically do not call in advance because they know I am coming.

Case No.: 3:21-cv-06326-RS

DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: D228E5F3-B1D1-43A1-8FB3-546F3C21CCC2

14.     I do not incur expenses being a Pal. I use my phone to access the application and get paid, but I do not use it to be a Pal. It only takes me a few seconds to access the app. I am on a family plan for my cellular service.

15.     I understand that nothing prevents me from negotiating a different rate with Papa for my visits.

16.     I have never had any issues with being paid by Papa. I am compensated for the entire time I spend with a member.

17.     I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

18.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

19.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: D228E5F3-B1D1-43A1-8FB3-546F3C21CCC2

1    I declare under penalty of perjury under the laws of the State of California

2   and the United States of America that the foregoing is true and correct.

3

4    Executed on   September 23   , 2024  at   San Jose                ,

5   California.

6

7

8                                          _____

9                                              Zerina Gacanovic

DECLARATION OF ZERINA GACANOVIC IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION
TO CLASS CERTIFICATION

**Exhibit 9**

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated, | Case No: 3:21-cv-06326-RS |
|---|---|
| Plaintiffs, | **DECLARATION OF CASSIE KING IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION** |
| v. | |
| Papa, Inc., | TAC Filed: 9/14/2022 |
| Defendants. | Trial Date:    Not set |

Docusign Envelope ID: BA4550A7-D2C8-41B7-96DA-13F8D756BB54

I, Cassie King, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal around 11 months ago.

3. As a Pal, I have helped members with companionship, cleaning, grocery shopping, taking them to the gym, calendaring appointments, and laundry. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship and hope there is a service like this for me one day if I need it. I have developed strong relationships with the members I work with, and I am a Preferred Pal for all members I work with.

4. I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete eight visits per month. I have not completed visits in the last two months due to family matters. I appreciate the flexibility that working as a Pal gives me.

5. Most of my visits are 3 hours. I have never completed a visit that is longer than 5 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

6. I have never had any issues with being paid by Papa.

7. I occasionally complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

8. I also perform work for other app-based companies. Specifically, for Uber, Lyft, and Angi. Additionally, I work as an independent contractor performing in-home supportive services.

9. I also have my own cleaning services company.

DECLARATION OF CASSIE KING IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: BA4550A7-D2C8-41B7-96DA-13F8D756BB54

10. Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member grocery shopping, for example, I am free to do what I want to do. I can take a break, talk on the phone, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

11. I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

12. I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I have never completed visits longer than 5 hours.

13. I use my personal vehicle to get to members. I do drive as part of the visits that I complete with members.

14. I call members to confirm a visit in advance of the visits I complete.

15. I use my phone to access the application and get paid, but I do not use it to be a Pal. It takes me a couple seconds to access the application. I am on a family plan for my cellular service.

16. I understand that nothing prevents me from negotiating a different rate with Papa for my visits.

17. I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

DECLARATION OF CASSIE KING IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: BA4550A7-D2C8-41B7-96DA-13F8D756BB54

18.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

19.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on ____09/24/2024____, 2024 at ____Lancaster ca____, California.

Cassie King

DocuSigned by:
DBBF6B60FEE8417...

_____
Cassie King

**Exhibit 10**

Docusign Envelope ID: 71463400-7131-46B7-8B97-F24EAD338269

1   ELLEN M. BRONCHETTI (SBN 226975)
    **GREENBERG TRAURIG, LLP**
2   12760 High Bluff Drive, Suite 240
    San Diego, CA 92130
3   Telephone: (619) 848-2523
    ellen.bronchetti@gtlaw.com
4
    TAYANAH MILLER (SBN 299123)
5   **GREENBERG TRAURIG, LLP**
    101 Second Street, Suite 2200
6   San Francisco, CA 94105
    Telephone: (415) 655-1277
7   millerta@gtlaw.com

8   Attorneys for Defendant
    PAPA, INC.
9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12  | Jennifer Pardo and Evangeline | Case No.: 3:21-cv-06326-RS |
    | Matthews, individually and on | |
13  | behalf of all others similarly | |
    | situated, | |
14  | | **DECLARATION OF JENNIFER** |
    | Plaintiffs, | **MARTIN IN SUPPORT OF** |
15  | | **DEFENDANT PAPA, INC.'S** |
    | | **OPPOSITION TO CLASS** |
    | | **CERTIFICATION** |
16  | v. | |
17  | Papa, Inc., | TAC Filed: 9/14/2022 |
    | | Trial Date:     Not set |
18  | Defendants. | |

DECLARATION OF JENNIFER MARTIN IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

Docusign Envelope ID: 71463400-7131-46B7-8B97-F24EAD338269

I, Jennifer Martin, declare as follows:

1.  I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2.  I began working as a Pal over a year ago. There was no required training to become a Pal, but I did review an orientation video that explained what Papa is, how to use the application, and how Pals are paid as part of the application process.

3.  As a Pal, I have helped members with companionship, cleaning, organization, and grocery shopping, among other things. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship and hope there is a service like this for me one day if I need it.

4.  I can choose to visit a member whenever I feel like it. My schedule varies. I have completed over 100 visits. I currently work with four members as a Preferred Pal. Every other week, I complete visits 5 days a week.

5.  Most of my visits are 2 to 4 hours. I have never completed a visit that is longer than 5 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

6.  I complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

7.  Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I understand I can use this time for my own personal reasons, to take breaks, to eat, to talk on the phone, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

Case No.: 3:21-cv-06326-RS

DECLARATION OF JENNIFER MARTIN IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

8. I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

9. I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I do not usually complete visits longer than 5 hours.

10. I do not clock in and out for meal periods using the app. But I always take meal periods if I am completing a longer visit. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

11. I use my personal vehicle to get to members. I do drive as part of the visits that I complete with members.

12. I sometimes call members to confirm a visit in advance of the visits I complete. With the members I have established relationships, I do not call in advance because the schedule is set.

13. I use my phone to access the application and get paid, but I do not use it to be a Pal. It only takes me a few seconds to access the app. I am on a family plan for my cellular service.

14. I understand that I could use free internet available at a library or coffee stop to access the Papa application, but I choose to access the application using my own internet/cellular plan for my own convenience.

15. I always provide feedback after a visit, but I understand I am not required to do so.

DECLARATION OF JENNIFER MARTIN IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 71463400-7131-46B7-8B97-F24EAD338269

16.     I understand that the Visit Standards are not requirements. I used to view them before visits, but now I do not.

17.     I have never had any issues with being paid by Papa. I am compensated for the entire time I spend with a member.

18.     I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

19.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

20.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

DECLARATION OF JENNIFER MARTIN IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 71463400-7131-46B7-8B97-F24EAD338269

Executed on ___09/25/2024___, 2024 at ___Rialto___,

California.

Signed by:

*Jennifer Martin*

9349A1C8930D48E...

_____

Jennifer Martin

# Exhibit 11

Docusign Envelope ID: 93513B85-439B-4B03-A88A-4A9BC84E1922

ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

Attorneys for Defendant
PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Papa, Inc., <br><br> Defendants. | Case No.: 3:21-cv-06326-RS <br><br> **DECLARATION OF MARSI HANEY IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION** <br><br> TAC Filed: 9/14/2022 <br> Trial Date:  Not set |

DECLARATION OF MARSI HANEY IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

Docusign Envelope ID: 93513B85-439B-4B03-A88A-4A9BC84E1922

I, Marsi Haney, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I have been a Pal for almost two years and have completed over 100 visits. When I first started working as a Pal, I picked up a lot of visits. Now, I work as a grant writer part-time, so I typically complete 4 visits per month. I can choose to visit a member whenever I feel like it.

3. There was no required training to become a Pal.

4. As a Pal, I have helped members with companionship, cleaning, laundry, walking their dogs, cooking, and grocery shopping, among other things. I appreciate the flexibility being a Pal gives me; I am able to schedule visits that best fit my schedule.

5. I currently work as a Preferred Pal for some members.

6. I have received additional/bonus pay for certain visits. For example, I worked with a member that was perceived as difficult by other Pals. I received additional pay for taking visits with this member.

7. Most of my visits are 2 hours. I have never completed a visit that is longer than 3 hours or 5 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

8. I complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

9. I often have a significant amount of downtime during visits. For example, if I am providing cleaning services, I keep my phone with me while I am working. I would be allowed to answer a phone call, check my phone, use the

Docusign Envelope ID: 93513B85-439B-4B03-A88A-4A9BC84E1922

1   restroom, get some water, etc. Even if there isn't obvious downtime, I am able to

2   take a rest break when I feel like it.

3       10.     I know I can take a rest break—or two—of at least 10 minutes if I

4   want to no matter the length of my visits. No member has ever tried to interfere

5   with me taking a rest break, and no employee of Papa has ever told me I could not

6   take a rest break. Taking a rest break is completely up to me because I control

7   every aspect of my visits with a member.

8       11.     I know I can take a meal break of at least 30 minutes, completely

9   uninterrupted, if I ever need one. No member has ever tried to interfere with me

10  taking a meal period. No employee of Papa has ever told me that I could not take

11  an uninterrupted 30-minute meal period. That said, I do not usually complete

12  visits longer than 5 hours.

13      12.     I do not clock in and out for meal periods using the app. But I always

14  take meal periods if I am completing a longer visit. The Papa application data

15  would not be an accurate reflection of whether I took a meal period on any given

16  day.

17      13.     I use my personal vehicle to get to members and I drive as part of the

18  visits that I complete with members.

19      14.     I sometimes call members to confirm a visit in advance of the visits I

20  complete. This depends on whether I have an existing relationship with the

21  member. With members I work with regularly, I do not call them to confirm, but I

22  may text them to let them know that I am coming.

23      15.     I do not incur expenses being a Pal, other than mileage, but I am

24  compensated for the time I spend driving a member somewhere.

25      16.     I use my phone to access the application and get paid, but I do not

26  use it to be a Pal. It only takes me a few seconds to access the app.

27

28

DECLARATION OF MARSI HANEY IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

Docusign Envelope ID: 93513B85-439B-4B03-A88A-4A9BC84E1922

17.     I understand that I could use free internet at library or a coffee shop to access the application. I choose to access the application using my cellular plan for my own convenience. I am on a family plan for my cellular service.

18.     I have never had any issues with being paid by Papa. I am compensated for the entire time I spend with a member.

19.     I usually provide feedback after a visit with a member. However, there have been times I have not done so. I have never been disciplined by Papa for not submitting visit feedback.

20.     I typically do not review Visit Requirements before visits, and I do not believe it is required to review them.

21.     I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

22.     I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

23.     I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go

DECLARATION OF MARSI HANEY IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 93513B85-439B-4B03-A88A-4A9BC84E1922

against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on 09/25/2024 _____, 2024 at El Cajon _____, California.

Marsi Haney

DECLARATION OF MARSI HANEY IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

**Exhibit 12**

1  ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
2  12760 High Bluff Drive, Suite 240
San Diego, CA 92130
3  Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com
4
TAYANAH MILLER (SBN 299123)
5  **GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
6  San Francisco, CA 94105
Telephone: (415) 655-1277
7  millerta@gtlaw.com

8  Attorneys for Defendant
PAPA, INC.
9

10             **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12  Jennifer Pardo and Evangeline         Case No.: 3:21-cv-06326-RS
Matthews, individually and on
13  behalf of all others similarly
situated,                             **DECLARATION OF JENNY**
14                                        **MARADIAGA IN SUPPORT OF**
                       Plaintiffs,    **DEFENDANT PAPA, INC.'S**
15                                        **OPPOSITION TO CLASS**
                                          **CERTIFICATION**
16         v.

17  Papa, Inc.,                           TAC Filed: 9/14/2022
                                          Trial Date:    Not set
18                     Defendants.

19

20

21

22

23

24

25

26

27

28

I, JENNY MARADIAGA, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I began working as a Pal around November 2023. I have completed approximately 190 visits total.

3. As a Pal, I have helped members with companionship, cleaning, and grocery shopping. Being a Pal isn't like a real job. It's like spending time with a family friend. I enjoy the companionship and hope there is a service like this for me one day if I need it.

4. Being a Pal is an avenue for friendship and it means way more to me than the money.

5. I can choose to visit a member whenever I feel like it. My schedule varies. I typically complete 20 visits per month.

6. Most of my visits are under 3 hours. I have never completed a visit that is longer than 5 hours. I have only completed one visit over 3 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row. It would be impossible for me to work 8 hours in a day for Papa, as there are not enough visits available.

7. I do complete multiple visits in a single day. If I complete multiple visits in a day, I receive a bonus. Additionally, if I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one. The app does not allow me to schedule another visit during this 30-minute break.

8. I also perform work for a local school district.

9. Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for

DECLARATION OF JENNY MARADIAGA IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

1  example, I am free to what I want to do. I can and do use this time for my own

2  personal reasons, to take breaks, to eat, to talk on the phone, etc. Even if there

3  isn't obvious downtime, I am able to take a rest break when I feel like it.

4      10.    I know I can take a rest break—or two—of at least 10 minutes if I

5  want to no matter the length of my visits. No member has ever tried to interfere

6  with me taking a rest break, and no employee of Papa has ever told me I could not

7  take a rest break. Taking a rest break is completely up to me because I control

8  every aspect of my visits with a member.

9      11.    I know I can take a meal break of at least 30 minutes, completely

10  uninterrupted, if I ever need one. No member has ever tried to interfere with me

11  taking a meal period. No employee of Papa has ever told me that I could not take

12  an uninterrupted 30-minute meal period. That said, I do not usually complete

13  visits longer than 5 hours.

14      12.    I do not clock in and out for meal periods using the app. But I always

15  take meal periods if I am completing a longer visit. The Papa application data

16  would not be an accurate reflection of whether I took a meal period on any given

17  day.

18      13.    I use my personal vehicle to get to members. I do drive as part of the

19  visits that I complete with members.

20      14.    I call members to confirm a visit in advance of the visits I complete.

21  I am on a family plan for my cellular service.

22      15.    I use my phone to access the application and get paid, but I do not

23  use it to be a Pal. It takes me a couple of minutes to access the application.

24      16.    I understand that nothing prevents me from negotiating a different

25  rate with Papa for my visits.

26      17.    I understand that a class action lawsuit has been filed by a former Pal

27  claiming that Pals are misclassified as independent contractors and that Pals, like

28  me, should have been treated like employees. I understand that if the case goes

DECLARATION OF JENNY MARADIAGA IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO
CLASS CERTIFICATION

Docusign Envelope ID: 5B41138A-293D-4D7C-9DB7-11D7B42D2E3F

forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

18. I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

19. I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on ___September 27___, 2024 at ___Modesto___, California.

Signed by:

_____
0A0EB23220154F8...
Jenny Maradiaga

DECLARATION OF JENNY MARADIAGA IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

**Exhibit 13**

1 | ELLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
2 | 12760 High Bluff Drive, Suite 240
San Diego, CA 92130
3 | Telephone: (619) 848-2523
ellen.bronchetti@gtlaw.com
4 |
TAYANAH MILLER (SBN 299123)
5 | **GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
6 | San Francisco, CA 94105
Telephone: (415) 655-1277
7 | millerta@gtlaw.com
8 | Attorneys for Defendant
PAPA, INC.
9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12 Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated, | Case No: 3:21-cv-06326-RS |
| 13 | |
| 14 | **DECLARATION OF MAKAYLA JOHNSON IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION** |
| 15 Plaintiffs, | |
| 16 v. | |
| 17 Papa, Inc., | TAC Filed: 9/14/2022 |
| 18 Defendants. | Trial Date: Not set |

19
20
21
22
23
24
25
26
27
28

Docusign Envelope ID: 2847F46B-E35C-4326-B283-46519C88239A

I, Makayla Johnson, declare as follows:

1. I work as a Papa Pal in California. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct, and if called as a witness, I could and would testify competently about the facts in this declaration.

2. I have been working as a Pal for over a year. There was no required training to become a Pal.

3. As a Pal, I have helped members with companionship, cleaning, cooking, taking members to appointments, and grocery shopping, among other things.

4. I can choose to visit a member whenever I feel like it. My schedule varies. I have completed over 50 visits. I used to work as a Pal multiple times a week, but now I work less. I appreciate the flexibility that working as a Pal gives me.

5. I am a Preferred Pal for all the members I work with.

6. Most of my visits are 1 to 2 hours. I have never completed a visit that is longer than 5 hours. I have never worked over 8 hours in a day, 40 hours in a week, or seven consecutive days in a row.

7. I occasionally complete multiple visits in a single day. If I do complete multiple visits, the Papa app forces me to take a mandatory 30-minute break in between, even if I don't want or need one.

8. Depending on the type of visit, I may have a significant amount of downtime. If a visit involves taking a member to a doctor appointment, for example, I understand that I am free to what I want to do. I may use this time for my own personal reasons, to take breaks, to eat, to check my phone, etc. Even if there isn't obvious downtime, I am able to take a rest break when I feel like it.

9. I know I can take a rest break—or two—of at least 10 minutes if I want to no matter the length of my visits. No member has ever tried to interfere

DECLARATION OF MAKAYLA JOHNSON IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 2847F46B-E35C-4326-B283-46519C88239A

with me taking a rest break, and no employee of Papa has ever told me I could not take a rest break. Taking a rest break is completely up to me because I control every aspect of my visits with a member.

10.     I know I can take a meal break of at least 30 minutes, completely uninterrupted, if I ever need one. No member has ever tried to interfere with me taking a meal period. Members encourage me to take breaks. No employee of Papa has ever told me that I could not take an uninterrupted 30-minute meal period. That said, I do not usually complete visits longer than 5 hours.

11.     I do not clock in and out for meal periods using the app. But I always take meal periods if I am completing a longer visit. The Papa application data would not be an accurate reflection of whether I took a meal period on any given day.

12.     I use my personal vehicle to get to members. I do drive as part of the visits that I complete with members.

13.     I sometimes call members to confirm a visit in advance of the visits I complete. With the members I have established relationships, I typically do not call in advance because they know I am coming.

14.     I use my phone to access the application and get paid, but I do not use it to be a Pal. It only takes me a few seconds to access the app. I am on a family plan for my cellular service.

15.     I have seen members outside of the Papa platform and they have paid me for my services directly. For example, I once drove a member home from the hospital. I did not do this service through Papa.

16.     I have never had any issues with being paid by Papa. I am compensated for the entire time I spend with a member.

17.      I understand I could use free internet at a library or coffee shop, but I choose to access the app using my own cellular plan for my own convenience.

DECLARATION OF MAKAYLA JOHNSON IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

Docusign Envelope ID: 2847F46B-E35C-4326-B283-46519C88239A

18. I usually provide feedback after a visit, but it would not be an issue if I did not provide feedback.

19. I do not review the visit standards before starting a visit.

20. I understand that a class action lawsuit has been filed by a former Pal claiming that Pals are misclassified as independent contractors and that Pals, like me, should have been treated like employees. I understand that if the case goes forward as a class action, I might be included in the class of people who are involved in the lawsuit. I also understand that making this declaration will not affect my ability to be included as a member of the class.

21. I voluntarily make this declaration, of my own free will. I have not been coerced, pressured, threatened, or promised anything in connection with this declaration. This declaration was drafted during an interview I had with one of Papa's attorneys. The declaration was typed by the attorney, but all the statements in this declaration are true and based on my interview. I was offered the opportunity to make any changes that I wanted to this declaration before I signed it. I understand that the attorney I spoke with represents Papa and is not my attorney. I also understand that I can speak with any attorney of my choice concerning this declaration or any other matter. I understand that Papa plans to use this declaration in its defense of the lawsuit filed against it.

22. I understand that by signing this declaration, I may be asked to testify as a witness in this case. I also understand that this declaration might go against my own interests, to the extent that my interests are aligned with the individuals who filed the lawsuit against Papa claiming they have been misclassified as independent contractors.

Case No.: 3:21-cv-06326-RS

DECLARATION OF MAKAYLA JOHNSON IN SUPPORT OF DEFENDANT PAPA, INC.'S OPPOSITION TO CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California

2  and the United States of America that the foregoing is true and correct.

3

4    Executed  on  September  ____27____, 2024  at  __Los Angeles__,

5  California.                            [Day]                              [City]

6

7                              DocuSigned by:

8                           _Makayla Johnson_     _____
                             81E81916D18B42B...

9                                   Makayla Johnson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28