1
2
3
4

Ellen Bronchetti (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: 619-848-2500
Facsimile: 949-732-6501
Ellen.Bronchetti@gtlaw.com

5
6
7
8

TAYANAH MILLER (SBN 299123)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1277
millerta@gtlaw.com

9
10
11

Attorneys for Defendant
PAPA, INC.

12

### UNITED STATES DISTRICT COURT

13

### NORTHERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21

| | |
|---|---|
| JENNIFER PARDO AND EVANGELINE MATTHEWS, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PAPA, INC.<br><br>        Defendant. | CASE NO. 3:21-cv-06326-RS<br><br>**DECLARATION OF DANI BCHARA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Trial Date:  None |

22
23
24
25
26
27
28

1

**DECLARATION OF DANI BCHARA**

I, Dani Bchara, declare as follows:

1.      I am over the age of 18 years, and I testify to the following matters set forth below based on my own personal knowledge or knowledge and information obtained by me from a review of business records in the ordinary course of my employment. If called as a witness, I could and would competently testify regarding these matters.

2.      This Declaration is made in support of Defendant's Papa Inc.'s ("Papa's") Memorandum of Points and Authorities in Opposition to Plaintiffs Jennifer Pardo and Evangeline Matthews' ("Plaintiffs") Motion for Class Certification ("Opposition").

3.      I am currently employed as the Chief Financial Officer ("CFO") and currently head of all operations of Papa, Inc., Defendant in the above-referenced matter.

4.      In connection with my job duties, I am familiar with Papa's (1) business operations; (2) mission and purpose; and (3) policies and practices, including how they apply. I am also familiar with the visit and pay information applicable to Plaintiffs in this action.

5.      Papa is an application-based technology company that connects people in need (called, "Members") with people that want to provide certain non-medical support tasks and companionship (called, "Pals"). The marketplace is paid for by Medicare Advantage, Medicaid, commercial health plans, and employee benefit plans (called, "Clients"). The Clients offer to their constituents Papa and its Pal network as a supplemental companionship service benefit. Papa provides the platform, or marketplace, to enable safe and effective connections between Members and Pals. Papa does not provide any services to Members, nor does Papa have any privity of contract with Members. Neither Papa, nor any of its subsidiaries or affiliates, retains any control over the services that Pals ultimately perform.

6.      Papa does, however, provide services to its Clients, and the marketplace Papa powers is merely a part of the overall value proposition that Papa sells to its Clients. Papa's market differentiator is its set of developed technologies that enable Papa to (i) focus on specific goals for specific Client populations, (ii) provide detailed analytics to Clients on their Members' care needs, trends, and successful health care gap closures, and (iii) enabling Clients to collaborate with other third parties to quickly and

2

Docusign Envelope ID: 63324085-4B61-4C18-BD9E-7D136F5169EE

efficiently get their Members timely support. Papa's Clients rely on Papa's advanced technology to more effectively address health care gaps and social determinants of health affecting their membership population, ultimately, leading to healthier Members and lower long-term health-plan costs.

7. Pals provide companionship and support services directly to Members ("Services"). These Services have been shown to promote independence (by helping older adults age in place), reduce inequities (by reaching historically marginalized populations), cure loneliness (by connecting lonely adults with people who want to listen), control health care costs (by reducing time spent in chronic care facilities with more routine preventative care measures, by assisting them pickup their medications, and scheduling and transporting Members to appointments) and improve overall outcomes (by helping Members feel physically and mentally healthier).

8. Papa classifies Pals as independent contractors. An independent contractor agreement—previously called the End User License Agreement ("EULA") and currently called the Papa Pal Agreement, together the "Pal Agreement"—governs the relationship between Papa and Pals. The Pal Agreement contains an arbitration clause, with a class waiver, and over 99.9% of Pals in California have agreed to arbitrate all their disputes with Papa, including this dispute.

9. The application process for Pals consists of a background check (which Papa is required by contract with its Clients, and by law in certain instances, to procure), agreeing to the Pal Agreement, attesting to safety related commitments (to demonstrate that a Pal meets the qualifications to perform the Services in accordance with Clients' requests), and reviewing an orientation video that explains how to use the App and the like.

10. Once Pals are approved to use Papa's platform, Papa exercises little to no control over them. Pals are completely free to choose to accept any available visit presented in the App. Papa tracks completed visits and mileage (if applicable) through the App for ease of payment purposes. The App also prompts Pals to let Papa know when a visit is completed so that Papa can pay the Pal.

11. In California, Papa pays Pals an hourly rate—which can be adjusted based on demand—and transportation pay (which is pay for transporting Members as part of the Service provided) by the mile. Until March 16, 2023, Papa also paid Pals commute pay, for all travel expenses to and from a visit. After

3

Docusign Envelope ID: 63324085-4B61-4C18-BD9E-7D136F5169EE

that date, Papa folded this pay into the hourly rate such that currently, Papa intends the hourly rate to compensate Pals for commute expenses and visit time. Transportation pay is still paid separately. Although the hourly rate has always exceeded the minimum wage, the Pal Agreement makes clear that Pals are still free to—and do—negotiate different pay with Papa, and to have the ability to accept or reject rates they deem unacceptable. Pals can also contact Papa support for any pay issues.

12. Papa does not require Pals to incur any expenses, and tools are not required to perform any Service. If a Pal wants to use Papa's App, they must be connected to the internet, but Papa does not require Pals to purchase an internet or data plan and Pals are free to access free sources of internet to interface with the App, including at the free public library or retail establishments with free internet such as a Starbucks. That said, Papa does have a practice of reimbursing Pals for reasonably necessary expenses, such as parking at health clinics, and state toll roads.

13. Papa's Visit Standards —which didn't even exist until May 9, 2023—provides Pals with general common-sense guidelines to use before, during, and after visits. The Visit Standards suggest that Pals, for example, review visit details, arrive on time and leave on time, be SAFE, and to avoid engaging in behaviors that are simply not professional (e.g., bringing others such as family members or pets to the visit, sharing Member information, using recreational drugs or alcohol while driving or otherwise as it could endanger the well-being of the Member or Pal, and engaging in criminal behavior). Except for the behaviors that Papa asks Pals to never engage in that could endanger the safety of the Pal or the Member, these guidelines are suggestions, and Papa does not enforce this policy in practice. Significantly, Papa has no record of ever disciplining a Pal for failing to confirm visits, failing to call a Member, or failing to complete or incorrectly completing visit feedback.

14. Pals can choose to accept visits that align with their Services preference. Services include, for example, providing companionship (such as playing board games, watching television or movies, discussing thoughts, feelings, news, and experiences), grocery shopping (including driving to and from the store, picking up grocery items from a list, putting away groceries), health reminders (including helping the Member schedule appointments and wellness checks, such as, reminding the Member to get their eyes checked), helping Members obtain their medications from the pharmacy, transportation (including taking

4

Docusign Envelope ID: 63324085-4B61-4C18-BD9E-7D136F5169EE

the Member on trips to places of worship, doctor appointments, community centers, events, libraries, parks and trails, to visit friends and family), errand assistance (like driving to and from a store or pharmacy or accompanying Members to places like the bank or salon), parental support (including engaging in fitness activities and games, going to the park, overseeing meal time), exercise assistance (such as attending exercise classes with the Member, encouraging the Member to join them on a walk, assisting the Member with exercise), technology help (including setting up personal devices, assisting Members with social media, showing Members how to stream services, assisting with telehealth appointments), pet help (including pet walking, pet companionship, filling water or food bowls, making grooming appointments), and house task assistance (such as light dusting, folding clothes, prepping meals, clearing the table, organizing, though nothing that would amount to work that a professional would perform).

15. Pals also choose when, where, and how they would like to provide the Services. After signing up to be a Pal, the App works something like this: (1) if a Pal wants to work, Pals see a list of available visits in their area (visits are sorted by distance from the Pal and can be filtered by time and day of the week); (2) Pals can view details about visits, including the date, time, location, duration, and the Services the Member wants help with; (3) Pals find a visit that is a good fit—it fits their schedule, location requirements, and what Services they're willing to perform—then scroll to the bottom of the visit screen and tap 'Accept Visit'; (4) Pals confirm the visit, with a tap on the App; and (5) Pals either (a) for an in-person visit, start commute, then start and complete the visit; or (b) for a virtual visit, start and complete the visit.

16. Some Pals provide only one type of Service—say in-person companionship or errand help—others may assist Members with any in-person Service, and still other Pals perform only virtual visits.

17. Pals can choose to complete a single visit or even several visits a day; it's completely up to the Pal. Papa does not require Pals to complete any visits at all. Pals also choose how to complete the Services they provide. Although Papa offers resources and guidance, Papa does not require Pals to perform any Service in a certain way.

18. Because Pals set their own visit schedules, they decide when to take meal or rest periods. In creating their schedule, Pals may, for example, choose to offer a single Service a day, allowing time for a

DECLARATION OF DANI BCHARA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Docusign Envelope ID: 63324085-4B61-4C18-BD9E-7D136F5169EE

meal or rest period after. Alternatively, they may choose to schedule a longer Service and take a meal or rest period during the Service, or to forgo one altogether.

19.     Most Pals perform visits shorter than three and a half hours. The average visit completed in California is approximately 118 minutes; the average in-person visits is just over 2 hours, while the average virtual visit is 21 minutes. Pals can and do schedule longer visits, subject to a scheduled visit maximum that is set by the Member's health plan. The current scheduled visit maximum is five hours, meaning that at least one Client permits scheduled visits of up to five hours, but many health plans only offer a maximum of two to four hours. In every instance, Papa's practice is to leave it up to Pals to manage their meal and rest period needs. Papa, in practice, provides reasonable opportunities to take meal and rest periods because Papa never has control over how the Pal performs the Service, and never impedes or discourages meal or rest periods while on a visit or otherwise.

20.     Despite the scheduled visit maximums above, a Pal's actual visit duration may go shorter or longer. However, it is very rare that actual visits go longer than 5 hours. In fact, only 1.39% of **all completed visits in California** went over 5 hours, and a great deal of those captured visits were actually Pals who forgot to end a visit in the App.

21.     Although Papa does not control Pals' schedules, the App does prevent visits from being scheduled if within 15 minutes from the end of prior scheduled visit. Since visits are, with few exceptions, offered at the half or full hour mark, Pals often see a forced 30-minute break between visits.

22.     Plaintiff Jennifer Pardo signed up to be a Pal on October 20, 2020. During the time she was using Papa's platform, she performed five visits. These visits lasted between 5 and 20 minutes, and each was performed virtually. Plaintiff Pardo did not sign an arbitration agreement with a class waiver.

23.     Plaintiff Evangeline Matthews conducted 1,224 visits from June 17, 2020, to March 7, 2022, and all of them were virtual. The longest visit was 1 hour and 47 minutes and the shortest visit was 5 minutes. Plaintiff Matthews did not sign an arbitration agreement with a class waiver.

Papa does not monitor or track the time Pals spend reviewing visit details and designing their schedules to fit their needs.

Docusign Envelope ID: 63324085-4B61-4C18-BD9E-7D136F5169EE

I declare under penalty of perjury under the laws of the States of California and the United States that the foregoing is true and correct.

Dated:  Executed in ___Franklin___, ___TN___ on September 30 ,2024

DocuSigned by:

*Dani Bchara*

—82D494B114914E9...  _____

DANI BCHARA

DECLARATION OF DANI BCHARA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION