Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Rayne A. Brown (SBN 342011)
Rayne@lebelaw.com
**Lebe Law, APLC**
3900 W. Alameda Avenue, Fifteen Floor
Burbank, CA 91505
Telephone: (213) 444-1973

Attorneys for Plaintiff Jennifer Pardo and Evangeline Matthews,
Individually and on behalf of all others similarly

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo, Evangeline Matthews, individually and on behalf of all others similarly situated<br><br>            Plaintiffs,<br><br>     vs.<br><br>Papa, Inc.,<br><br>            Defendant. | Case No. 3:21-cv-06326-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>[Memorandum of Points and Authorities; Declaration of Jonathan M. Lebe; Declaration of Jennifer Pardo; Declaration of Evangeline Matthews; and [Proposed] Order Filed Concurrently Herewith]<br><br>Hearing Information:<br>Date:  December 4, 2025<br>Time: 1:30 p.m.<br>Hon. Richard Seeborg<br><br>Action Filed:   August 17, 2021<br>Trial Date:     None Set |

1

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Richard Seeborg in Courtroom 3 – 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave. San Francisco, CA, Plaintiffs Jennifer Pardo and Evangeline Matthews ("Plaintiffs") will and hereby do move this Court for summary adjudication as to Plaintiffs' claims in the Complaint, on the identified issues below.

This motion will be made pursuant to Federal Rule of Civil Procedure 56 on the basis that there is no triable issue of material fact and Plaintiffs are entitled to judgment as a matter of law as to each of the following issues:

1. Defendant Papa, Inc. ("Defendant") has misclassified Plaintiffs and other aggrieved employees as independent contractors;

2. Defendant is liable for violating the California Labor Code section 226.8, as Defendant's has engaged in the willful misclassification of Plaintiffs and other Papa Pals as independent contractors; and

3. Defendant is liable for civil penalties under the Private Attorney's General Act, California Labor Code section 2698 *et seq.*, in the amount of $91,975,000 due to its violation of the California Labor Code section 226.8.

Plaintiffs' Motion for Partial Summary Adjudication is based upon this Notice, the attached Memorandum of Points and Authorities, the declarations and exhibits filed in the Compendium of Evidence filed concurrently herewith, all pleadings, records and files in this action, such oral and documentary evidence as may be presented by Plaintiffs on or before the hearing on this Motion, and any other matters that the Court deems appropriate.

///
///
///
///
///

Dated: October 17, 2025

**LEBE LAW, APLC**

By: _____ */s/ Jonathan M. Lebe* _____
Jonathan M. Lebe
Rayne A. Brown

Attorneys for Plaintiff Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated

**PLAINTIFFS' NOTICE OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Rayne A. Brown (SBN 342011)
Rayne@lebelaw.com
**Lebe Law, APLC**
3900 W. Alameda Avenue, Fifteen Floor
Burbank, CA 91505
Telephone: (213) 444-1973

Attorneys for Plaintiff Jennifer Pardo and Evangeline Matthews,
Individually and on behalf of all others similarly

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo, Evangeline Matthews, individually and on behalf of all others similarly situated<br><br>        Plaintiffs,<br><br>    vs.<br><br>Papa, Inc.,<br><br>        Defendant. | Case No. 3:21-cv-06326-RS<br><br>**MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>[Memorandum of Points and Authorities; Declaration of Jonathan M. Lebe; Declaration of Jennifer Pardo; Declaration of Evangeline Matthews; and [Proposed] Order Filed Concurrently Herewith]<br><br><u>Hearing Information:</u><br>Date:  December 4, 2025<br>Time: 1:30 p.m.<br>Hon. Richard Seeborg<br><br>Action Filed:  August 17, 2021<br>Trial Date:    None Set |

# **TABLE OF CONTENTS**

**I.    INTRODUCTION** .................................................................................................. **1**

**II.    STATEMENT OF FACTS** .................................................................................... **3**

   **A.    Defendant Papa, Inc.** ................................................................................... **3**

   **B.    Papa Pals** ...................................................................................................... **3**

   **C.    Plaintiffs Jennifer Pardo and Evangeline Matthews** ............................. **4**

   **D.    Procedural History** ...................................................................................... **4**

**III.    ARGUMENT** ........................................................................................................ **5**

   **A.    Legal Standard on Summary Judgment** ................................................... **5**

   **B.    Standard for Misclassification under California Law – the ABC Test** ... **6**

      **1.    Defendant Cannot Satisfy Prong A of the ABC Test** ................... **8**

      **2.    Defendant Cannot Satisfy Prong B of the ABC Test** ................. **11**

      **3.    Defendant Cannot Satisfy Prong C of the ABC Test** ................. **15**

   **C.    Defendant Has Willfully Misclassified its Papa Pals under Labor Code § 226.8** ............. **17**

   **D.    Papa Is Liable for Mandatory Civil Penalties Due to Its Misclassification of Papa Pals** ... **21**

   **E.    Papa Will be Found Liable for Various Other Violations of the Labor Code** ................... **24**

**IV.    CONCLUSION** .................................................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>

*Air Couriers Int'l v. Employment Dev. Dep't*, 150 Cal. App. 4th 923 (2007)..........................................8

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)..........................................5

*Alexander v. FedEx Ground Package Sys.*, 765 F. 3d 981 (9th Cir. 2014) ..........................................8

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ..........................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................................5

*Athol Daily News v. Bd. of Review of Employ. & Training*, 439 Mass. 171 (2003)..........................................13

*Awuah v. Coverall North America, Inc.*, 707 F. Supp. 2d 80 (D. Mass. 2010) ..........................................7

*Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1 (1981)..........................................17

*Benkert v. Benkert,* 32 Cal. 467 (1867)..........................................19

*Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049 (N.D. Cal. 2017) ..........................................5, 7

*Boston Bicycle Couriers, Inc. v. Deputy Dir. Of the Div. of Employment & Training*, 56 Mass. App. Ct. 473 (2002)..........................................15

*Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365 (2005) ..........................................22

*Carey v. Gatehouse Media, Inc.,* 92 Mass. App. Ct. 801 (2018)..........................................13

*Celotex v. Catrett*, 477 U.S. 317 (1986) ..........................................5

*Coverall N. America v. Div. of Unemployment*, 857 N.E.2d 1083 (2006) ..........................................7

*Diaz v. Grill Concepts Services, Inc.*, 23 Cal.App.5th 859 (2018)..........................................18

*Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018)..........................................1, 6, 7, 8, 11, 15, 20

*Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. 2008)..........................................5

*Garcia v. Border Transportation Grp., LLC*, 28 Cal. App. 5th 558 (2018) ..........................................16

*Hall v. Cultural Care USA,* 2022 U.S. Dist. LEXIS 130582 (N.D. Cal. July 22, 2022) ..........................................12

*Industrial Welfare Com. v. Superior Court of Kern County*, 27 Cal. 3d 690 (1980)..........................................7

*JKH Enterprises, Inc. v. Department of Industrial Relations*, 142 Cal. App. 4th 1046 (2006)..........................................8, 9

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996)..........................................6

*Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73 (2020) ..........................................23, 24

*Ludlow v. Flowers Foods, Inc.*, 2022 U.S. Dist. LEXIS 118092 (S.D. Cal. July 5, 2022) ..........................................13

*Marshall v. A & M Consolidated Independent School Dist.*, 605 F. 2d 186 (5th Cir. 1979) ................ 19

*Martinez v. Combs*, 49 Cal. 4th 35 (2010) ........................................................................................ 6

*May v. New York M. Picture Corp.,* 45 Cal. App. 396 (1920)............................................................ 18

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094 (2007) .................................................. 7

*Naranjo v. Spectrum Security Services, Inc.*, 15 Cal. 5th 1056 (2024) ....................................... 19, 20, 21

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) .......................................... 6

*Noe v. Superior Court,* 237 Cal. App. 4th 316 (2015).......................................................... 17, 22, 23

*People v. Uber Techs.*, 56 Cal. App. 5th 266 (2020) ............................................................ 7, 12, 14

*Personal Watercraft Coalition v. Marin County Bd. of Supervisors*,100 Cal.App.4th 129 (2002)......... 18

*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765 (2002)....................................................................................................................................... 19

*Roman v. Jan-Pro Franchising Int'l, Inc.,* 342 F.R.D. 274 (N.D. Cal. 2022) ........................................ 12

*Romano v. Sci Direct, Inc.*, 2018 U.S. Dist. LEXIS 47723 (C.D. Cal. Mar. 21, 2018)........................... 23

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989)........................................ 8

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)........................................................ 7

*Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) ............................................................ 6

*Towle v. Matheus,* 130 Cal. 574 (1900) ............................................................................................ 19

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106 (9th Cir. 2021) .................................... 11, 12

*Vendor Surveillance Corp. v. Henning*, 62 Cal. App. 5th 59 (2021)................................................... 12

**STATUTES**

Cal. Lab. Code § 226.8 ............................................................................................... 17, 22, 24

Cal. Lab. Code § 2699 ........................................................................................................... 21

Cal. Lab. Code, § 2775 ........................................................................................................... 11

**RULES**

Fed R. Civ. P. 56(c) ................................................................................................................. 5

Fed. R. Civ. P. 56(a) ............................................................................................................... 5

**REGULATIONS**

8 Cal. Code Regs. § 13520....................................................................................................... 18

**MEMORANDUM AND POINTS OF AUTHORITIES**

1

## I.    <u>INTRODUCTION</u>

Plaintiffs Jennifer Pardo ("Plaintiff Pardo") and Evangeline Matthews ("Plaintiff Matthews," collectively "Plaintiffs") move for summary adjudication and a finding that Defendant Papa, Inc.'s ("Defendant" or "Papa") practice of classifying its workers, which it calls "Papa Pals," as independent contractors rather than employees is unlawful under controlling California law. Under the ABC test adopted by the California Supreme Court in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018), reh'g denied (June 20, 2018) ("*Dynamex*") and codified by the California Legislature in Assembly Bill No. 5 ("A.B. 5"), Papa Pals' proper status as Defendant's employees is indisputable. Under California Labor Code ("Labor Code") section 226.8, willful misclassification of employees as independent contractors carries a mandatory and nondiscretionary civil penalty of between $5,000 and $15,000 per violation, or $15,000 to $25,000 per violation if this Court finds that Papa has engaged in a pattern or practice of misclassification. Cal. Lab. Code § 226.8.

The ABC test provides that workers for a company are presumptively considered to be employees and that it is a defendant employer's burden to demonstrate that such workers are properly classified as independent contractors. An employer meets its burden only if it proves that *all* of the following apply: (A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) the worker performs work that is outside the usual course of the hiring entity's business; and (C) the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed. *Dynamex* at 956-957. While Defendant cannot meet its burden on any of the prongs of the ABC test, it cannot be disputed that Papa Pals perform work within the usual course of Defendant's business. Defendant's inability to prove the B prong based on the undisputed facts in this case is dispositive and alone warrants summary adjudication.

Indeed, Papa Pals *are* Defendant's business. As stated by Defendant on its own website, Defendant's core business is to provide its customers, who are generally elderly individuals, with companionship and assistance with the "daily demands of life."[1] The Papa Pals are the ones tasked with

---

[1] Declaration of Jonathan M. Lebe ("Lebe Decl."), Exhibit ("Exh."), "*About Us*," 1 at 1 [For ease of reference, all further referenced exhibits refer to the exhibits attached to the Lebe Decl.

going to the homes of these customers and providing them with this assistance and companionship. Thus, Papa Pals are core to Defendant's business model. Defendant advertises to businesses emphasizing the "high-quality, human help from [its] Papa Pals" – in other words, Defendant's employees. Ex. 2, "*Papa for Employers*," at 1. Defendant's advertisements to various health insurance providers mirror Defendant's advertisements to other businesses, offering services such as "companionship," "transportation," "everyday tasks," "technology assistance," "contactless grocery door drop," and "virtual visits." Ex. 3, Health Insurance Provider Advertisements. Each of these tasks of course are carried out by Defendant's Papa Pals. Defendant concedes that it generates its revenue by Papa Pals' completion of visits and by partnering with health insurance companies who offer Papa Pals' services to the insured individuals. Ex. 4, Deposition of Rule 30(b)(6) Witness Dani Bchara, December 15, 2023 ("Bchara Dep.") at 47:08-52:16.

Thus, there are no genuine disputes of material fact regarding Defendant's misclassification of its Papa Pals – who are core to its business – as independent contractors. Moreover, this misclassification of its Papa Pals as independent contractors has continued for years following the *Dynamex* decision in 2018, and the California Legislature's codification of the ABC test in statute on January 1, 2020. Defendant lacks any good faith defense for the misclassification of its employees, which was done willfully under the standards of the Labor Code. Plaintiffs and the State of California should therefore be awarded mandatory civil penalties for each misclassification violation that occurred from February 15, 2020 through the present pursuant to the Private Attorneys General Act ("PAGA").[2]

Accordingly, Plaintiffs move for summary adjudication that, as a matter of law, Defendant misclassified its Papa Pals in the state of California as independent contractors when they should have been treated as employees, and that Defendant owes civil penalties of $91,975,000, equal to a $25,000 civil penalty for each aggrieved employee.

///

---

[2] The PAGA has a one-year statute of limitation. L.C. § 2699(g)(1). The original Plaintiff in this matter, Carice Ashley Andersen, sent her statutory PAGA notice to the Labor and Workforce Development Agency ("LWDA") on August 12, 2021. (Ex. 5, Initial PAGA Notice.) This statute of limitations was tolled for 178 days due to Emergency Rule 9 to the California Rules of Court, which in addition to the one-year statute of limitations, results in a PAGA period of February 15, 2020, through the present.

1    ## II.    STATEMENT OF FACTS

2    ### A.  Defendant Papa, Inc.

3    Defendant Papa, Inc. is a Florida-based elder care and companionship services company doing

4    business in the state of California. Marketing to both employers and individuals, Defendant advertises

5    that it connects its customers to "real people for help with companionship, everyday tasks,

6    transportation, and more." Ex. 6, "*We're Papa*," at 1. Defendant's stated mission is to "create a new

7    kind of care, built on human connection." Ex. 1 at 1. To facilitate this "human connection" Defendant

8    maintains a mobile phone application (hereinafter "the Papa app" or "the app") through which its

9    customers interact virtually and schedule in-person visits with what Defendant terms its "Papa Pals."[3]

10    ### B.  Papa Pals

11    Papa Pals are the care workers who work for Papa and provide the "human connection" that

12    Papa advertises as the bedrock of its business.[4] Indeed, according to the company, "Papa Pals provide

13    vital social support and care to strengthen families, help older adults remain connected, and support

14    diverse communities – providing win-win benefits for all." Ex. 6 at 3. In essence, Pals are the product

15    that Papa markets to its customers. *Id*. Papa tasks its Pals with assisting customers with companionship,

16    errands, transportation, and more. *Id*. Papa Pals' duties include providing "health reminders" to

17    customers, assisting customers with pet care, providing technological support, helping customers with

18    their physical therapy and exercise, and providing "child and parental support." Ex. 7, "*Understanding*

19    *Visit Tasks.*" In providing these services, Papa Pals are required to use their personal mobile phones to

20    access the Papa app, through which they browse and book visits with Papa's customers.[5] Defendant

21    closely monitors Papa Pals' activity on the Papa app and tracks Papa Pals' locations through the app

22

23

---

24    [3] Ex. 6 at 9 ("Health plan members can schedule appointments by phone. Employees have the flexibility of using our mobile app for iPhone and Android.").

25    [4] Ex. 2 at 5 ("Papa offers a unique type of benefit for your corporate wellness program – high-quality, human help and companionship to promote the well-being of employees and their families from our friendly Papa Pals."); Ex. 3 at 1 (advertising that Papa has partnered with health insurance companies to "provide [customers] with access to our nationwide network of Papa Pals.").

26

27    [5] Bchara Dep. at 129:20-130:06 ("Q. Are all Papa Pals required to use Papa's mobile application to book and log visits? A. Yes...."); 140:16-18 ("Q. To be a Pal, you have to have a smart phone; is that correct? A. That's correct. 19 Q. And you have to have data or Wi-Fi; is that correct? A. Yes, that's correct.").

28

when they are performing in-person visits with customers.[6] Despite Defendant's complete reliance on Papa Pals to provide the care and companionship services that are the cornerstone of its business and the high degree of control Defendant exercises over Papa Pals, Defendant nonetheless uniformly classifies Papa Pals as independent contractors.[7]

### C. Plaintiffs Jennifer Pardo and Evangeline Matthews

Plaintiff Pardo worked for Defendant as a Papa Pal in California from approximately December 2020 until February 2021. Declaration of Jennifer Pardo ("Pardo Decl.") at ¶ 2. During her time working for Papa, Plaintiff Pardo completed visits with Papa's customers, providing the companionship services that Defendant markets to its customers. *Id.* Plaintiff Matthews worked in California as a Papa Pal from approximately June 2020 until March 2022. Declaration of Evangeline Matthews ("Matthews Decl.") at ¶ 2. During her time as a Papa Pal, Plaintiff Matthews completed over five hundred hours of visits with Defendant's customers. *Id.* Both Plaintiffs were misclassified as independent contractors by Defendant. *Id.* at ¶¶ 3; Pardo Decl. at ¶ 3.

### D. Procedural History

On August 17, 2021, the original plaintiff in this action, Carice Ashley Anderson, filed the original class and collective action complaint alleging that Defendant had willfully misclassified her and other Papa Pals as independent contractors, resulting in various violations of the Labor Code and the Fair Labor Standards Act ("FLSA"). Lebe Decl. at ¶ 4. On October 18, 2021, that complaint was amended to add an eleventh cause of action for civil penalties under PAGA. *Id.* Subsequently, on March 4, 2022, a second amended complaint was filed, removing Ms. Anderson as the named plaintiff and substituting Plaintiff Pardo as the class, collective, and PAGA representative. *Id.*

---

[6] Bchara Dep. at 131:09-133:06 ("Q. Does it track the activity of Pals through the Papa app? A. Yes. Certain activities. Q. What activities? A. GPS, interactions with the app."); 131:04-133:06 ("Q. You mentioned that the app tracks activity in addition to GPS, their activity on the app, I think, was how you phrased it. Can you give me some specifics on that? Is it kind of the key strokes or what? A. I don't know all the specifics, but I know that we track some of the activity. For example, if a Pal hits "start visit," we would know that. Q. So when they hit certain buttons on the app, that would be tracked? A. Yes."); Ex. 8, Papa's 2023 Trust and Safety Roadmap (providing Defendant's plan to "[s]trengthen Papa Pal platform monitoring" by "[a]ctively monitor[ing] visits in real-time by tracking Papa Pal location and interven[ing] as necessary to confirm visits are filled.").

[7] Ex. 9, End User License Agreement, at 3 ("You understand that this Agreement is for an independent contractor relationship with Papa.").

**MEMORANDUM AND POINTS OF AUTHORITIES**

1    On August 8, 2022, Plaintiff Pardo filed a motion to conditionally certify a nationwide

2  collective action under the FLSA for Papa's violation of federal wage and hour laws, which was

3  premised upon Papa's misclassification of Papa Pals as independent contractors. Lebe Decl. at ¶ 5. On

4  October 5, 2022, the Court granted Plaintiff Pardo's motion for conditional certification in full. *Id.* On

5  May 12, 2023, a notice was sent to putative FLSA collective action members informing them of their

6  right to opt into the collective action. *Id.* Following the notice period, over 2,500 Papa Pals nationwide

7  consented to join as collective action members. *Id.*

8    On December 7, 2022, the Parties stipulated to allow Plaintiff to file a Third Amended

9  Complaint adding Plaintiff Matthews as a named plaintiff. Lebe Decl. at ¶ 6. The Third Amended

10  Complaint was filed on December 14, 2022. *Id.*

11    Plaintiffs now bring this Motion for Partial Summary Adjudication as on behalf of all aggrieved

12  employees of Defendant under the PAGA.

13  **III.  ARGUMENT**

14    **A. Legal Standard on Summary Judgment**

15    Summary judgment is appropriate where "'there is no genuine dispute as to any material fact

16  and the movant is entitled to judgment as a matter of law.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th

17  Cir. 2014) (en banc) (quoting Fed. R. Civ. P. 56(a)). "As with a motion under Rule 56(c), partial

18  summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions

19  on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

20  and that the moving party is entitled to judgment as a matter of law.'" *Epiphany, Inc. v. St. Paul Fire &*

21  *Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008), quoting F.R.C.P. 56(c). "The purpose of

22  partial summary judgment 'is to isolate and dispose of factually unsupported claims or defenses.'" *Id.*,

23  *quoting Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986).

24    "An issue is 'genuine' only if there is sufficient evidence for a reasonable fact-finder to find for

25  the non-moving party." *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1058 (N.D. Cal. 2017),

26  citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "A fact is 'material' if the fact

27  may affect the outcome of the case." *Id.* "If the moving party satisfies its initial burden of production,

28  then the non-moving party must produce admissible evidence to show that a genuine issue of material

fact exists." *Id.*, citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). "The non-moving party must 'identify with reasonable particularity the evidence that precludes summary judgment.'" *Id.*, *quoting Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence[.]" *Id.*, *quoting Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotations omitted). If, drawing all inferences in a light most favorable to the non-moving party, the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Id.*

## B.  Standard for Misclassification under California Law – the ABC Test

In *Dynamex*, the California Supreme Court recognized that the multi-factor *Borello* test led to uncertainty and manipulation by putative employers and that an "ABC" test would better satisfy the "history and purpose of the suffer or permit to work standard in California's wage orders." *Dynamex*, 4 Cal. 5th at 956-57. Citing its decision in *Martinez v. Combs*, 49 Cal. 4th 35 (2010), which set forth three definitions of "to employ" under California law: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship," *id.* at 64, the *Dynamex* Court explained the "suffer or permit" standard is "exceptionally broad," "must be liberally construed," and applies to the employee/independent contractor inquiry. *Dynamex*, 4 Cal. 5th at 954.

Thus, under the ABC test (which is far stricter than the *Borello* test), the worker is presumed to be an employee rather than an independent contractor unless the employer can demonstrate <u>each</u> of the three ABC factors. *Dynamex*, 4 Cal. 5th at 956-57. Those factors require the employer to show:

> (A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and*
> (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and*
> (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed. *Id.*

The ABC test is conjunctive, meaning that if the court holds that an employer cannot satisfy any one of those factors, the inquiry ends, and the worker must be considered to be an employee. *Id.* at 966 (each prong of the ABC test "may be independently determinative of the employee or independent

contractor question"); see *People v. Uber Techs.*, 56 Cal. App. 5th 266, 288 (2020) (the conjunctive nature of the ABC test is what makes it "a streamlined analysis readily amenable to application as a matter of law"). In other words, if the court finds that the defendant cannot satisfy even one of the three prongs, then the workers are employees. *Id.*; *see also Dynamex*, 4 Cal. 5th at 963. ("[A] court is free to consider the separate parts of the ABC standard in whatever order it chooses" and "in many cases it may be easier and clearer for a court to determine whether or not part B or part C of the ABC standard has been satisfied."). "[T]he simplicity of the ABC test ma[kes] it possible to decide at [an] early stage in [] litigation", without the need for extensive discovery or a robust record, whether the workers in question are employees as a matter of law. *Uber Techs.*, 56 Cal. App. 5th at 302.

Furthermore, following the adoption of the ABC Test by the California Supreme Court,[8] Governor Gavin Newsom subsequently signed Assembly Bill 5 ("A.B. 5") in 2019, codifying the ABC test into California law. Effective January 1, 2020, A.B. 5 (and later A.B. 2257) requires the ABC test to be applied to determine if workers in California are employees or independent contractors for purposes of the Labor Code, the Unemployment Insurance Code, and the Industrial Welfare Commission (IWC) wage orders. This is in line with the general policy that California wage laws "are to be construed broadly in favor of protecting employees." *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1103 (2007); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004). In light of the "remedial nature" of the statutes regulating "wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection[.]" *Industrial Welfare Com. v. Superior Court of Kern County*, 27 Cal. 3d 690, 702 (1980). Indeed, the California Supreme Court has "stressed that wage and hour laws 'serve important public policy goals' and therefore they should be applied in a way that would not encourage employers to evade the law." *Bernstein*, 227 F. Supp. 3d at 1060.

---

[8] In its decision to adopt the ABC test, the *Dynamex* Court expressly adopted the Massachusetts version of an "ABC" test, specifically citing with approval two Massachusetts cases which had found misclassified independent contractors to be employees under the ABC test. *See Dynamex*, 4 Cal.5th at 963 (*citing Awuah v. Coverall North America, Inc.*, 707 F. Supp. 2d 80, 82–84 (D. Mass. 2010) (rejecting defendant's argument that it was in the business of "franchising," rather than commercial cleaning and granting plaintiff franchisees' motion for summary judgment on liability; *Coverall N. America v. Div. of Unemployment*, 857 N.E.2d 1083, 1087 (2006) (considering only part C of the ABC standard and holding that franchisee was an employee). As a result, Plaintiffs' motion will cite to both California and Massachusetts authority regarding the ABC test.

**1.    Defendant Cannot Satisfy Prong A of the ABC Test**

Dynamex Prong A requires Defendant to establish that the worker is free of control "in the performance of the work, both under the contract for the performance of the work and in fact." *Dynamex*, 4 Cal. 5th at 958. The central control inquiry is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired;" e.g., "all necessary control." *Alexander v. FedEx Ground Package Sys.*, 765 F. 3d 981, 988 (9th Cir. 2014) (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)).

A defendant's right to control need not extend to every possible aspect of the worker's work for this factor to indicate the existence of an employee/employer relationship. The relevant question is whether the defendant retains "all necessary control" over the worker's performance of their job duties. In other words, "the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved does not change the character of the relationship, particularly where the employer has general supervision and control." *Air Couriers Int'l v. Employment Dev. Dep't*, 150 Cal. App. 4th 923, 934 (2007) (internal quotes omitted). For example, freedom to select working hours and location of work do not rise to the level of independence to avoid prong A. *Dynamex*, 4 Cal. 5th at 958, n. 27 (listing examples). Even just "obtaining the clients in need of [a] service and providing the worker to conduct it" has been found to be adequate control to constitute significant evidence of an employer-employee relationship per the California Court of Appeals, under the *Borello* test. *JKH Enterprises, Inc. v. Department of Industrial Relations*, 142 Cal. App. 4th 1046, 1064 (2006) (affirming a trial court's preliminary injunction stop work order based on alleged misclassification of delivery drivers).

In *JKH Enterprises, Inc.*, the Department of Industrial Relations alleged that a group of delivery drivers delivering packages and papers for a company were misclassified as a matter of law and obtained a preliminary injunction stopping their work as a result. *Id.* at 1050. The drivers were required to use their own cars, did not wear uniforms or badges, received no training other than brief instruction on how to fill log sheets and the locations of pickups and deliveries, could decline deliveries, used their own cellphones to communicate with JKH, set their own schedules, chose their own routes, and were unsupervised; JKH only had a "vague idea" of where its working drivers were during the business day. *Id.* at 1052-53. Despite this, the lower court issued a preliminary injunction, and the California Court of

1    Appeals affirmed it, finding that there was significant evidence indicating that the functions performed

2    by the delivery drivers "constituted the integral heart of JKH's courier service business" and that even

3    if JKH was "more concerned with the results of the work rather than the means of it accomplishment" it

4    had retained "all *necessary* control over the operation as a whole." *Id.* at 1064-65 (emphasis in

5    original).

6        Here, Papa cannot establish that Papa Pals are free from Papa's control and direction regarding

7    the performance of their work because Papa Pals are strictly monitored by Papa and are subject to

8    uniform and mandatory rules and policies, including Papa's Code of Conduct. Ex. 9; Ex. 10, Code of

9    Conduct. Additionally, in order to work as a Papa Pal, Papa requires aggrieved employees to agree to a

10   form contract called the End User License Agreement ("EULA"). Pardo Decl. at ¶ 3; Matthews Decl. at

11   ¶ 3; Bchara Dep. at 123:25-124:09. Papa Pals are not allowed to negotiate the terms of the EULA,

12   which is presented on a take-it-or-leave-it basis, evidencing Papa's control over the Papa Pals from the

13   outset of the contractual relationship. *Id.*

14       Papa monitors and controls nearly every aspect of Papa Pals' performance of their work through

15   the app, which all Pals must use.[9] Papa monitors Papa Pals' location in "real-time" while they perform

16   visits to "ensur[e] visits are filled and member expectations are met," tracks the number of visits each

17   Papa Pal completes, and audits each visit performed for "anomalies."[10] Papa strictly prohibits Pals from

18   scheduling visits directly with customers outside of the app and similarly restricts Pals from cancelling

19   visits with customers unless they contact Papa directly and the cancellation occurs at least 24 hours in

20   advance. Ex. 11; Ex. 12, "*Can a member schedule a visit with me directly?*"; Ex. 13, Visit

21   Confirmations. A Papa Pal's failure to abide by Papa's strict policies may result in that Papa Pal being

22   suspended or permanently removed from the Papa platform – effectively equivalent to being

23

---

24   [9] Bchara Dep. at 129:17-19 ("Q. Are all Papa Pals required to use mobile application to book and log visits? A. Yes.");
     140:16-18 ("Q. To be a Pal, you have to have a smart phone; is that correct? A. That's correct. Q. And you have to have data

25   or Wi-Fi; is that correct? A. Yes, that's correct."); 131:09-133:06 ("Q. Does it track the activity of Pals through the Papa
     app? A. Yes. Certain activities. Q. What activities? A. GPS, interactions with the app."); Ex. 11, "*Following Papa's Visit

26   Standards*" (outlining the duties Papa Pals were "expected to follow" in the Papa app before and during visits).
     [10] Ex. 8 at 4-5; Bchara Dep. at 131:04-133:06 ("Q. You mentioned that the app tracks activity in addition to GPS, their

27   activity on the app, I think, was how you phrased it. Can you give me some specifics on that? Is it kind of the key strokes or
     what? A. I don't know all the specifics, but I know that we track the activity. For example, if a Pal hits "start visit,"

28   we would know that. Q. So when they hit certain buttons on the app, that would be tracked? A. Yes.")

**MEMORANDUM AND POINTS OF AUTHORITIES**

terminated. Ex. 11 at 2 ("Failure to follow our visit standards may result in suspension or permanent removal from the platform.").

In addition, Defendant dictates to Papa Pals the types of services Papa Pals can and cannot provide for each type of visit. Ex. 7. Papa also provides Pals with scripts and subjects to talk about with its customers through the app, which Papa refers to as "recommended tasks" and required "surveys" Papa Pals are directed to complete. Ex. 14, Recommended Tasks; Ex. 15, Customer Surveys. The surveys were provided to Pals on the Papa app at the behest of the health insurance providers with which Papa has business relationships.[11] These tasks direct the Papa Pal on topics to discuss with the customer, including informing the customer that the Papa Pal was talking to them on behalf of Papa and their insurance provider. *Id.* The required surveys inform customers of health plans they can enroll in and Papa benefits they can receive through their insurance. *Id.*; Ex. 7; Bchara Dep. at 144:12-145:06. Following any visit, Pals must prepare a "disposition" in which they leave detailed notes about the tasks that they completed for the next Pal who visits the customer. Ex. 16, Disposition Note. These tasks include "talking about the benefits of Papa" and "engaging in uplifting conversation." *Id.*

Papa closely controls who it hires as a Pal, conducting interviews and background checks on all applicants prior to hiring them.[12] If hired, Papa requires newly minted Pals to undergo mandatory training and an onboarding session, for which Pals are not compensated. Pardo Decl. at ¶ 5; Matthews Decl. at ¶ 5; Bchara Dep. at 155:08-156:22. Papa also requires Pals to submit to and pass an annual background check to continue working as a Pal.[13] Papa boasts about the level of control and training it has over its Pals in the advertising materials that it provides to businesses and health insurance companies with which it partners. Exs. 7-18; Ex. 19, Visit Pay Models.

///

///

---

[11] Bchara Dep. at 144:12-146:16 (". . . Q. Does Papa require its Pals to conduct surveys with the members during their visits? A. Papa does not. Sometimes plans -- sometimes our clients have tasks. Q. The health insurance plans? A. Yes. Q. And are those surveys communicated through Papa to the Pals? . . . A. The surveys are available on the app to the Pal . . . .").

[12] Ex. 17, "*Why is my application taking so long*?"; Ex. 18, Pal Basics FAQs at 2; Bchara Dep. at 141:19-22 ("Q. Well, over on the page it says that 'Papa conducts all extensive background checks on all Papa Pals'; is that true?  A. Yes.").

[13] Bchara Dep. at 141:23-142:07 ("Q. And active Pals must pass annual background checks as well; is that true? A. Yes…").

**MEMORANDUM AND POINTS OF AUTHORITIES**

Papa likewise completely controls how much and everything else regarding how customers are charged for Papa's services, as well as how Papa Pals are compensated.[14] Papa Pals are paid directly through Papa, rather than by customers. Fn. 14. Papa also retains the right to suspend or terminate any Papa Pal at any time, with or without cause. Ex. 9 at 12; Ex. 10 at 5. Indeed, the level of control Papa exercises over Papa Pals mirrors that of a typical at-will employment relationship.[15]

For these reasons, Papa Pals cannot be considered free from Papa's control and direction.

## 2. Defendant Cannot Satisfy Prong B of the ABC Test

The California Supreme Court and the Ninth Circuit recognize the ease with which Prong B can decide a case. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021) ("Prong B may be the most susceptible to summary judgment . . ."); *Dynamex*, 4 Cal. 5th at 966 (addressing Prong B in its analysis upholding the lower court's class certification order). Prong B "bring[s] within the employee category all individuals who can reasonably be viewed as working in the hiring entity's business." *Dynamex*, 4 Cal. 5th at 959 (emphasis in original; internal quotations omitted); Lab. Code, § 2775(b)(1) ("a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates . . . [t]he person performs work that is outside the usual course of the hiring entity's business."). In explaining the broad scope of this prong, the California Supreme Court compared a properly classified independent contractor like a plumber or electrician engaged to perform a specific task, to a misclassified "independent contractor" like an at-home seamstress making clothes designed and sold by a clothing manufacturer and a cake decorator working regularly for a bakery to custom design its cakes. *Dynamex*, 4 Cal. 5th at 959-60.

Defendant cannot establish that its Papa Pals are performing "work that is outside the usual course" of its business. *Dynamex*, at 957. "To test this, courts have employed several analytical frames, including 'whether the work of the employee is necessary to or merely incidental to that of the hiring

---

[14] Bchara Dep. at 156:23-157:16 ("Q. Does Papa decide how much Pals are paid for their services?  A. Yes . . .  Q. And those visits have set-in-stone pay rates that are -- that relate to those different visits; is that correct?  A. So there's -- implicitly, yes.  Q. It determines how much is earned by the Pal for various types of visits; is that right?  A. Papa sets the rate of pay for a visit and offers bonuses, which dictate how much a Pal will earn based on the length or based on the nature of the visit or whichever visit it is); Ex. 20, "*Understanding Pal Earnings*."

[15] Papa's treatment of Pals resembles that of an employer-employee relationship so much, Papa's own counsel had a "Freudian slip," referring to them as employees on the record. Bchara Dep. at 121:20-25.

**MEMORANDUM AND POINTS OF AUTHORITIES**

entity, whether the work of the employee is continuously performed for the hiring entity, and what business the hiring entity proclaims to be in.'" *Hall v. Cultural Care USA* (N.D. Cal. July 22, 2022) 2022 U.S. Dist. LEXIS 130582, at *19 (quoting Vazquez, 986 F.3d 1106, 1125).

Where the hirer's revenue is dependent on the amount of work that the hirees perform, the hirees are deemed necessary to the hirer's work. *Vazquez*, 986 F.3d at 1125-26. An employer's advertisements are also relevant to determining the usual course of a defendant's business. *See id.* at 1127 ("[D]efendant's "websites and advertisements . . . promote[d] [defendant] as being in the business of cleaning." And, defendant's website described defendant as an "'environmentally responsible commercial cleaning company'" that provided "'cleaning services.'").

For example, in *Vasquez* the Ninth Circuit expressed skepticism that a company which provided cleaning services, and which contracted with local individuals to perform such cleaning, could meet Prong B of the ABC test by arguing that it was in fact using such individuals as independent franchisees. *Id.* at 1127 ("Franchising is not in itself a business, rather a company is in business of selling goods or services and uses the franchise model as a means of distributing the goods or services to the final end user without acquiring significant distribution costs.") On remand, this Court agreed and granted summary judgment against this cleaning business model who claimed its employees to be independent franchisees, finding the employer's argument unconvincing. *Roman v. Jan-Pro Franchising Int'l, Inc.* (N.D. Cal. 2022) 342 F.R.D. 274, 306.

Likewise, in *People v. Uber Techs Inc.*, the California Court of Appeal favorably cited several earlier cases that dismissed ride-sharing companies' attempts to narrowly define their business solely in terms of creating a technology platform rather than providing transportation. *Uber Techs., Inc.*, 56 Cal. App. 5th at 292-293 (2020) ("A number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business solely of creating technological platforms, not of transporting passengers, and have dismissed them out of hand."). More recently in *Vendor Surveillance Corp. v. Henning*, 62 Cal. App. 5th 59, 82-83 (2021), the California Court of Appeal, relying on *Uber*, rejected a hiring entity's efforts to depict itself as a mere matching database service for customers in need of inspection services and "independent contractor" inspectors. The court reasoned that, much like Uber, screening inspector candidates, monitoring their job performance, and disciplining or terminating

-12-

the workers based on performance supported a finding that the inspectors perform work within the hiring entity's business. *Id.*

This analysis not only of what a company claims to be, but also its advertisement and how it holds itself out to the public, was informed by the principle that a company "…cannot alter the substance of its usual course of business merely by careful (or careless) self-labeling in its dealings with contractors, employees, customers or the public," and is the prevailing law in Massachusetts where the California ABC test was derived. *Carey v. Gatehouse Media, Inc.,* 92 Mass. App. Ct. 801, 805-11 (2018); see *also Athol Daily News v. Bd. of Review of Employ. & Training*, 439 Mass. 171, 178-79 (2003) (workers who delivered newspapers performed services within the scope of defendant's business, where defendant "define[d] its business as 'publishing and distributing' a daily newspaper.")

In *Ludlow v. Flowers Foods, Inc.*, summary judgment was granted on prong B alone. *Ludlow*, (S.D. Cal. July 5, 2022) 2022 U.S. Dist. LEXIS 118092, at *18-21. In *Ludlow* a group of distributors who purchased bakery products from a bakery company and who could sell those bakery products in a geographic region were found to have presented common proof and evidence of their misclassification to survive class certification on this second prong. *Id.* at 20-21. This proof could be based on corporate representative testimony, the standard agreements which were signed off by class members, and the defendant's corporate filings, which could demonstrate whether the distributors' role of *selling the defendant's products* was merely incidental to defendant's overall business structure or not. *Id.*

Here, Papa's core business is to provide its customers with companionship and assistance with the "daily demands of life," as states on its own website, which per *Vasquez* is relevant in analyzing Prong B. Ex. 1 at 1. To this end, Papa employs Papa Pals to provide the very companionship and elder care assistance services that are central to its business model. Indeed, Papa's advertisements to businesses with whom it seeks to partner are focused on the "high-quality, human help from [Defendant's] Papa Pals." Ex. 2 at 1. One advertisement states that Papa "offers flexible family care to assist employees with caring for aging or ill loved ones, children, or themselves. [Papa's] curated national network of Papa Pals lighten the second (or third) shift load, and help you attract and retain happy, healthy, and productive employees." *Id*. This advertisement also states the business can "trust [Papa's] *highly trained and vetted* Papa Pals anytime and anywhere a little help could go a long way."

*Id.* (emphasis added). This same ad also boasts that Papa provides "[f]riendly help when, where, and how it's needed. Real humans, accessible through an easy app." *Id.* at 2. Papa's advertisements to customers who use Capital District Physicians' Health Plan, Inc., Asuris Northwest Health, and Braven Health, mirror its advertisements to businesses it wishes to partner with, offering its services as being, "companionship," "transportation," "everyday tasks," "technology assistance," "contactless grocery door drop," and "virtual visits," all completed by Papa Pals. Ex. 3.

While Papa may claim that it is merely a disinterested platform connecting its customers with individuals who provide these services, this argument is unpersuasive as it merely rehashes the same unsuccessful argument the defendant made in *Vasquez*, in which it contended that it was not in the cleaning service business, but rather in the franchise business. As explained above, this same argument has been rejected offhand by the California Court of Appeals in the app-context. *Uber Techs., Inc.*, 56 Cal. App. 5th at 292-293 (2020) ("A number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business solely of creating technological platforms, not of transporting passengers, and have dismissed them out of hand."). Furthermore, this argument fails because its anathema to the facts of the case – when a company advertises to customers, it does not advertise the electricians or plumbers who it has contracted to fix the wiring or plumbing at its corporate headquarters, it advertises the services which make the company money.

Like in *Vasquez*, Papa's revenue is dependent on the services Papa Pals provide, as the vast majority of Papa's health insurance partners, and Medicare, pay Papa on the number of visits Pals provide to their insured individuals, or the number of covered insured individuals.[16] Thus, Papa earns more when its Pals complete more visits (charging the insurance company, Medicare, or the individual

---

[16] Bchara Dep. at 47:08-52:16 ("Q. So for those 80 to 90 insurance companies that do cover Papa's services, for some percentage of them, Papa makes more money the more visits are completed by Pals; is that true? A. Yes. Q. And for others, your testimony is that Papa doesn't make more money the more visits are completed? A. That's correct. Q. And for those -- for the insurance plans where Papa doesn't make more money the more visits are completed, what does trigger Papa making more money for those plans? A. The thing that would trigger us making more money would be the number of members that are covered. . . ."); 105:17-106:02 (Q. How does it work whether a Papa Pal provides service to a member, and that member has health insurance that covers that visit? How is the -- does Papa file a claim with the insurance company? How does it work that that claim gets submitted? A. We don't file claims with insurance companies. Q. So would the member file that claim, or would it be done through the insurance company? A. Well, the member would not file a claim. We just invoiced the insurance company.").

-14-

for the visit) or by having more people be served by its Pals when its customer is an insurance company. *See* fn. 16.

Finally, and dispositively, Defendant admitted in its deposition that Papa Pals provide services that are in the usual course of Defendant's business, testifying that Defendant only provides one service other than the services that the Papa Pals perform.[17] Thus, it remains clear that Papa Pals *are* the true product that Defendant advertises to its "customers," e.g., employers and healthcare providers who pay Defendant for the visits that their Papa Pals perform and become members.

As such, the work performed by Pals clearly falls within Papa's regular course of business as Pals are the main service Papa provides, the service it advertises to its customers, and how it makes money. Summary adjudication is proper on this basis alone.

### 3. Defendant Cannot Satisfy Prong C of the ABC Test

Under Prong C of the ABC test, Papa must show that "that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." *Id.* at 956-57. Indeed, the *Dynamex* Court, in explaining Prong C, cited to *Borello*, stating that "[a]s a matter of common usage, the term 'independent contractor,' when applied to an individual worker, ordinarily has been understood to refer to an individual who independently has made the decision to go into business for himself or herself." *Dynamex*, 4 Cal. 5th at 962. Further, "[s]uch an individual generally takes the usual steps to establish and promote his or her independent business – for example, through incorporation, licensure advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers and the like."

In addressing this prong, the Court must determine "whether the worker is wearing the hat of an employee of the employing company or is wearing the hat of his own independent enterprise." *Boston Bicycle Couriers, Inc. v. Deputy Dir. Of the Div. of Employment & Training*, 56 Mass. App. Ct. 473, 480 (2002) (interpreting provision identical to Prong C of the *Dynamex* ABC test) (cited in *Dynamex*, 4 Cal.5th at 963). It is not sufficient that Plaintiffs be theoretically capable of engaging in senior care

---

[17] Bchara Dep. at 116:24-118:6 ("Q. Did Papa provide any services beyond those that the Papa Pals provide members? A. Yes. Q. What services does it provide beyond those that Papa Pals provide? A. We have a central care navigation team. . . .Q. So there's the social care navigation team, and all the Papa Pals and all the services they provide. Are there any other services that Papa provides? A. No.").

work for others; instead, the Prong C inquiry "requires an existing, not potential, showing of independent business operation." *Garcia v. Border Transportation Grp., LLC*, 28 Cal. App. 5th 558, 574 (2018), as modified on denial of reh'g (Nov. 13, 2018). In *Garcia v. Border Transportation Grp., LLC*, the court discussed what is required for a business to meet its burden with respect to Prong C:

> [] Dynamex makes clear that the question in part C is not whether BTG prohibited or prevented Garcia from engaging in an independently established business. (Dynamex, supra, 4 Cal.5th at p. 962, 232 Cal.Rptr.3d 1, 416 P.3d 1 ["[t]he fact that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient"].) Instead, the inquiry is whether Garcia fits the common conception of an independent contractor—"an individual who independently has made the decision to go into business for himself or herself" and "generally takes the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide services of the independent business to the public or to a number of potential customers, and the like." *Id.*

Here, Papa cannot show that Papa Pals are engaged in "an independently established trade, occupation, or business of the same nature as the work performed." *Dynamex*, at 957. Indeed, Papa readily advertises that anyone can be a Pal and that prior health care experience is *not* a prerequisite. Ex. 21, "*Papa Pal Requirements*"; Ex. 22, "*Papa Pal 101*"; Bchara Dep. at. 157:17-23. Additionally, Pals cannot accept service visits outside of the app or without Papa's knowledge, as Papa requires Pals to book all visits through the app. Ex. 12. Papa also specifically *prohibits* its Papa Pals from booking their own visits with the seniors for whom they perform services. *Id.*

Moreover, Papa, not the Pals, is the one who is responsible for advertising – with Papa directly advertising to businesses to whom it wishes to provide Papa Pal services to and directly to customers who have enrolled in health insurance which includes Papa Pal services. Ex. 2; Ex. 3. In this way, Plaintiffs and the aggrieved employees have *not* gone into business for themselves. They have not incorporated independent businesses through which to provide services to the elderly, as described in *Garcia*; they are not licensed, as Papa provides that no licensing is required; and they have not created the advertisements, which were provided by Papa. Pardo Decl. at ¶ 6; Matthews Decl. at ¶ 6.

Thus, this Court should find that Defendant would be unable to meet Prong C of the ABC test as a matter of law. The Papa Pals, who operate on Defendant's mobile application, for the benefit of Defendant's customers, and work under conditions dictated solely by Defendant, fail to meet the "common conception" of what an independent contractor is – for example, an electrician, plumber,

1  painter, who has chosen to go into independent business for him or herself.

2  **C. Defendant Has Willfully Misclassified its Papa Pals under Labor Code § 226.8**

3  Labor Code § 226.8 allows civil penalties against employers who "engage" in the "willful

4  misclassification of an individual as an independent contractor." Lab. Code § 226.8(a). Labor Code §

5  226.8 defines willful misclassification as: "avoiding employee status for an individual by voluntarily

6  and knowingly misclassifying that individual as an independent contractor." Lab. Code § 226.8(i)(4).

7  A defendant has "engaged" in willful misclassification if it is the entity which actually made, or

8  had knowledge, of the decision to misclassify the independent contractors and the misclassification was

9  done voluntarily and knowingly. *See Noe v. Superior Court* (2015) 237 Cal. App. 4th 316, 331-34 (co-

10  employer which did not make the decision to misclassify employees, and who did not have any

11  knowledge that their co-employers misclassification of employees was unlawful did not violate Labor

12  Code section 226.8). Defendant freely admits that it made the decision to misclassify the Pals and had

13  made that decision from "Day 1" of the business.[18] Moreover Defendant testified that it made this

14  decision based on weighing "the facts and circumstances of the situation." Bchara Dep. at. 125:11-19.

15  As a result, Defendant is the entity that engaged in the misclassification of its Papa Pals.

16  This Court must determine if the misclassification was willful under the meaning of section

17  226.8. In reaching this decision, it is important to consider the substantial existing caselaw defining

18  "willful" violations of Labor Code section 203. Section 203 provides in part that, "if an employer

19  willfully fails to pay" wages owed to an employee at the time that he or she is terminated or quits, that

20  employee is owed waiting time penalties equal of up to thirty days of wages as a penalty. Lab. Code §

21  203. "The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally

22  failed or refused to perform an act which was required to be done." *Amaral v. Cintas Corp. No. 2*, 163

23  Cal. App. 4th 1157, 1201 (2008). Moreover, such a willful act need not be done "based on a deliberate

24  evil purpose to defraud workmen of wages which the employer knows to be due," but rather just the

25  failure to perform an act "*which was required to be done*." *Barnhill v. Robert Saunders & Co.*, 125 Cal.

26  App. 3d 1, 7. (1981) (emphasis original.)

---

27  [18] Bchara Dep. at. 124:18-23 ("Q. At some point Papa decided to classify its Pals as independent contractors; is that correct?

28  A. Yes.  Q. Do you know when that happened?  A. I don't know a date, but I believe it's been that way since Day 1.")

-17-

A "'good faith dispute' that any wages are due will preclude imposition of waiting time penalties." 8 C.C.R. § 13520. A good faith dispute can exist even if the employer's proffered defense is "ultimately unsuccessful," but not if the defense is also "unsupported by any evidence, [is] unreasonable, or [is] presented in bad faith." *Diaz v. Grill Concepts Services, Inc.*, 23 Cal.App.5th 859, 868 (2018) *quoting* Cal. Code Regs., tit. 8, § 13520, subd. (a).

For example, in *Diaz*, an employee class successfully obtained waiting time penalties on summary judgment, with the court finding that the defendant's conduct in failing to pay wages at the amount required by a living wage ordinance was willful. *Diaz at 866.* In its defense, the employer defendant claimed that it could not locate the ordinance, and that alternatively it did not understand the ordinance because it was unconstitutionally vague, and thus the defendant had a good-faith defense for the underpayment of wages which would render such underpayment not willful. *Diaz at 869-75.* On appeal, on this first claimed defense, the Court reiterated that "ignorance of the law is no excuse. This maxim is so long standing and so well established that it is part of the very fabric of our legal system." *Id*. at 869. It then went on to find that, "[a] closely related corollary is that citizens have a duty to inquire to determine" "whether a contemplated course of conduct is within a statutory prohibition." *Id. quoting* (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors*,100 Cal.App.4th 129, 139 (2002). As a result, the Court found that the employer defendant's argument that its conduct was not willful because it just could not find the statute failed. *Id.* at 869. Moreover, the Court also found that the statute was not unreasonably vague, and that this vagueness challenge did not qualify as a good-faith defense as it was objectively unreasonable and lacked evidence to support it. *Id.* at 870-75.

Similarly, in *Naranjo v. Spectrum Security Services, Inc.*, the California Supreme Court found that the terms "knowing and intentional" and "willful" may be used interchangeably throughout the California Labor Code, and analyzed this effect in the context of violations of Labor Code sections 226, for failure to provide accurate, itemized wage statements:

> More generally, doing an act "willfully" has long been understood as doing it deliberately or by an affirmative, conscious choice: As the Court of Appeal put it over a century ago, the term "'willful,' as ordinarily used in courts of law [means] merely that the thing done or omitted to be done was done or omitted intentionally," and "[i]t amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent." (*May v. New York M. Picture Corp.* (1920) 45 Cal. App. 396, 404

-18-

[187 P. 785], *citing Benkert v. Benkert* (1867) 32 Cal. 467, 470 [explaining that "wilful" ordinarily means "intentional"] and *Towle v. Matheus* (1900) 130 Cal. 574, 577 [62 P. 1064] [same].) *Naranjo v. Spectrum Security Services, Inc.*, 15 Cal. 5th 1056, 1079, fn. 5.

In its analysis, the California Supreme Court found that the language in section 226, which finds civil penalties for "knowing and intentional" was equivalent to that of a "willful" violation of Labor Code section 203, and that for this reason a good-faith defense to Labor Code section 226 claims may be made by employers. *Naranjo* at 1080-81. The California Supreme Court also reiterated that ignorance of the law could not provide a good-faith defense for employers because "[a]s a general rule, where the law is clear and thus can easily be ascertained, knowledge of the law may be fairly imputed to an employer." *Id.* at 1086. In reaching this conclusion the Court also cited *Marshall v. A & M Consolidated Independent School Dist.*, 605 F. 2d 186, 191 (5th Cir. 1979), for the axiom that "actual awareness of the law is unnecessary to establish willfulness. Knowledge is imputed." *Naranjo* at 1086.

The Court also cited approvingly to the *Diaz* case, discussed *supra*, for the idea that ignorance of the law cannot defeat or negate a finding of willfulness, as well as the case of *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 782 (2002), which affirmed the "trial court's award of section 203 penalties when the employer's classification of employees as pipe tradesmen rather than sprinkler fitters was clearly erroneous and therefore not reasonable." *Naranjo* at 1086. Finally, in *Naranjo* itself, the Court found that the defendant employer's violation of Labor Code § 226 was not willful, or knowing and intentional, because it was an open question of law as to whether meal period premiums lead to derivative Labor Code section 226 penalties, thus the employer's good-faith defense that section 226 penalties were not derivative was reasonable. *Id.* at 1087, 1089-90 ("Before our 2022 decision, it was uncertain whether Spectrum had violated section 226. The question whether wage statements must include premium pay for missed breaks, even if unpaid was complex and debatable.").

Here, the liability period for which section 226.8 penalties may be collected runs from February 15, 2020, to the present.[19] *Dynamex*, which established the ABC test in California, presumptively considers all workers to be employees, and permits workers to be classified as independent contractors

---

[19] *See* fn. 2. If this Court find that tolling period inapplicable, then the PAGA period would be from August 12, 2020. The difference between these two potential liability periods has no effect on this Court's analysis of Defendant's willfulness.

only if the hiring business demonstrates that the workers satisfy each of three conditions, was decided on April 20, 2018. *See Dynamex* at 955-958 (establishing the ABC test in the state of California.) This was nearly two years prior to the start of the PAGA liability period. Moreover, the California legislature codified the ABC test into law through A.B. 5, as discussed *supra*, on January 1, 2020, as Labor Code section 2750.3 (later changed to section 2775 through A.B. 2257.) Thus, Papa continued to misclassify its Papa Pals well after the adoption of the ABC test, in direct violation of California law.

Papa's decision to classify its workers this way was voluntary, as Papa admits. Bchara Dep. at 125:11-19; *see* fn. 7. Papa cannot argue that it simply did not know, or lacked access to the laws, and thus should escape liability because it did not know about the *Dynamex* decision, or the adoption of the ABC test by the California legislature. Both *Naranjo* and *Diaz* make it clear that an employer cannot escape liability by simply putting its head in the sand. Papa has, at a minimum, a legal duty to understand California's applicable laws regarding employee classification, and make sure it complies with these laws before allowing thousands of Papa Pals to be classified as independent contractors and work for Papa in the state of California. *See Naranjo* at 1086. ("As a general rule, where the law is clear and thus can easily be ascertained, knowledge of the law may be fairly imputed to an employer.")

Furthermore, any good-faith defense Papa may attempt to present to rebut the logical conclusion that it had willfully misclassified its workers in violation of established law is without substance and unreasonable on its face. The "B" prong of the ABC test makes clear that workers are employees where they perform work within the normal course of a defendant's business. *Dynamex*, at 957. There is no doubt that Papa is in the business of providing Papa Pals' services to its customers. *See supra* III(B)(1). In performing this work, or alternatively by having more customers covered by Papa Pals, Papa makes more money. As a result, from the *inception* of the ABC test, and even later from the moment it was codified into law, Papa has been employing these Papa Pals within its normal course of business – the same business it advertises to business and health insurance companies, and how it holds itself out to the public in its advertisements and website.[20]

---

[20] Bchara Dep. at 47:08-52:16; 105:17-106:02, 116:24-118:06 ("Q. Did Papa provide any services beyond those that the Papa Pals provide members? A. Yes. Q. What services does it provide beyond those that Papa Pals provide? A. We have a central care navigation team. . . .Q. So there's the social care navigation team, and all the Papa Pals and all the services they provide. Are there any other services that Papa provides? A. No."); Ex. 1 at 1; Ex. 3.

Thus, this case is distinguishable from *Naranjo*, where the Court found that the employer defendant has a reasonable, good-faith defense because "[t]he question whether wage statements must include premium pay for missed breaks, even if unpaid was complex and debatable." *Naranjo* at 1089-90. Defendant lacks any good-faith defense to rebut willfulness, much like in *Diaz*, where the employers' defense of ignorance was not well taken and their defense of constitutional vagueness was without any merit, or in *Road Sprinkler Fitters Local Union No. 66*, where the misclassification of the workers, and thus the prevailing wage which was paid to them, was clearly erroneous.

Defendant's misclassification of its workers in the state of California during the PAGA period, after both the *Dynamex* decision and the California Legislature's express adoption of the ABC test, was willful under Labor Code section 226.8, and Defendant lacks any good-faith defense.

### D. Papa Is Liable for Mandatory Civil Penalties Due to Its Misclassification of Papa Pals

PAGA permits "aggrieved employees" to bring a civil action to collect civil penalties against employers who have violated the Labor Code. Cal. Lab. Code § 2698 *et seq.* To obtain standing, a PAGA plaintiff must 1) be an "aggrieved employee" (meaning one or more of the alleged violations was committed against them) and 2) have exhausted administrative remedies. Cal. Lab. Code §§ 2699(c), 2699(a), and 2699.3.

It is undisputed that both Plaintiffs worked for Papa and were classified as independent contractors, not employees. Pardo Decl. at ¶ 3; Matthews Decl. at ¶ 3. Plaintiffs submitted notices to the LWDA on February 16, 2023 within one year of their employment with Papa, which amended the original August 12, 2021 notice by former Plaintiff Andersen, to add these new plaintiffs as proposed representatives of the state of California. Lebe Decl. at ¶ 7; Ex. 23, Amended PAGA Notice.

Labor Code section 2699 provides that, "[n]otwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." As discussed above, section 226.8 makes it unlawful for any employer to engage in willful misclassification of an individual as an

1   independent contractor.

2        Per Labor Code section 226.8(b), "[i]f the Labor and Workforce Development Agency or a

3   court issues a determination that a person or employer has engaged in any of the enumerated violations

4   of subdivision (a), the person or employer ***shall*** be subject to a civil penalty of not less than five

5   thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for ***each violation***, in

6   addition to any other penalties or fines permitted by law." Cal. Lab. Code § 226.8 (emphasis added.)

7   Similarly, subdivision (c) provides that a mandatory civil penalty of no less than ten-thousand dollars

8   ($10,000), and not more than twenty-five thousand dollars ($25,000) ***shall*** be assessed for each

9   violation if a defendant is found engaging in a "pattern or practice" of these violations. Cal. Lab. Code

10   § 226.8(c). Thus, Labor Code section 226.8 provides for mandatory civil penalties, and any request

11   from Defendant that the Court reduce these penalties in its discretion would be contrary to the plain

12   language of the statute.[21]

13        In this litigation, Defendant has argued, incorrectly, that Plaintiffs cannot recover anything for

14   the alleged misclassification of the Papa Pals because no private right of action exists under Labor

15   Code section 226.8. As explained below, this argument fundamentally misunderstands the law, as civil

16   penalties are recoverable via the PAGA. While section 226.8 does not provide for a private right of

17   action separate from PAGA, the statute clearly imposes civil penalties for the "willful misclassification

18   of an individual as an independent contractor." Cal. Lab. Code § 226.8(a)-(c). Thus, while no private

19   right of action exists, these civil penalties are indeed recoverable for the aggrieved employees through

20   Plaintiffs' PAGA action.

21        "[T]he Labor Code generally provides two distinct categories of 'penalties': 'statutory penalties

22   … for employer wage-and-hour violations [that are] recoverable directly by employees' and '"civil

23   penalties"' that are 'enforceable only by the state's labor law enforcement agencies' or *through a*

24   *PAGA action*." *Noe v. Superior Court*, 237 Cal. App. 4th 316, 338 (2015) (emphasis added) (citing

25   *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 377 (2005)). In *Noe*, food vendors

---

[21] While Plaintiff expects that Defendant will argue that the civil penalties would bankrupt the company, this is both a red herring and it is untrue. Indeed, since its inception in 2017, Defendant has raised over $240 million in venture capital funding. Ex. 1 at 1, 3-4.

**MEMORANDUM AND POINTS OF AUTHORITIES**

1    filed a class action against their employers alleging several wage and hour violations, as well as for

2    their willful misclassification as independent contractors. *Noe*, 237 Cal. App. 4th at 320. The

3    defendants filed a motion for summary adjudication, and the superior court decided in the defendants'

4    favor on the section 226.8 claim. *Id.* The plaintiffs filed a petition for a writ of mandate seeking an

5    order directing the superior court to set aside this portion of its order, which the *Noe* court declined to

6    do on the basis that section 226.8 cannot be enforced through a direct private action such as the class

7    action brought by the plaintiffs. *Id.* at 320-21.

8        In its analysis, the *Noe* court explains that "the Legislature's use of the term 'civil penalty,'

9    unaccompanied by any language signifying that the penalty is to be paid to the aggrieved employee,

10   generally indicates that the penalties may only be enforced by the state's labor law enforcement

11   agencies *or through a PAGA action*." *Noe*, 237 Cal. App. 4th at 338 (emphasis added). Indeed, the *Noe*

12   court later reiterates, **"[n]othing in our analysis precludes plaintiffs from pursuing enforcement of**

13   **section 226.8 through their PAGA claim."** *Id.* at 341, fn. 15 (emphasis added). The difference

14   between this action and *Noe* is that Plaintiffs bring their misclassification claim through the law-

15   enforcement vehicle of a PAGA action – the appropriate and intended vehicle for recovering civil

16   penalties under section 226.8. *See also Romano v. Sci Direct, Inc.*, 2018 U.S. Dist. LEXIS 47723, at

17   *20 (C.D. Cal. Mar. 21, 2018) (finding plaintiffs may assert and prosecute a claim for misclassification

18   under Labor Code section 226.8 through the PAGA).

19       The California Supreme Court has echoed the underlying principle in *Noe* that PAGA actions

20   are uniquely designed to empower employee plaintiffs to pursue civil penalties as deputized law-

21   enforcement agents, without the need for a private right of action. "Requiring the existence of an

22   unredressed injury to support standing would be problematic for PAGA suits to enforce the many Labor

23   Code statutes that do not create a private right to sue. Indeed, the very reason the Legislature enacted

24   PAGA was to enhance enforcement of provisions punishable only through government-initiated

25   proceedings." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 89 (2020).

26       Here, Defendant has produced its total visit data for all Papa Pals in the state of California for

27   the PAGA period from February 15, 2020, to February 1, 2024. Lebe Decl. at ¶ 8. Plaintiffs' counsel,

28   by simply extracting the PAL_IDs, which each represent a different Papa Pal, from this visit data

1   determined that there are three-thousand, six-hundred, seventy-nine (3,679) aggrieved employees who
2   were misclassified by Defendant in the state of California during the PAGA liability period through
3   February 1, 2024. *Id.* Such a high number of aggrieved employees, each of whom was classified as an
4   independent contractor long after this state's adoption of the ABC test both in the judiciary and in the
5   legislature, should be treated by this Court as a pattern or practice of violations justifying higher
6   penalties under Labor Code section 226.8.

7   Thus, this Court should assess a total of $91,975,000 in civil penalties for these repeated
8   transgressions of law, pursuant to Labor Code section 226.8(c). [22]

9   **E. Papa Will be Found Liable for Various Other Violations of the Labor Code**

10  Upon a finding at summary adjudication that aggrieved employees are misclassified as
11  independent contractors, Plaintiffs will obtain discovery regarding the precise amount of violations in
12  the PAGA period for violations of the Labor Code provisions regarding minimum wages, overtime
13  wages, meal periods, rest periods, expense reimbursements, failure to pay all earned wages, failure to
14  provide accurate and itemized wage statements, among other violations. Once this further discovery is
15  obtained, Plaintiffs' recovery under the remaining Labor Code claims asserted in the operative
16  complaint will be resolved for aggrieved employees by a motion for summary judgment or a trial, if
17  necessary.

18  **IV.  <u>CONCLUSION</u>**

19  As Papa Pals have been willfully misclassified as independent contractors and deprived of the
20  protections of the California Labor Code, Plaintiffs respectfully request that this Court grant this
21  motion, finding as a matter of law that Defendant misclassified aggrieved employees as independent
22  contractors and assessing civil penalties under the PAGA in the amount of $91,975,000.

23  ///

24  ///

---

[22] This equates to 3,679 aggrieved employees multiplied by $25,000. If this Court finds civil penalties using section 226.8(b), such penalties should total a minimum of $55,185,000. This equates to 3,679 aggrieved employees multiplied by $15,000. In no instance should the total penalty assessed for this misclassification total less than $18,395,000 (3,679 aggrieved employees multiplied by $5,000) as section 226.8 provides a minimum floor for civil penalties of $5,000 per violation. Cal. Lab. Code § 226.8(b) ("*shall* be subject to a civil penalty of *not less* than five thousand dollars) (emphasis added).

**MEMORANDUM AND POINTS OF AUTHORITIES**

Dated: October 17, 2025

**LEBE LAW, APLC**

By: _____*/s/ Jonathan M. Lebe*_____
Jonathan M. Lebe
Rayne A. Brown

Attorneys for Plaintiff Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated

**MEMORANDUM AND POINTS OF AUTHORITIES**