Ellen Bronchetti (SBN CA 226975)
Daniel Smith (SBN CA 312330)
GREENBERG TRAURIG, LLP
12830 El Camino Real, Suite 350
San Diego, California 92130
Telephone: 619.848.2500
Facsimile: 619.393.0877
Ellen.Bronchetti@gtlaw.com
Daniel.Smith@gtlaw.com

Tayanah C. Miller (SBN CA 299123)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
millerta@gtlaw.com

Attorneys for Defendant PAPA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PARDO, EVANGELINE MATTHEWS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAPA, INC., <br><br> Defendant. | CASE NO. 3:21-cv-06326-RS <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION** <br><br> Date: December 4, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 3 – 17th Floor <br><br> Action Filed: August 17, 2021 <br> Trial Date: Not Set |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 7

II.   STATEMENT OF FACTS ............................................................................................. 8

      A.    Papa is a Virtual Marketplace. .......................................................................... 8

      B.    Papa Classifies Pals As Independent Contractors And Treats Them Like It. ...... 9

      C.    Papa Suggests That Pals Follow Its Visit Standards, But In Practice, Does Not Enforce
            Most Of Them. ................................................................................................... 10

      D.    Pals Choose What Support To Provide And When, Where, And How To Provide It. ........ 10

      E.    Pals Use Papa's Platform As A Referral Agency. ............................................... 12

      F.    Some Pals Drive and Deliver Goods Only. ........................................................ 12

      G.    Plaintiffs Offer No Facts About The Working Terms Of Other Pals. .................. 13

III.  LEGAL STANDARD .................................................................................................... 13

IV.   THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
      JUDGMENT. ................................................................................................................. 14

      A.    Plaintiffs' Motion Fails To Comply With Rule 56(c) Because It Lacks Supporting
            Evidence. ........................................................................................................... 14

      B.    Disputed Issues of Material Fact Foreclose Summary Judgment Anyway. .......... 15

            1.    Whether Papa Operates as a Referral Agency Is A Genuine Dispute Of Fact. ...... 15

            2.    Whether Pals Qualify as App Based Drivers Is A Genuine Dispute Of Fact. ........ 17

            3.    Even If The ABC Test Applies, Plaintiffs Have Not Negated Any Element Nor
                  Shown The Absence Of A Dispute. ........................................................... 18

                  (a)    Genuine Disputes of Fact Preclude Summary Judgment on Prong A. ....... 18

                  (b)    Genuine Disputes of Fact Preclude Summary Judgment on Prong B. ....... 19

                  (c)    Genuine Disputes of Fact Preclude Summary Judgment on Prong C. ....... 22

            4.    The Question of Willful Misclassification Cannot Be Summarily Decided. .......... 22

            5.    Plaintiffs' Penalty Claims Rests on Disputed Factual Issues. ................................. 25

V.    PLAINTIFFS' EVIDENCE IS INADMISSIBLE OR IMPROPER. ............................. 25

      A.    Plaintiffs' Propositions are Largely Unsupported by Evidence. ........................... 25

B.    Exhibits 1, 6, 8, 12, 13, 14, 16, 17, 18, and 21 to Declaration of Jonathan M. Lebe Have Not Been Authenticated And Are Hearsay In Any Case.................................................25

C.    This Court Should Strike Any Statement That Relies On Inadmissible Evidence.............26

VI.    CONCLUSION..........................................................................................................................27

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................13

*Anderson v. United States*,
417 U.S. 211 (1974)..................................................................................................26

*Bernstein v. Virgin Am., Inc.*,
365 F. Supp. 3d 980 (N.D. Cal. 2019) ....................................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................13

*Coverdell v. Dept. of Soc. and Health Services, State of Wash.*,
834 F.2d 758 (9th Cir. 1987) ...................................................................................25

*F.T.C. v. Medicor LLC*,
217 F. Supp. 2d 1048 (C.D. Cal. 2002) ..................................................................13

*Hassell v. Uber Techs.*,
2021 U.S. Dist. LEXIS 115373, 2021 WL 2531076 (N.D. Cal. June 21, 2021)................................23

*JUUL Labs, Inc. v. Chou*,
557 F. Supp. 3d 1041 (C.D. Cal. 2021) ..................................................................23

*Ludlow v. Flowers Foods, Inc.*,
No. 18CV1190-JO-JLB, 2022 WL 2441295 (S.D. Cal. July 5, 2022) .................................21

*Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*,
2013 WL 12171957 (C.D. Cal. July 22, 2013).......................................................23

*Morton v. United Parcel Serv., Inc.*,
272 F.3d 1249 (9th Cir. 2001) .................................................................................18

*Mossman v. Roadway Express, Inc.*,
789 F.2d 804 (9th Cir. 1986) ...................................................................................13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000) .................................................................................13

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) ...................................................................................26

*Orue v. Ford Motor Serv. Co.*,
461 F. App'x 605 (9th Cir. 2011)............................................................................24

*Powell v. Union Pac. R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012)..................................................................14

*Salinas v. Cornwell Quality Tools Co.*,
   635 F. Supp. 3d 979 (C.D. Cal. 2022) ...........................................................15, 22

*Smith v. Mack Trucks, Inc.*,
   505 F.2d 1248 (9th Cir. 1974) .......................................................................20, 25

*Sorensen v. Nat'l R.R. Passenger Corp.*,
   2017 WL 6550426 (C.D. Cal. Sept. 27, 2017) ...................................................13

*United States v. Castro-Juarez*,
   654 F. App'x 364 (9th Cir. 2016) .......................................................................23

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
   986 F.3d 1106 (9th Cir. 2021) ...........................................................14, 18, 19, 20

*Wady v. Provident Life and Accident Ins. Co. of Am.*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002) ..............................................................26

**California Cases**

*Dynamex Operations W. v. Superior Court*,
   4 Cal. 5th at 916–17 (2018) ................................................................................18

*Garcia v. Border Transp. Grp., LLC*,
   28 Cal. App. 5th 558 (2018) ...............................................................................22

*People v. Lai*,
   138 Cal. App. 4th 1227 (2006) ...........................................................................24

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*,
   48 Cal. 3d 341 (1989) ...........................................................................7, 15, 16

**Other State Cases**

*Athol Daily News v. Bd. of Review of Employ. & Training*,
   439 Mass. 171 (2003) .........................................................................................21

*Carey v. Gatehouse Media, Inc.*,
   92 Mass. App. Ct. 801 (2018).............................................................................21

**California Statutes**

Cal. Bus. & Prof. Code
   § 7451...................................................................................................................17
   § 7463...................................................................................................................17

Cal. Lab. Code
§ 203............................................................................................................23, 24
§ 226.8.........................................................................................................23, 24
§ 226.8(i)(4)......................................................................................................23
§ 2777.........................................................................................................15, 16

Cal. Pub. Util. Code
§ 5431...............................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................13

Fed. R. Civ. P. 56(c) ...........................................................................................14

Fed. R. Evid. 401 ................................................................................................26

Fed. R. Evid. 801(c) ...........................................................................................26

Fed. R. Evid. 901 ................................................................................................26

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION

## I.    **INTRODUCTION**

Plaintiffs Jennifer Pardo and Evangeline Matthews gave this Court no reason to grant their Motion for Partial Summary Judgment ("Motion"). They asked the Court to find that Defendant Papa Inc. ("Papa") misclassified thousands of workers—called "Pals"—without any evidence about those Pals' working relationships with Papa. The Federal Rules demand more, and the Court can deny Plaintiffs' request for this reason alone.

Of course, summary judgment is improper regardless. Genuine disputes of material fact pervade every issue on which Plaintiffs seek summary judgment. The record proves it:

First, Plaintiffs assume the ABC test applies to all Pals. But evidence shows Pals use Papa as a referral agency, and that some Pals work solely as app-based drivers. So, the *Borello* test governs whether Pals are properly classified, and Plaintiffs never even tried to show the absence of a genuine dispute under that test.

Second, even if the ABC test applies, genuine disputes of material fact remain. Prong A—which evaluates Papa's control over Pals—and C—which evaluates Pals' customary trades—hinge primarily on the work that Pals perform. But as stated above, Plaintiffs offer no evidence about what Pals do or their individual working relationships with Papa. And although Prong B focuses largely on a comparison of each Pals' work to Papa's business, the facts still militate against summary judgment. Papa operates a technology company that connects healthcare members with independent service providers. Plaintiffs' attempt to paint Papa's business as a service provider ignores both that Papa explicitly and publicly disclaims such a business purpose and that its revenue comes from, and is based on, its contracts with insurance companies and employers, not the Pals.

Third, Plaintiffs' argument Papa willfully misclassified Pals—based on Papa's decision to classify them as independent contractors alone—goes too far. If accepted, it would gut the statutory requirement that penalties result from only *willful misclassifications*, since employers rarely classify workers as independent contractors by accident. Still, the record shows Papa thoughtfully evaluated whether to classify Pals as independent contractors and had a reasonable basis to believe Pals are referred service providers, are

app-based drivers, or satisfy the ABC test. With such defenses, genuine disputes exist as to whether Papa could have "willfully misclassified" anyone at all.

Finally, Plaintiffs' request for summary judgment on alleged penalties fails derivatively.

Good reasons support denying Plaintiffs' Motion and Papa respectfully requests that the Court leave these issues to the trier of fact where they belong.

## II.    STATEMENT OF FACTS

### A.    Papa is a Virtual Marketplace.

Papa is an application-based technology company that connects people in need (called, "Members") with people that want to provide certain non-medical support tasks and companionship. Declaration of Dani Bchara in Support of Defendant's Opposition to Plaintiffs' Motion for Partial Summary Adjudication ("Bchara Decl.") ¶ 5. The marketplace is paid for by Medicare Advantage, Medicaid, commercial health plans, and employee benefit plans (called "Clients"). *Id.* The Clients offer their constituents Papa and the Pal network as a supplemental service benefit. Papa provides the platform, or marketplace, to enable safe and effective connections between Members and Pals. *Id.* Papa does not provide any services to Members, nor does Papa have any privity of contract with Members. *Id.* Just the opposite: Papa disclaims providing such services. Neither Papa, nor any of its subsidiaries or affiliates, retains any control over the services that Pals ultimately perform. *Id.*

Papa does, however, provide services to its Clients, and the marketplace Papa powers is merely a part of the overall value proposition that Papa sells to its Clients. *Id.* ¶ 6. Papa's market differentiator is its set of developed technologies that enable Papa to (i) focus on specific goals for specific Client populations, (ii) provide detailed analytics to Clients on their Members' care needs, trends, and successful health care gap closures, (iii) facilitate trusted introductions between Members and independent Pals through a secure technology platform, without controlling the terms or performance of those interactions, and (iv) enable Clients to collaborate with other third parties to quickly and efficiently get their Members

timely support, whether it is additional needed access to medical care or addressing other social drivers of health.. *Id.* Papa's Clients rely on Papa's advanced technology to address health care gaps and social determinants of health affecting their membership population more effectively. *Id.* This ultimately leads to healthier Members and lower long-term health-plan costs. *Id.* Here's how Pals fit in: they provide companionship and support services directly to Members ("Services"). *Id.* ¶ 9. These Services have been shown to promote independence (by helping older adults age in place), reduce inequities (by reaching historically marginalized populations), cure loneliness (by connecting isolated adults with compassionate listeners), control health care costs (by supporting Members' access to preventive health care services, helping Members obtain their medications and ensuring they get to their medical appointments) and improve overall outcomes (by helping Members feel physically and mentally healthier). *Id.*

Because Papa's core business is to serve its Clients, its revenue comes from its contracts with them, not from the work Pals choose to perform. *Id.* ¶ 8. In fact, during Plaintiffs' employment and beyond, most of Papa's revenue came from Member eligibility, not the visits performed by Pals. *Id.*

**B.    Papa Classifies Pals As Independent Contractors And Treats Them Like It.**

An independent contractor agreement—previously called the End User License Agreement ("EULA") and currently called the Papa Pal Agreement, together the "Pal Agreement"—governs the relationship between Papa and Pals. *Id.* ¶ 10.

The application process for Pals consists of a background check (which Papa is required by contract with its Clients, and by law in certain instances, to procure), agreeing to the Pal Agreement, attesting to various safety related commitments (to demonstrate that a Pal meets the qualifications to perform the Services in accordance with Clients' requests), and reviewing an orientation video that explains how to use the App. *Id.* ¶ 11.

Once Pals are approved to use Papa's platform, Papa exercises little to no control over them. *Id.* ¶ 12. Pals are free to choose to accept any available visit presented in the

App. *Id.* Papa tracks visits and mileage (if applicable) through the App for ease of payment purposes. *Id.* It also asks Pals to certify when the visit has been completed so Papa can pay the Pal. *Id.*

Pals are free to negotiate different rates with Papa, and to accept or reject rates if they deem a rate unacceptable. *Id.* ¶ 13. Pals have also negotiated rates directly with the Member. *Id.*; Declaration of Ellen Bronchetti ("Bronchetti Decl."), ¶¶ 4 (Ex. 1), 5 (Ex. 2), 11 (Ex. 8).

### C.    Papa Suggests That Pals Follow Its Visit Standards, But In Practice, Does Not Enforce Most Of Them.

Papa's Visit Standards policy—which didn't even exist until May 9, 2023—provides Pals with general common-sense guidelines to use before, during, and after visits. Bchara Decl. ¶ 15. The Visit Standards suggest that Pals, for example, review visit details, arrive on time and leave on time, be SAFE, and to avoid engaging in behaviors that are simply not professional (e.g., bringing others such as family members or pets to the visit, sharing Member information, using recreational drugs or alcohol while driving or otherwise as it could endanger the well-being of the Member or Pal, and engaging in criminal behavior). *Id.*

Except for the behaviors that Papa asks Pals to never engage in (e.g., behavior that could endanger the safety of the Pal or a Member), these guidelines are suggestions, and Papa does not enforce this policy in practice. *Id.* Significantly, Papa has no record of ever disciplining a Pal for failing to: confirm visits, call a Member, or complete or incorrectly completing visit feedback. *Id.* Consequently, not every Pal follows these guidelines. Declaration of Ellen Bronchetti ("Bronchetti Decl.") ¶¶ 7 (Ex. 4), 9 (Ex. 6), 10 (Ex. 7), 11 (Ex. 8).

### D.    Pals Choose What Support To Provide And When, Where, And How To Provide It.

Pals can choose to accept visits that align with their Services preference. Bchara Decl. ¶ 16. Services include, for example, providing companionship (such as playing board games, watching television or movies, discussing thoughts, feelings, news, and

experiences), grocery shopping (including driving to and from the store, picking up grocery items from a list, putting away groceries), health reminders (including helping the Member schedule appointments and wellness checks, such as, reminding the Member to get their eyes checked), helping Members obtain their medications from the pharmacy, transportation (including taking the Member on trips to places of worship, doctor appointments, community centers, events, libraries, parks and trails, to visit friends and family), errand assistance (like driving to and from a store or pharmacy or accompanying Members to places like the bank or salon), parental support (including engaging in fitness activities and games, going to the park, overseeing meal time), exercise assistance (such as attending exercise classes with the Member, encouraging the Member to join them on a walk, assisting the Member with exercise), technology help (including setting up personal devices, assisting Members with social media, showing Members how to stream services, assisting with telehealth appointments), pet help (including pet walking, pet companionship, filling water or food bowls, making grooming appointments), and house task assistance (such as light dusting, folding clothes, prepping meals, clearing the table, organizing, though nothing that would amount to work that a professional would perform). *Id.*

Pals also choose when, where, and how they would like to provide the Services. *Id.* ¶ 17. After signing up to be a Pal, the App works something like this: (1) if a Pal wants to work, Pals see a list of available visits in their area (visits are sorted by distance from the Pal and can be filtered by time and day of the week); (2) Pals can view details about visits, including the date, time, location, duration, and the Services the Member wants help with; (3) Pals find a visit that is a good fit—it fits their schedule, location requirements, and what Services they're willing to perform—then scroll to the bottom of the visit screen and tap 'Accept Visit'; (4) Pals confirm the visit, with a tap on the App; and (5) Pals either (a) for an in-person visit, start commute, then start and complete the visit; or (b) for a virtual visit, start and complete the visit. *Id.*

Because Papa's marketplace is driven by a Pal's choice, the Pal experience is unique and individual. Some Pals provide only one type of Service—say transportation, grocery

shopping, or errand help—while others may offer to help a Member with all Services, provided the Member lives in a specific geographic area. *Id.* ¶ 18.

Pals can choose to complete a single visit, several visits a day, or none, based on their preferences. *Id.* ¶ 19. After all, Papa imposes no requirements to accept or complete visits. *Id.* Pals also choose how to complete the Services they provide. *Id.* Papa does not tell Pals how to carry out the Services, leaving the "how" in the Pal's hands. *Id*

### E.    Pals Use Papa's Platform As A Referral Agency.

Pals need not have any special license (business, professional, or contractors) or tax registration. Bchara Decl. ¶ 14. Pals need not have any tools, and Papa does not provide any. *Id*. If Pals need tools to provide Services, they are responsible for providing them. *Id*. Pals need not provide their offered Services under Papa's name; they use Papa's name only to provide legitimacy and security (so the Member knows the Pal who ultimately serves them are who they claim to be.) *Id.* Pals have testified that: (1) they are often engaged in other gig type work, alongside the work they do for members, that they maintain a workstream—i.e., their clientele—without any restrictions from Papa; (2) they can work for other clients and companies; and (3) they set their own hours and terms of work. Bronchetti Decl. ¶¶ 4 (Ex. 1), 6 (Ex. 3), 8 (Ex. 5) 11 (Ex. 8). Some Pals choose to accept or reject rates set by Papa—which in turn are set by the contracts between Papa and its Clients. Bchara Decl. ¶ 13. Some Pals set their own rates directly with the Member. Bronchetti Decl. ¶¶ 4 (Ex. 1), 5 (Ex. 2), 11 (Ex. 8). Pals are free to accept or reject visits with Members, without being penalized by Papa. Bchara Decl. ¶¶ 13, 18, 19.

### F.    Some Pals Drive and Deliver Goods Only.

A significant portion of Pals drive and deliver goods for Members exclusively. Bchara Decl. ¶ 18. As to these Pals, Papa does not require the dates, times, or a minimum number of hours that Pals must be logged into its platform, does not require the Pal to accept any request to maintain access to the platform, does not restrict the Pal from doing similar work for another company (except during engaged time), and does not restrict the Pal from working in any other lawful occupation or business. *Id.*

### G.    Plaintiffs Offer No Facts About The Working Terms Of Other Pals.

Plaintiffs' Motion contains no facts or evidence about the working terms of any Pals besides themselves. *See* Motion, generally.

## III.    <u>LEGAL STANDARD</u>

Summary judgment on an issue is improper unless the moving party shows (1) there is no genuine dispute of material fact and (2) it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also F.T.C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002); *Sorensen v. Nat'l R.R. Passenger Corp*., 2017 WL 6550426, at *5 (C.D. Cal. Sept. 27, 2017) (citing Fed. R. Civ. P. 56(a)). This burden is exacting. The movant must present specific facts, supported by evidence, that show a trial in the case is unnecessary. *Mossman v. Roadway Express, Inc*., 789 F.2d 804, 806 (9th Cir. 1986).

The moving party always bears the initial responsibility of telling the court why it is seeking summary judgment and identifying the evidentiary support—e.g., the depositions, discovery responses, or affidavits—that it claims show no issues remain for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility applies even when the non-moving party bears the burden of proof at trial. *See id*. Consequently, if the movant fails to meet its initial burden, "the nonmoving party has no obligation to produce anything." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000).

Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant need not prove its case in opposition to summary judgment, it need only show that there is enough evidence to require a trial to resolve competing versions of the facts. *Id.* at 248-49. The Court resolves all justifiable inferences in the nonmovant's favor. *Id.* at 255. And ultimately, if there "is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain summary judgment." *Celotex*, 477 U.S. at 330 at n.2.

## IV.   THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

Plaintiffs' Motion falls short on both the law and facts. It lacks the evidentiary support required by Rule 56(c) and ignores key factual disputes at the heart of this case. The Court should deny it accordingly.

### A.    Plaintiffs' Motion Fails To Comply With Rule 56(c) Because It Lacks Supporting Evidence.

This Court should deny Plaintiffs' request for summary judgment for lack of evidence. Plaintiffs seek summary judgment on the misclassification of all supposed aggrieved employees, yet offer no evidence about what any other Pal, besides themselves, did. *See* Motion, generally. Federal Rule of Civil Procedure 56(c) requires more. It obligates Plaintiffs, as movants, to substantiate their assertion that no genuine dispute exists over their status—and that of the allegedly aggrieved employees they purport to represent—by citing "particular parts of materials in the record," Fed. R. Civ. Proc. 56(c); *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 962 (E.D. Cal. 2012) ("While it is not essential that the plaintiff negate elements of the affirmative defenses by submitting affidavits or other evidence, he or she must point to something showing the absence of supporting evidence."); *Bernstein v. Virgin Am., Inc.*, 365 F. Supp. 3d 980, 984 (N.D. Cal. 2019) (moving party must "produce evidence negating an essential element of the nonmoving party's [] defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").

Applying these rules here means that Plaintiffs should have presented evidence to (1) negate an element of the ABC test or (2) show Papa cannot prove its case. They did neither. They did not negate any element of the ABC test because they did not offer any evidence related to the employment relationships of the putative aggrieved employees. To be sure, the ABC test requires evidence about the at-issue working relationship in order to analyze each element. *See e.g.*, *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021) (examining evidence related to the precise work the person performed, in

comparison to the hiring entity, at Prong B of the test); *Salinas v. Cornwell Quality Tools Co.*, 635 F. Supp. 3d 979, 990 (C.D. Cal. 2022) (examining the degree of control exercised over the plaintiff under the contract and "in fact" at Prong A; examining the exact work that putative employees performed in relation to what the defendant's business was at Prong B, and ultimately concluding triable issues of fact barred plaintiff's motion for summary judgment). And Plaintiffs did not demonstrate how the record evidence forecloses Papa from proving a genuine dispute exists concerning these elements either. Their Motion must fail accordingly.

**B.    Disputed Issues of Material Fact Foreclose Summary Judgment Anyway.**

Assuming Plaintiffs can proceed without evidence about other Pals' work terms, summary judgment is still improper.

**1.    Whether Papa Operates as a Referral Agency Is A Genuine Dispute Of Fact.**

Papa's status as a referral agency creates a genuine dispute of fact that cannot be resolved on summary judgment.[1] The reason: The ABC test does not apply to referral agencies. Cal. Lab. Code § 2777. Instead, the test from *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341 (1989)—which Plaintiffs do not address—applies. *Id.*

Disputes of fact will preclude summary judgment on whether Papa is a referral agency if a trier of fact can conclude: (1) Pals are free from Papa's control and direction in performing work for clients, both contractually and in practice; (2) Pals hold any required business license or tax registration; (3) Pals possess any required state contractor's license; (4) Pals certify they possess any applicable state-recognized professional license, permit,

---

[1] California law expressly enumerates many of the services Pals provide within the referral agency exemption. *See* Cal. Lab. Code § 2777. ("referrals for services shall include, but are not limited to, graphic design, web design, photography, tutoring, consulting, youth sports coaching, caddying, wedding or event planning, services provided by wedding and event vendors, minor home repair, moving, errands, furniture assembly, animal services, dog walking, dog grooming, picture hanging, pool cleaning, yard cleanup, and interpreting services.").

certification, or registration; (5) Pals perform services under their name, not Papa's; (6) Pals use their own tools and supplies; (7) Pals customarily or previously operated an independently established business or trade of the same or related nature; (8) Papa does not restrict Pals' ability to maintain a clientele or seek work elsewhere, including through competing agencies; (9) Pals set or negotiates their own hours and work terms directly with the client they serve; (10) Pals set, negotiate, or accept rates without deduction by Papa; and (11) Pals are free to accept or reject clients and contracts without penalty from Papa. *See* Cal. Lab. Code § 2777.

The evidence demonstrates a trier of fact could conclude Papa meets these criteria, and that *Borello*—not the ABC test—applies. Pals need not have any special license (business, professional, or contractors) or tax registration. Bchara Decl. ¶ 14. Pals need not have any tools and Papa does not provide any. *Id.* If Pals need tools to provide services, they are responsible for providing their own tools. *Id.* Pals need not provide their offered services under Papa's name; they use Papa's name only to provide legitimacy and security (so the client/Member knows the Pal who ultimately serves them are who they claim to be.) *Id.* Pals have testified that: (1) they are often engaged in other gig type work, alongside the work they do for members, that they maintain a workstream—i.e., their clientele—without any restrictions from Papa; (2) they can and do work for other clients and companies; and (3) they set their own hours and terms of work. Bronchetti Decl. ¶¶ 4 (Ex. 1), 6 (Ex. 3), 8 (Ex. 5) 11 (Ex. 8). Some Pals choose to accept or reject rates set by Papa—which in turn are set by the contracts between Papa and its Clients. Bchara Decl. ¶ 13. Some Pals set their own rates directly with the Member. Bronchetti Decl. ¶¶ 4 (Ex. 1), 5 (Ex. 2), 11 (Ex. 8). Pals are free to accept or reject visits with members, without being penalized by Papa. Bchara Decl. ¶ 13. The record evidence establishes that a trier of fact could conclude Papa is a referral agency, precluding summary judgment of whether Pals are misclassified under the ABC test[2].

---

[2] Under *Borello*, genuine disputes exist on the issue of control, precluding summary judgment on this test too. *See also* IV. B. 3 a., *infra*.

### 2. Whether Pals Qualify as App Based Drivers Is A Genuine Dispute Of Fact.

There can be no question that many Pals are independent contractors because they are app-based drivers. Under California Business and Professions Code section 7451 an app-based driver is an independent contractor—not an employee—when evidence shows: (1) the driver can freely choose when and how long to log into the platform; (2) the hiring entity—called a network company—refrains from mandating acceptance of particular service requests as a prerequisite for continued access to the app; (3) the driver can perform rideshare or delivery services for other network companies except while engaged in services for the network company; and (4) the driver can pursue any other lawful occupation or business. Cal. Bus. & Prof. Code § 7451.

A network company is "a business entity that maintains an online-enabled application or platform used to facilitate delivery services within the State of California on an on-demand basis, and maintains a record of the amount of engaged time and engaged miles accumulated by DNC couriers. Deliveries are facilitated on an on-demand basis if DNC couriers are provided with the option to accept or decline each delivery request and the DNC does not require the DNC courier to accept any specific delivery request as a condition of maintaining access to the DNC's online-enabled application or platform." Cal. Bus. & Prof. Code § 7463. An App-based driver means an individual "who provides delivery services through a DNC's online-enabled application or platform" or "any person who uses a vehicle in connection with a transportation network company's online-enabled application or platform to connect with passengers." Cal. Bus. & Prof. Code § 7463; Cal. Pub. Util. Code § 5431.

Applying these rules leads to one conclusion: a trier of fact could conclude that some Pals are independent contractors. Plaintiffs' Motion must fail because of it. A significant portion of Pals only drive and deliver goods for members. Bchara Decl. ¶ 18. As to these Pals, Papa does not require the dates, times, or a minimum number of hours that Pals must be logged into its platform, does not require the Pal to accept any request to maintain access

to the platform, does not restrict the Pal from doing similar work for another company (except during engaged time), and does not restrict the Pal from working in any other lawful occupation or business. *Id.* Summary judgment is improper for this reason too.

### 3. Even If The ABC Test Applies, Plaintiffs Have Not Negated Any Element Nor Shown The Absence Of A Dispute.

#### (a) Genuine Disputes of Fact Preclude Summary Judgment on Prong A.

Genuine disputes of fact preclude summary judgment on Prong A of the ABC test. First, Prong A (which focuses on control) is inherently fact-intensive and thus rarely suitable for summary judgment, *see, e.g.*, *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021) (noting that the A and C prong of the ABC test are the most factually intensive); *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256-1257 (9th Cir. 2001) (noting that fact intensive analysis was unsuitable for summary judgment).

Second, Plaintiffs have no evidence that Papa allegedly exercised control "in fact" over any supposed aggrieved employee (apart from themselves). Since Papa introduced evidence that it does not exercise control over aggrieved employees, this omission alone defeats any argument that summary judgment is warranted on Prong A. *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th at 916–17 (2018) (noting that prong A requires a determination of what workers are doing "both under the contract for the performance of such work *and in fact*").

Third, much of what Plaintiffs offer in support of their argument for this Prong—e.g., unauthenticated screenshots that purportedly came from Papa's website and lacking context and explanation—is inadmissible. *See* discussion at V., *infra*.

Fourth, Plaintiffs' remaining evidence does nothing to foreclose Papa from persuading a trier of fact to rule in its favor. At best, Plaintiffs have proved that the record is replete with factual disputes on this issue. *Compare* Motion at 9 *with* Bcharra Decl., ¶¶ 5, 12, 13, 16-19; Bronchetti Decl. ¶¶ 4 (Ex. 1), 5 (Ex. 2).

Genuine issues of material fact remain on the determination of Prong A.

**(b)    Genuine Disputes of Fact Preclude Summary Judgment on Prong B.**

Plaintiffs cannot negate nor demonstrate the absence of a genuine dispute on Prong B either. Prong B requires evidence that Papa operates a different business than Pals. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021). In assessing this element, courts consider whether the work of the putative employee is necessary or merely incidental to that of the hiring entity, whether the work is continuously performed by the putative employees, and what business the hiring entity claims to be in. *Id.* If appropriate to the work in question, courts apply common sense to evaluate whether work is necessary. *Id.* If that lens is not fitting, however, courts assess whether the workers are necessary to the hiring entity's business from an economic standpoint. *Id.*

The record evidence establishes Pals are incidental to Papa's ultimate business, which is to help its Clients identify and address health care gaps and social determinants of health affecting their membership. Bchara Decl. ⁋ 5 ("Papa is an application-based technology company that connects people in need (called, "Members") with people that want to provide certain non-medical support tasks and companionship (called, "Pals")); *Id.* at ⁋ 6, ("Papa does, however, provide services to its Clients, and the marketplace Papa powers is merely a part of the overall value proposition that Papa sells to its Clients. Papa's market differentiator is its set of developed technologies that enable Papa to (i) focus on specific goals for specific Client populations, (ii) provide detailed analytics to Clients on their Members' care needs, trends, and successful health care gap closures, (iii) facilitate trusted introductions between Members and independent Pals through a secure technology platform, without controlling the terms or performance of those interactions, and (iv) enable Clients to collaborate with other third parties to quickly and efficiently get their Members timely support, whether it is additional needed access to medical care or addressing other social drivers of health. Papa's Clients rely on Papa's advanced technology to more effectively address health care gaps and social determinants of health affecting their membership population, ultimately, leading to healthier Members and lower long-term

health-plan costs"); *Id.* at ¶ 7 ("Papa is not in the business of providing services to individual consumers, or Members."); *Id.* at ¶ 8 ("Papa's core business is to serve its Clients and its revenue comes from its contractual arrangements with them, not from the work Pals choose to perform."). More significantly, because Papa's revenue stems from its contracts with its clients, the contracts it negotiates ultimately dictate the revenue it receives. *Id.*; *see also* Lebe Declaration ("Lebe Decl."), ¶ 12, Exhibit 4, Deposition of Dani Bchara ("Bchara Dep.") 48:12-49:19 (noting that for some contracts, Papa is paid based on the visits, and for some contracts, Papa gets paid based on the number of eligible members). Put another way, *the work Pals perform is largely irrelevant to whether and what Papa gets paid.*; *Id.* at ¶ 8. Certainly, if Papa was in the business of providing services to members, i.e., doing what Pals do, it would have no need to disclaim such activity on its website. *See* Bchara Decl. ¶ 7. https://www.papa.com/corporate-wellness-programs("Papa presently does not provide services directly to individual consumers.").

Plaintiffs' arguments otherwise—that Papa's "core business" is to provide companionship, that most of Papa's revenue is dependent on Pals, and that the Court should find that its business is to provide the service Pals provide because its advertisements feature the services Pals offer—are just that, arguments, and they do not demonstrate the absence of a genuine dispute for trial. *See Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) (arguments are not evidence). To that end, there is no admissible evidence that Papa's business is to provide the Services Pals provide. *See* discussion at V. *infra*.

Plaintiffs are at best mistaken—or at worst misrepresent—that evidence shows (1) Papa's revenue is dependent on Pals because most of Papa's clients pay Papa based on the number of visits Pals provide to Members, or (2) Papa admitted that Pals provide Services in the usual course of Papa's business. The complete opposite is true. Papa's Chief Financial Officer (now President) testified that most of Papa's revenue has come from Member eligibility. Bchara Decl. ¶ 8. Since he did not have revenue breakdown information ready at his deposition, he never testified then—and in fact said he could not testify to—the percentage of its contracts where Papa receives pay by the visit. *See* Bchara Dep. 47:1-4

(Lebe Decl. ¶ 12, Exhibit 4) ("THE WITNESS:· The percentage of visits where Papa makes more money if we do more visits, to be honest, I don't know the answer to that. That's not really how we look at the business"); 50:9-16 ("What's your best estimate of the 80 to 90 insurance companies that Papa's does business with, what percentage of them are in the first bucket versus the second bucket?. . .THE WITNESS:· Yeah.· I don't have an estimate based on the number of clients."). And Papa's President unmistakenly testified that Papa was *not* in the business of doing what the Pals do. *Id.* at 118: 7-10 ("Q So Papa isn't in the business of providing the services of the Papa Pals and the social care team; is that correct? A Yes.").

For these reasons, this case is nothing like *Athol Daily News v. Bd. of Review of Employ. & Training*, 439 Mass. 171, 178-79 (2003); or *Carey v. Gatehouse Media, Inc.,* 92 Mass. App. Ct. 801, 805-11 (2018), and Plaintiffs' reliance on them is misplaced. In those cases, the hiring entity admitted that it was engaging in the same business as the putative employees. *See Athol Daily News v. Bd. Of Rev. Of Div. Of Emp. And Training*, 439 Mass. 171, 179, 786 N.E.2d 365, 372 (2003) (finding that carriers who distributed newspapers performed services in the usual court of defendants business because "the [defendant] itself defines its business as "publishing and distributing" a daily newspaper"); *Carey v. Gatehouse Media Massachusetts I, Inc.*, 92 Mass. App. Ct. 801, 806, 94 N.E.3d 420, 425 (2018) (finding that newspaper delivery driver performed services in the usual course of defendant's business because defendant "describes its business as "[n]ewspaper [p]ublishing" . . . and describes itself as a publisher and distributor."). Papa does not advertise the Services Pals provide as *its* business. Quite the opposite: it disclaims such services.

And *Ludlow v. Flowers Foods, Inc.*, No. 18CV1190-JO-JLB, 2022 WL 2441295, at *1 (S.D. Cal. July 5, 2022) does not help Plaintiffs either. The Court in that case found only that class certification was appropriate on the record before it; not that plaintiffs were entitled to summary judgment on their misclassification claim.

In sum, genuine issues of fact exist as to Prong B, precluding summary judgment. A reasonable jury could find that Papa's business is to serve insurance companies and

employers by connecting the insured "Members" to Pals who can provide address health care gaps. Bchara Decl. ¶ 5. A reasonable juror could conclude that because Papa's revenue stems largely from Member eligibility for a benefit alone, and not the visits Pals perform, *see* Bchara Decl. ¶ 8, the work Pals perform is incidental to Papa's business. Courts have denied summary judgment under similar facts. *See Salinas v. Cornwell Quality Tools Co.*, 635 F. Supp. 3d 979, 992 (C.D. Cal. 2022) (genuine issues of material fact on Prong B precluded summary judgment where defendant disputed its business was as plaintiffs characterized). Summary judgment is improper here too.

### (c)    Genuine Disputes of Fact Preclude Summary Judgment on Prong C.

Disputes of fact permeate Prong C. To demonstrate otherwise, Plaintiffs needed to point to evidence showing no dispute over whether Pals are customarily engaged in an independently established trade occupation or business. *See Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 570 (2018) ("Part C asks whether the worker "independently has made the decision to go into business for himself or herself."). This fact examines evidence that the worker has "take[n] the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like." *Id.* But as discussed in IV. A., *supra*., Plaintiffs offer no evidence about the various trades, occupations, or businesses that supposed aggrieved employees are engaged. They have not met their burden on this element.

Nor can they. The record shows that Pals independently decide to work for themselves. Pals testified that they work with members outside the platform, have their own business doing similar work, and some work for other app-based companies too. Bronchetti Decl. ¶¶ 4 (Ex. 1), 5 (Ex. 2), 6 (Ex. 3), 8 (Ex. 5) 11 (Ex. 8). This evidence at minimum creates a genuine dispute of fact that Papa can prove Prong C.

### 4.    The Question of Willful Misclassification Cannot Be Summarily Decided.

Plaintiffs fail to show there is no genuine dispute that Papa willfully misclassified Plaintiffs and the purported aggrieved employees they represent.

Under Labor Code section 226.8, an employer acts unlawfully if it engages in "willful misclassification" by voluntarily and knowingly misclassifying an individual as an independent contractor to avoid employee status. Cal. Lab. Code § 226.8. Courts consistently hold that the determination of a party's state of mind—such as whether a defendant's actions are "willful"—is a factual issue ill-suited for resolution at the summary judgment stage. *See United States v. Castro-Juarez*, 654 F. App'x 364, 366 (9th Cir. 2016); *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1055 (C.D. Cal. 2021). Claims for willful misclassification have been dismissed when there is no evidence of the defendant's mental state or intent at the time of classification. *See Hassell v. Uber Techs.*, 2021 U.S. Dist. LEXIS 115373, 2021 WL 2531076 (N.D. Cal. June 21, 2021); *Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, 2013 WL 12171957, at *8 (C.D. Cal. July 22, 2013).

As support for their request for summary judgment, Plaintiffs rely solely on testimony that Papa classified Pals as independent contractors. *See* Motion at 17. Plaintiffs offer no evidence that Papa acted with voluntary and knowing intent to avoid employee status, as required by section 226.8. *Id.* In fact, Papa's weighing of the facts and circumstances, (*see* Lebe Decl. ¶ 12, Exhibit 4 [Bchara Dep. 125:11-14]), suggests a reasoned, good-faith determination, rather than a deliberate effort to evade the law. Summary judgment is therefore improper.

Plaintiffs get nowhere by relying on *Amaral v. Cintas Corp. No. 2*, *Barnhill v. Robert Saunders & Co.*, *Diaz v. Grill Concepts Services, Inc.*, and *Naranjo v. Spectrum Sec. Services, Inc.* None of these cases considered or evaluated the definition of "willful misclassification" adopted in Labor Code section 226.8(i)(4).

The distinction between the term "willful" under Labor Code section 203 and "willful misclassification" under Labor Code section 226.8 matters. The definition of "willful"

under Labor Code section 203 is judicially constructed and "has long been understood as doing [something] deliberately or by an affirmative, conscious choice." *Naranjo v. Spectrum Sec. Servs.*, Inc., 15 Cal. 5th 1056, 1079 n.5 (2024). By contrast, the legislature defined "willful misclassification" under Labor Code section 226.8 as "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor." Cal. Lab. Code § 226.8. The terms are not synonymous.

Indeed, the doctrine of expressio unius est exclusio alterius—the expression of certain things in a statute necessarily involves exclusion of other things not expressed—further indicates the Legislature intended to define willful misclassification the way it did, as distinct from the definition in Labor Code section 203. *See, e.g.*, *People v. Lai*, 138 Cal. App. 4th 1227 (2006) (refusing to imply a provision from one part of a statute to another); *Orue v. Ford Motor Serv. Co.*, 461 F. App'x 605, 606 (9th Cir. 2011) ("If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls."). Had the Legislature intended to use the same definition from Labor Code section 203, it had no need to define it in Section 226.8 at all. The Court should reject Plaintiffs' request to define it otherwise.

Besides, even if the Court were to apply the judicially created standard for "willful" under section 203, genuine issues of material fact would still preclude summary judgment. As the Supreme Court explained in *Naranjo*, an employer's objectively reasonable and good-faith belief that it complied with the law precludes a finding of willfulness. *Naranjo*, 15 Cal. 5th at 1087. The record here contains ample evidence that Papa classified each Pal in good faith: Papa's President testified Papa carefully weighed the facts and circumstances before classifying Pals as independent contractors. Lebe Decl. ⁋ 12, Exhibit 4 (Bchara Dep. 125:11-14). Moreover, a trier of fact could reasonably conclude that Pals are independent contractors—either because Defendant can satisfy the ABC test, or because Pals qualify as referred service providers or app-based drivers. *See* discussion IV. B. 1-3, *supra*. These facts demonstrate Papa had an objectively reasonable basis for classifying Pals the way it did.

Plaintiffs have not produced evidence establishing Papa's intent to avoid employee status; this Court should deny their request for summary judgment on whether Papa willfully misclassified anyone.

### 5. Plaintiffs' Penalty Claims Rests on Disputed Factual Issues.

Plaintiffs' request for over $91 million in penalties fails derivatively. Genuine factual disputes remain on threshold issues necessary for their damage evaluations because a trier of fact could reasonably find Papa satisfies the ABC test or can demonstrate that an exemption to the same applies. *See* discussion IV. B. 1-4, *supra*.

Plaintiffs' calculation—that they are entitled to the maximum penalty available—is unsupported in any case. They offer no evidence that Papa engaged in a pattern or practice of misclassifying Pals to evade employer obligations, and no authority supports a de facto finding that a defendant engaged in a pattern or practice of misclassification following a finding of misclassification. *See* Motion, generally. Summary judgment is improper on this issue too.

## V. PLAINTIFFS' EVIDENCE IS INADMISSIBLE OR IMPROPER.

Pursuant to Local Rule 7-3, Papa objects as follows:

### A. Plaintiffs' Propositions are Largely Unsupported by Evidence.

Many of Plaintiffs' "factual statements" are unsupported by any evidence. For example: "Defendant Papa, Inc. is a Florida-based elder care and companionship services company doing business in the state of California." (Pl.'s Mem. ISO MSJ at 3:3-4.); "Despite Defendant's complete reliance on Papa Pals to provide the care and companionship services that are the cornerstone of its business and the high degree of control Defendant exercises over Papa Pals . . . ." (Pl.'s Mem. ISO MSJ at 4:1-3.) Such statements lack any citation to the record and this Court should strike them because of it. *See Coverdell v. Dept. of Soc. and Health Services, State of Wash.*, 834 F.2d 758, 762 (9th Cir. 1987) (unsworn factual allegations and argument in briefing are not evidence); *See Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) (arguments are not evidence).

**B.     Exhibits 1, 6, 8, 12, 13, 14, 16, 17, 18, and 21 to Declaration of Jonathan M. Lebe Have Not Been Authenticated And Are Hearsay In Any Case.**

Exhibits 1, 6, 8, 12, 13, 14, 16, 17, 18, and 21 violate Federal Rules of Evidence ("FRE") Rules 401 (Relevance), 801(Hearsay), and 901 (Foundation). Under FRE Rule 901(a), to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Plaintiffs have not met this burden. Their exhibits have <u>not</u> been produced in litigation and Plaintiffs did not produce testimony or other evidence proving that these exhibits are what Plaintiffs claim them to be. *See* Fed. R. Evid. 901; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (stating that documents must be authenticated before they can be admitted); *Wady v. Provident Life and Accident Ins. Co. of Am*., 216 F. Supp. 2d 1060 (C.D. Cal. 2002) (excluding internet evidence on a summary judgment motion for these reasons). Given the lack of authentication, these exhibits are also not relevant under FRE Rules 401.

These exhibits are also hearsay. Hearsay is an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Out-of-court statements constitute hearsay when offered in evidence to prove the truth of the matter asserted. *Anderson v. United States*, 417 U.S. 211, 219 (1974). Plaintiffs offer various exhibits—which describe Papa's purported mission statements, investor information, industry awards, and job openings, advertisements, pillars, training for Papa Pals, trust and safety procedures, Papa Pal screening, and the like—not for their existence, but to prove the truth of the matter asserted, i.e., that Papa's mission is what the exhibit says, that it has various openings, offers various training, etc. This Court should not permit them to be used for this purpose.

Exhibits 1, 6, 8, 12, 13, 14, 16, 17, 18, and 21 must be disregarded.

**C.     This Court Should Strike Any Statement That Relies On Inadmissible Evidence.**

Plaintiffs' Motion relies mostly on inadmissible exhibits. Outside of Plaintiffs' own testimony and the procedural history, their Statement of Facts relies almost entirely on

inadmissible evidence, except the following:

- o "Papa Pals' duties include providing "health reminders" to customers, assisting customers with pet care, providing technological support, helping customers with their physical therapy and exercise, and providing "child and parental support." Motion at 3.

- o In providing these services, Papa Pals are required to use their personal mobile phones to access the Papa app, through which they browse and book visits with Papa's customers; Defendant closely monitors Papa Pals' activity on the Papa app and tracks Papa Pals' locations through the app; Defendant nonetheless uniformly classifies Papa Pals as independent contractors. *Id.*

The Court should strike any statement that relies on inadmissible evidence. *See* discussion V.B., *supra*.

## VI.    **CONCLUSION**

For the foregoing reasons, Papa respectfully requests that this Court deny Plaintiffs' Motion in its entirety.

DATED:  November 14, 2025              GREENBERG TRAURIG, LLP

By: _____
                                                  Ellen Bronchetti
                                                  Daniel Smith
                                                  Tayanah C. Miller

Attorneys for Defendant PAPA, INC.