Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Rayne A. Brown (State Bar No. 342011)
Rayne@lebelaw.com
**Lebe Law, APLC**
3900 W. Alameda Avenue, Fifteen Floor
Burbank, CA 91505
Telephone: (213) 444-1973

Attorneys for Plaintiffs Jennifer Pardo and Evangeline Matthews,
Individually and on behalf of all others similarly

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Pardo, Evangeline Matthews, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>Papa, Inc.,<br><br>Defendant. | Case No. 3:21-cv-06326-RS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Hearing Information:<br>Date: December 18, 2025<br>Time: 1:30 p.m.<br>Hon. Richard Seeborg<br><br>Action Filed: August 17, 2021<br>Trial Date: None Set |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 2

    A. Plaintiffs' Motion Cites Record Evidence and Papa Fails to Raise a Triable Dispute ................. 2

    B. Papa Fails to Prove an Exemption to the ABC Test Applies ......................................................... 4

        1. Papa is Not a Referral Agency ................................................................................................. 4

        2. Papa is Not a Delivery or Transportation Network Company ................................................... 6

        3. Even if *Borello* Applies, Papa Also Fails its *Borello* Burden ..................................................... 8

    C. Papa Fails to Raise a Triable Issue as to Any Prong of the ABC Test ....................................... 10

        1. Papa Cannot Dispute That It Retains Control Over Pals ........................................................ 10

        2. Papa Cannot Dispute That the Pals Constitute Papa's Business ............................................. 11

        3. Papa Concedes Pals Do Not Operate Independently Established Businesses ........................ 12

    D. Papa Willfully Misclassified Papa Pals ....................................................................................... 13

    E. Papa's Uniform Classification of Papa Pals is a Pattern or Practice Under 226.8(c) ................. 13

    F. Papa's Evidentiary Objections are Meritless ............................................................................... 14

III. CONCLUSION ....................................................................................................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF AUTHORITIES**

**Cases**

*Abu-Lughod v. Calis,* 2015 U.S. Dist. LEXIS 189550 (C.D. Cal. May 20, 2015) ................................. 15

*Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) ................................................................................ 2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................... 2, 3

*Awuah v. Coverall N. Am., Inc.* 707 F. Supp. 2d 80 (2010) ..................................................................... 11

*Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522 (2014) ......................................................... 9

*Castellanos v. State of Cal.*, 16 Cal. 5th 588 (2024) ................................................................................ 7

*Castellanos v. State of Cal.*, 89 Cal. App. 5th 131 (2023) ...................................................................... 7

*Celotex v. Catrett*, 477 U.S. 317 (1986) ............................................................................................... 2, 3

*Diaz v. Grill Concepts Services, Inc.*, 23 Cal. App. 5th 859 (2018) ...................................................... 13

*Dynamex Operations W. v. Superior Court,* 4 Cal. 5th 903 (2018) ...................................... 4, 10, 11, 12

*Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. 2008) ..................... 2

*Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558 (2018) ....................................................... 12

*Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131 (2019) ................................................ 5, 12

*Goro v. Flowers Foods, Inc.*, 2021 U.S. Dist. LEXIS 180166 (S.D. Cal. Sep. 20, 2021) ....................... 11

*JKH Enters., Inc. v. Dep't of Indus. Relations*, 142 Cal. App. 4th 1046 (2006) ...................................... 9

*Keskinen v. Lush Handmade Cosmetics*, LLC, 2025 LX 223258 (C.D. Cal. June 24, 2025) ................. 14

*Ludlow v. Flowers Foods, Inc.*, 2022 U.S. Dist. LEXIS 118092 (S.D. Cal. July 5, 2022) ...................... 12

*Malloy v. Fong,* 37 Cal. 2d 356 (1951) .................................................................................................... 9

*McGucken v. Triton Elec. Vehicle Ltd. Liab. Co.,* 2022 U.S. Dist. LEXIS 107618 (C.D. Cal. Mar. 21, 2022) ........................................................................................................................................... 15

*Olson v. State of Cal.*, 104 F. 4th 66, 78 (2024) ...................................................................................... 7

*People v. Uber Techs.*, 56 Cal. App. 5th 266 (2020) ............................................................................. 11

*Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274 (N.D. Cal. 2022) ......................................... 11

*Ruiz v. Affinity Logistics Corp.,* 754 F. 3d 1093 (2014) .......................................................................... 9

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) ....................................... 8

*Silver v. Silver*, 280 U.S. 117, 124, 50 S. Ct. 57 (1929) ........................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Vazquez v. Jan-Pro Franchising Int'l, Inc.,* 986 F. 3d 1106 (9th Cir. 2021) ..................................... 11, 12

*Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) .............. 15

**Statutes**

Cal. Bus. & Prof. Code § 7451 ................................................................................................. 6

Cal. Bus. & Prof. Code § 7463 .............................................................................................. 7, 8

Cal. Lab. Code § 2777(a)(1) ..................................................................................................... 4

Cal. Lab. Code § 2777(a)(10) ................................................................................................... 6

Cal. Lab. Code § 2777(a)(2)-(4) ............................................................................................... 4

Cal. Lab. Code § 2777(a)(5) ..................................................................................................... 5

Cal. Lab. Code § 2777(a)(7) ..................................................................................................... 5

Cal. Lab. Code § 2777(a)(9) ..................................................................................................... 6

Cal. Lab. Code § 226.8(a) ....................................................................................................... 13

Cal. Proposition 22 (Gen. Elec. (Nov. 3, 2020)) § 1(f) ............................................................ 8

Cal. Proposition 22 (Gen. Elec. (Nov. 3, 2020)) § 2(a) ........................................................... 8

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................. 2

Fed. R. Civ. P. 56(c) ................................................................................................................. 2

Fed. R. Evid. 801(d)(2)(A) ..................................................................................................... 15

I. **<u>INTRODUCTION</u>**

The Court should grant Plaintiffs Jennifer Pardo ("Plaintiff Pardo") and Evangeline Matthews ("Plaintiff Matthews," collectively "Plaintiffs") motion for summary adjudication and find that Defendant Papa, Inc.'s ("Defendant" or "Papa") unlawfully classified its workers ("Papa Pals") as independent contractors despite operating a companywide model that retains the right to control Pals' work and depends on Pals to deliver the very services Papa sells. Papa's opposition does not rebut Plaintiffs' record citations with admissible evidence. Instead, it relies on reframing and burden-shifting—arguing Plaintiffs must disprove exemptions and negate hypotheticals—when California law places the burden on Papa to prove an exemption or, absent an exemption, each prong of the ABC test.

Papa cannot meet that burden. First, Papa fails to establish any exemption that would displace the ABC test. Papa cannot satisfy the mandatory criteria to qualify as a "referral agency" under Labor Code § 2777: the record shows Pals do not provide services to Papa's clients under their own independent business name; Papa restricts off-platform contact and prevents Pals from maintaining their own clientele; and Papa controls matching, scheduling, and the economic terms of the relationship. Papa's attempt to invoke Proposition 22 fares no better. Prop. 22 regulates relationships between app-based drivers and transportation and delivery "network companies." Papa identifies no authority extending that narrow framework to a caregiving or companionship business model like Papa's. Even setting aside its threshold failure, Papa cannot satisfy Prop. 22's requirements given its control over how visits are arranged and managed and the nature of the services Pals perform.

Second, even if the Court were to reach the *Borello* test, Papa also fails as a matter of law to meet its burden to prevail under that test. The undisputed evidence demonstrates Papa's right of control through mandatory standards, training and background-check requirements, app-based supervision, restrictions on client relationships, and the unilateral power to discipline and deactivate Pals. Papa's response that it "suggests" standards or that Pals vary in visit activities does not defeat summary adjudication because retained control, not the degree of day-to-day micromanagement, is determinative.

Third, with no exemption applicable, Papa cannot satisfy any prong of the ABC test. Prong A fails because Papa's platform rules, standards, and discipline mechanisms establish its right to control the manner and means of the work. Prong B fails because Pals' companionship and in-home support are

**MEMORANDUM OF POINTS AND AUTHORITIES**

not "incidental" to Papa's business; they are the service Papa markets and sells. Papa cannot manufacture a triable issue by redefining itself as merely a technology marketplace. Prong C fails because Papa offers no evidence that Pals are actually engaged in independently established businesses of the same nature; at most, it points to generalized "gig work," which is legally insufficient.

Finally, summary adjudication is appropriate on willfulness and penalties. Section 226.8 defines willful misclassification as "voluntarily and knowingly" classifying workers as independent contractors—not knowing the decision was unlawful. Papa made a deliberate, uniform classification decision from the company's inception, constituting a "pattern or practice" for penalty purposes. Papa's evidentiary objections do not change the analysis: Plaintiffs rely on admissible materials—including Papa's own public-facing statements—while Papa simultaneously cites the same sources in opposition.

Accordingly, the Court should grant Plaintiffs' motion for summary adjudication in its entirety.

## II.   ARGUMENT

### A. Plaintiffs' Motion Cites Record Evidence and Papa Fails to Raise a Triable Dispute

Summary judgment is appropriate where "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc) (quoting Fed. R. Civ. P. 56(a)). "The purpose of partial summary judgment 'is to isolate and dispose of factually unsupported claims or defenses.'" *Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) (quoting *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986)). "Rule 56 requires more than speculation, attorney argument, or conclusory assertions: 'the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiffs' motion addresses a legal question of misclassification that turns on Defendant's own admissions, uniform business practices, and standardizes policies, rather than individualized factual disputes.

Papa's opening contention—that Plaintiffs' motion "fails to comply with Rule 56(c) because it lacks supporting evidence"—misstates both the Rule and the record. Rule 56(c) requires the movant to cite "particular parts of materials in the record" supporting the asserted absence of a genuine dispute. Fed. R. Civ. P. 56(c). Plaintiffs do so throughout: the motion is supported by deposition testimony,

Papa's own documents, and other admissible materials establishing the operative facts relevant to the misclassification issue. *See* Dkt. No. 115-1, COE. Furthermore, Papa advances various legal arguments that improperly seek to shift the burden of proof to Plaintiffs on issues for which it bears the burden.

Plaintiffs seek adjudication of the misclassification issue under the ABC test, which charges the hiring entity with the burden of establishing each of the three prongs to sustain independent contractor status. Papa's burden-shifting maneuver is laid bare by the fact that it cannot produce evidence establishing any triable dispute on the three prongs of the ABC test and instead argues that Plaintiffs must negate every possible factual permutation of how "other workers" might operate, and must affirmatively disprove defenses and exemptions Defendant raises. That is not the law. Rule 56 exists precisely to "isolate and dispose" of defenses that lack evidence. *Celotex*, 477 U.S. at 323–24.

To the extent Papa invokes exemptions, the same problem persists: Papa's opposition leans on terms of art ("referral agency," "marketplace," "app-based drivers," etc.) rather than producing admissible evidence establishing the elements of any statutory carveout. Rule 56 does not permit a defendant to avoid summary adjudication by gesturing at theoretical defenses without evidence.

Papa's opposition also blurs an essential distinction: not every disagreement is material. Summary judgment exists to prevent exactly this tactic: where the defendant "creates no genuine factual dispute but merely disputes legal conclusions,' summary judgment must be granted." *Anderson,* 477 U.S. at 250. Papa does not identify evidence contradicting the core, dispositive facts Plaintiffs rely on. Rather, it disputes Plaintiffs' legal conclusions and attempts to relabel what the company does. Papa attempts to manufacture factual disputes by reinterpretation and conclusory assertions, not by evidence.

Finally, Papa's repeated theme—that Plaintiffs did not supply evidence about "other workers"—does not preclude summary judgment. The question is not whether Plaintiffs submitted the maximum conceivable quantum of evidence, but whether Plaintiffs cited admissible evidence sufficient to establish the absence of a material dispute on the issue presented. Where the hiring entity's classification decision and operating model are uniform—and where the ABC inquiry turns on those policies and practices—Rule 56 does not require Plaintiffs to produce redundant declarations from countless individuals to satisfy the evidentiary standard. To the contrary, the uniform evidence of the misclassification makes individual inquiries unnecessary. Papa cannot avoid summary adjudication by

-3-

**MEMORANDUM OF POINTS AND AUTHORITIES**

demanding a different evidentiary presentation than Rule 56 requires.

Accordingly, Papa's arguments regarding Rule 56(c) should be rejected and the Court should proceed to the merits—where Papa fails, as a matter of law, to either satisfy its burden under each prong of the ABC test or establish an exemption applies.

**B. Papa Fails to Prove an Exemption to the ABC Test Applies**

Under California law, the ABC test controls unless Papa proves that a statutory exemption applies. The ABC test assumes workers are employees unless the hiring entity can show: the worker is free from the entity's control and direction; the worker performs work outside the entity's usual course of business; and the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that of the work performed. *Dynamex Operations W. v. Superior Court,* 4 Cal. 5th 903, 955-56 (2018). Papa improperly attempts to shift its burden of proof, arguing that Plaintiffs were prematurely obligated to advance a *Borello* argument, and that Plaintiffs' motion "assumes the ABC test applies to all pals." Dkt. No. 118, Defendant's Opposition to Plaintiffs' Motion for Partial Summary Adjudication ("Opp.") at 7, 15. However, the ABC test presumptively applies unless Papa proves that it meets an exception. Here, none do.

**1. Papa is Not a Referral Agency**

Papa argues that the ABC test does not apply to referral agencies, but it cannot and does not meet any, much less all, of the mandatory criteria a business must prove to claim the exemption. Cal. Lab. Code § 2777 expressly enumerates the narrow circumstance where the exemption applies to referral agencies, and the ABC test applies unless *every* statutory requirement is satisfied.

Papa's analysis falls far below satisfying every item of the above criteria, as it is required to. Opp. at 12. Pals are not free from Papa's control and direction; Pals are tightly monitored, required to follow Visit Standards and Code of Conduct, and to accept Papa's non-negotiable EULA. Dkt. No. 115, Plaintiffs' Motion for Partial Summary Adjudication ("Mot.") at 15-16 (citing Exs. 9-11); Pardo Decl. ¶ 3; Matthews Decl. ¶ 3; Cal. Lab. Code § 2777(a)(1). Papa explicitly states that Pals "need not have any special license." Opp. at 12. It is therefore impossible for Papa to prove that Pals hold any business or tax registration, contractor's license, or professional permit. Cal. Lab. Code § 2777(a)(2)-(4).

Relying on one self-serving declaration, Papa contends that "Pals need not provide their offered

Services under Papa's name; they use Papa's name only to provide legitimacy and security." Opp. at 12. This argument proves too much. Section 2777(a)(5) asks how the services are actually delivered to the client in this relationship—whether the "service provider[] … deliver[s] services to the client under the service provider's name," not whether the worker could someday brand themselves differently. Cal. Lab. Code § 2777(a)(5). Pals perform services for Papa's clients as "Papa Pals," using Papa's name and platform to obtain those clients and complete the work, and Papa monetizes that work through its business arrangements. The fact that a worker could, in theory, perform similar labor for different clients is true of virtually every employee and cannot satisfy § 2777(a)(5); if it did, the exception would swallow the rule and the statute would collapse altogether. Pals are not delivering services to Papa's clients under their own independent business name, so Papa cannot meet § 2777(a)(5).

Papa admits Pals "need not have any tools," so Pals do not provide their own. *Id.* at (a)(6); Opp. at 12. In fact, the core tool facilitating the Pals' work is the Papa app. Mot. at 3-4, 8-11. Papa admits that its "developed technologies" and "secure technology platform" are the mechanism through which Pals are connected to members, including that Papa "facilitate[s] trusted introductions between Members and independent Pals through a secure technology platform." Opp. at 8-9. Papa provides the tools Pals use to perform work as Papa's employees, and Papa fails its burden to prove otherwise.

Further, Papa cannot satisfy § 2777(a)(7) because Pals are not customarily or previously engaged in an "independently established business or trade." Cal. Lab. Code § 2777(a)(7). Papa's opposition offers only the conclusory assertion that some Pals work other gig jobs. Opp. at 16. That is not evidence of an independently established business; at most, it shows that some individuals have other sources of income. California law draws a clear line between a worker who occasionally performs similar services for others (or moonlights), and a worker who is *customarily engaged* in an independent enterprise that exists separate and apart from the putative hiring entity. "Here the inquiry is whether the worker independently has made the decision to go into business for himself or herself." *Gonzales v. San Gabriel Transit, Inc*., 40 Cal. App. 5th 1131, 1131 (2019). Papa presents no evidence that any Pals have gone into the caregiving industry as an independent business with customers outside the Papa platform.

Relatedly, Papa cannot meet the criteria of § 2777(a)(8). It argues generally that Pals can "work for other clients" without acknowledging that it restricts Pals from maintaining their own clientele by

prohibiting off-platform contact with Papa clientele and requiring logistics to occur exclusively through the app. Opp. At 12; Mot. at 6–7, 9–10; Papa FAQs, Ex. 12; Pardo Decl. ¶¶ 7–9. Papa not only prevents Pals from building their own clientele, but it further pressures continued acceptance of Papa work by penalizing Pals for declining assignments through lower ratings and deactivation should they reject too many visits. Mot. at 6-7, 9-10; Papa FAQs, Ex. 12; Pardo Decl. ¶¶ 7-9.

Papa cannot satisfy § 2777(a)(9) because Pals do not negotiate or arrange services "directly with the client." Cal. Lab. Code § 2777(a)(9). Instead, Papa controls scheduling and matching through its app, and structures all engagement on the platform's terms. Mot. at 10-11; Bchara Dep. 129:20-133-06. Papa further concedes it sets Pals' rates, which are "set by the contracts between Papa and its Clients," confirming that the economic terms are dictated by Papa's client agreements, not negotiated directly between Pal and client. Opp. At 12. Likewise, Papa fails the requirement that there is no "deduction by the referral agency" and that Pals "negotiate[] rates directly with the client, or is free to accept or reject rates set by the client" for the same reasons. Cal. Lab. Code § 2777(a)(10).

Finally, Papa cannot satisfy § 2777(a)(11) because Papa deactivates Pals for rejecting too many visits; therefore, Pals are not free to reject clients repeatedly "without being penalized in any form by the referral agency." Mot. at 10-11; Pardo Decl. ¶¶ 7–9; Matthews Decl. ¶¶ 7–9.

Papa must satisfy **each** requirement of § 2777. Because it clearly cannot do so here, the referral-agency exemption does not apply, and Papa remains subject to the ABC test.

### 2. Papa is Not a Delivery or Transportation Network Company

Papa's attempt to invoke the Proposition 22 app-based driver exemption fails as a matter of law. Papa ignores the threshold requirements of the statute, which is narrow, industry-specific, and cannot apply to Papa based on undisputed facts in the record. Papa's argument that "some Pals work solely as app-based drivers" (Opp. At 7) is insufficient to circumvent Papa's own classification of its business, and Pals' function in that business. California law creates an exemption from the ABC test for "app-based drivers" providing "rideshare or delivery services" for a "network company." Cal. Bus. & Prof. Code § 7451. That network company must not require "the app-based driver to accept any specific rideshare service or delivery service request as a condition of maintaining access to the network company's online-enabled application or platform." *Id.* Papa is not a "network company."

-6-

**MEMORANDUM OF POINTS AND AUTHORITIES**

A "network company" is defined as a business that 1) facilitates delivery services or 2) connects riders with drivers for transportation, through an online-enabled application." Cal. Bus. & Prof. Code § 7463. Papa describes itself as a healthcare services marketplace: a "new kind of care, built on human connection." Mot., Ex. 1. Papa provides an extensive list of non-transport tasks Pals routinely engage in, including "health reminders," "parental support," "technology help," and "house task assistance." Opp. At 10-11. Visits are not on-demand; they are pre-scheduled. Opp. At 11. A Pal could exclusively perform tasks that do not require transportation at all, like "virtual visits" from their home. Mot., Ex. 3. Papa's attempts to analogize its business to ride-sharing platforms are misleading and disingenuous: the statute is clear in its application to delivery and transportation businesses, not care-based services. Papa fails to identify a single case that has extended Prop. 22 outside of the ride share/delivery context. Nor are Pals "app-based drivers." That Pals could drive members in the course of their caregiving does not transform Papa's business to a ride-sharing one; *if* a Pal performs a task that involves transportation, such driving is incidental to the primary caregiving job. Even transportation in this context is not commercial; it is a support to the main caregiving function (such as driving members to appointments).

Papa's attempt to squeeze itself into the safe haven of Prop. 22 by rebranding itself as an "app-based driver" platform contravenes the initiative's regulatory intent. "Prop. 22's overarching single subject is regulation of the relationships between app-based drivers and network companies." *Castellanos v. State of Cal.*, 89 Cal. App. 5th 131, 135-136 (2023). Courts apply Prop. 22 in the context of transportation and delivery apps like Uber, Lyft, and DoorDash, not caregiving businesses like Papa. *See Castellanos v. State of Cal.*, 16 Cal. 5th 588, 595–96 (2024). The Legislature intentionally narrowed the scope of Prop. 22 to draw lines amongst app-based labor and target areas of the industry where misclassification concerns were most acute: "[t]o the extent that it perceived Uber, Postmates and other transportation and delivery app-based services as posing a greater risk of misclassification than Wag! or TaskRabbit, the California legislature acted rationally by 'strik[ing] at the evil where it is felt and reach[ing] the class of cases where it most frequently occurs.'" *Olson v. State of Cal.*, 104 F. 4th 66, 78 (2024) (quoting *Silver v. Silver*, 280 U.S. 117, 124, 50 S. Ct. 57 (1929)).

Although Papa fails the threshold requirements of the statute, and the Court need not proceed in further analysis, the statutory factors cannot be met in light of Papa's control of its Pals: Papa prohibits

-7-

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  Pals from scheduling their own separate work with members, requires all visits to be booked within
2  Papa's app, requires annual background checks, training and compliance with Papa, and tracks Pals in
3  real time. Mot. at 9, Ex. 12. Papa's revenue is from its caregiving function (Mot. at 9); not as an "on-
4  demand" passenger transportation or delivery service. Cal. Bus. & Prof. Code § 7463.

Papa attempts to invoke Prop. 22 without contending that it meets the criteria to do so. Prop. 22 mandates benefits and protections for rideshare and delivery drivers, such as "a healthcare subsidy consistent with the average contributions required under the Affordable Care Act []; a new minimum earnings guarantee tied to 120 percent of minimum wage with no maximum; compensation for vehicle expenses; occupational accident insurance to cover on-the-job injuries; and protection against discrimination and sexual harassment." Proposition 22, § 1(f). Network companies must ensure that for each earnings period, app-based drivers are compensated at not less than the net earnings set forth in the measure. § 2(a). Papa does not contend it satisfies any of these conditions, nor can it.

Accordingly, the app-based driver exemption cannot shield Papa from misclassification liability or the ABC test, and there is no genuine dispute of material fact here to preclude summary judgment.

### 3. Even if *Borello* Applies, Papa Also Fails its *Borello* Burden

Neither exemption Papa invokes apply to circumvent the application of the ABC test. Even if they did, Papa fails its *Borello* burden. "The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 345 (1989).

Papa's control over its Pals is not incidental but pervasive. It exerts meaningful control over Pals consistent with employee status: mandatory onboarding and training (Pardo Decl. ¶ 5; Matthews Decl. ¶ 5; Bchara Dep. 155:08–156:22); background checks and annual re-checks (Mot., Exs. 17-18; Bchara Dep. 141-42); detailed work standards (Mot., Exs. 9-11, 7, 14-15); the ability to discipline, suspend, and terminate Pals from the platform (Mot., Ex. 11 at 2, Ex. 9 at 12, Ex. 10 at 5); control over customer relationships; and prohibitions on Pals independently serving members (Mot., Exs. 12-13). Regardless of how Papa now describes its Pals, it has consistently treated them as employees.

"Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives

him the means of controlling the agent's activities.'" *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (quoting *Malloy v. Fong,* 37 Cal. 2d 356, 370 (1951). Here, Papa retains the unilateral right to suspend or permanently remove a Pal from the platform based on alleged policy violations, performance issues, or member complaints—effecting ending the Pal's ability to perform work for Papa at Papa's sole discretion. Mot. at 9-10; Opp. at 12. This unfettered termination power demonstrates Papa's right to control the Pals' work and weighs strongly in favor of employee status.

Papa's claimed variations in how Pals use the app do not detract from its *ability* to control. "Significantly, what matters under the common law is not how much control a hirer exercises, but how much control the hirer retains the right to exercise." *Ayala*, 59 Cal. 4th at 533. "By obtaining the clients in need of the service and providing the workers to conduct it, [defendant] retained all necessary control over the operation as a whole." *JKH Enters., Inc. v. Dep't of Indus. Relations*, 142 Cal. App. 4th 1046 (2006). "While 'purporting to relinquish' some control to the drivers by making the drivers form their own businesses and hire helpers, [a hiring entity] 'retained absolute overall control' over the key parts of the business." *Ruiz v. Affinity Logistics Corp.,* 754 F. 3d 1093, 1103 (2014).

Likewise, Papa's assertion that it "suggests that Pals follow its visit standards, but in practice, does not enforce most of them" is insufficient to negate Papa's retained right to control. Opp. at 10. A hiring entity cannot avoid employee status by characterizing mandatory standards as mere "suggestions" while reserving the power to enforce them—including through negative rating consequences, reduced access to work, suspension, or deactivation. Papa sets the standards and controls the mechanisms that determine whether a Pal can continue performing work through the platform at all. Even if Pals can make some decisions about *how* they carry out a visit, that does not alter the centralized controls Papa retains over the "operation as a whole": Papa obtains the clients, dictates the rules governing performance, manages matching and scheduling, and holds the unilateral power to remove Pals from the marketplace. In short, any day-to-day variation in how individual Pals carry out tasks does not undermine Papa's retained—and dispositive—right to control the relationship.

The remaining *Borello* factors also weigh decisively in favor of employee status. Pals do not operate independent businesses; they perform low-skill work that Papa structures and oversees, are paid by the visit in a manner decided by Papa and dependent on continued app access, and their work

-9-

**MEMORANDUM OF POINTS AND AUTHORITIES**

constitutes Papa's entire business of providing care services to its clients. Mot. at 3. Pals are subject to ongoing monitoring, standards, and discipline. Papa's refrain that it merely "suggests" standards—or that some Pals choose different visit types—does not change the legal analysis, because *Borello* turns on Papa's retained right to control the manner and means of Pals' work as well as the economic terms of the relationship. On this record, these factors overwhelmingly demonstrate an employment relationship. Papa cannot satisfy the *Borello* test as a matter of law, even if the Court were to reach it.

### C. Papa Fails to Raise a Triable Issue as to Any Prong of the ABC Test

As discussed *supra,* no exemption applies to shield Papa from the application of the ABC Test. As such, the ABC test applies, for which "the hiring entity has the burden of establishing each of the three prerequisites." *Dynamex,* 4 Cal. 5th at 956-57. Papa cannot satisfy any prong of the ABC test, and therefore summary adjudication is appropriate. *See generally,* Mot. Papa argues that the ABC test does not apply, but its argument fails as a matter of law. *See supr*a.

#### 1. Papa Cannot Dispute That It Retains Control Over Pals

Papa cannot create a triable issue on Prong A, which requires "that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact." *Dynamex,* 4 Cal. 5th at 957. Papa's contention that "remaining evidence does nothing to foreclose Papa from persuading a trier of fact" ignores the undisputed and uncontradicted evidence, including Papa's own website, that demonstrate Papa's pervasive control over Pals' work. Mot. at 10-11. Again, Papa's claim that it does not strictly "enforce" its rules in practice is both unsubstantiated and, more importantly, irrelevant; "[t]he *right* to control the manner and means of accomplishing the work is still the principal consideration under Part A." *Id.* at 958 (emphasis added). Papa's argument that only the representative members demonstrate control in fact is similarly misplaced. Papa's policies apply to *every* Pal: Papa requires all pals to execute a non-negotiable EULA, mandates use of its mobile application for all aspects of Pals' work, requires training and recurring background checks, and controls all economic aspects of the relationship. *See generally,* Mot. Papa cannot and does not meaningfully dispute that it retains control over its Pals.

///

### 2. Papa Cannot Dispute That the Pals Constitute Papa's Business

Papa cannot manufacture a factual dispute under Prong B by redefining the scope of its business in its brief. Whether Pals' work falls within the ordinary course of Papa's business is an objective test: "Part B . . . brings within the employee category all individuals who can reasonably be viewed as working in the hiring entity's business." *Dynamex*, 4 Cal. 5th at 959. Summary adjudication on Prong B is required, where, as here, "defendants have failed to meet their burden of identifying genuinely disputed material facts demonstrating that their distributors perform work that was outside the usual course of defendants' business." *Goro v. Flowers Foods, Inc*., 2021 U.S. Dist. LEXIS 180166, at *1 (S.D. Cal. Sep. 20, 2021). Papa's claims that its revenue stems from client contracts, not the Pals' work, ignores that the contracts exist because of the work Pals perform and its outcome: reduced loneliness, improved health, and closed care gaps. Mot. at 3-4, 11-15. Courts are "skeptical of such characterizations" that attempt to artificially redefine a business: *see Vazquez v. Jan-Pro Franchising Int'l, Inc.,* 986 F. 3d 1106, 1127 (9th Cir. 2021) (quoting *Awuah v. Coverall N. Am., Inc.* 707 F. Supp. 2d 80, 84 (2010)) ("Franchising is not itself a business; rather, a company is in the business of selling goods or services and uses the franchise model as a means of distributing those goods or services to the final end user without acquiring significant distribution costs."); *People v. Uber Techs.*, 56 Cal. App. 5th 266, 292–93 (2020) ("A number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business solely of creating technological platforms, not of transporting passengers, and have dismissed them out of hand."); *Roman v. Jan-Pro Franchising Int'l, Inc*., 342 F.R.D. 274, 306 (N.D. Cal. 2022) ("Defendant was plainly in the business of selling cleaning services. To conclude otherwise would ignore the entire foundation of defendant's business.").

Papa's attempts to distinguish the *Athol* and *Carey* cases because there, "the hiring entity admitted that it was engaging in the same business as the putative employees" fails for the same reasons. Papa's own circular arguments in its opposition regarding the definition of its business are not dispositive, particularly where the definition is contrary to the company's public self-descriptions and seeks to obfuscate the services that create the very foundation of its business.

While *Ludlow v. Flowers Foods, Inc*., addresses class certification, its Prong B analysis confirms that "whether the distributors' delivery services is central to Defendants' course of business

-11-

will be determined in large part by common evidence across the class," including "class-wide work requirements and practices." 2022 U.S. Dist. LEXIS 118092, at *20 (S.D. Cal. July 5, 2022). Similarly, here, Prong B is resolvable through common evidence. Far from showing Pals are "incidental" to its "ultimate business," the record unequivocally demonstrates Papa's product is the companionship and support services Pals provide. Papa's self-stated mission is to "connect [members] to real people for help with companionship, everyday tasks, transportation, and more." Mot., Ex. 6 at 1-3; Bchara Decl. ¶ 5. Papa Pals are not incidental; their work is indispensable to Papa's business. Papa earns revenue because Pals deliver the companionship and assistance that it markets. Mot. at 3-4,11-15. Bchara Dep. at 47:08-52:16. As the Ninth Circuit emphasizes, Prong B is "the most susceptible to summary judgment," and it is warranted here, where Papa has failed to meet its burden of identifying genuinely disputed material facts. *Vazquez*, 986 F. 3d at 1125. Papa cannot and does not meaningfully dispute that Pals constitute its business.

### 3. Papa Concedes Pals Do Not Operate Independently Established Businesses

Papa falls far short of its Prong C burden. "The appropriate inquiry is whether the person engaged in covered employment actually has an independent business, occupation, or profession, not whether he or she could have one." *Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 572 (2018). Occasional gig-work for other apps or isolated visits are insufficient. "This factor is established with evidence that the worker has taken the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like. Part C requires the hirer to show a worker actually be engaged in an independent business, not merely that he or she could be." *Gonzales*, 40 Cal. App. 5th at 1155. Papa identifies no such evidence and improperly seeks to shift its burden to Plaintiffs, when in reality, "[i]f the hiring entity fails to prove any one of these three prerequisites, the worker is an employee." *Dynamex*, 4 Cal. 5th at 916.

Papa's own opposition forecloses any argument that Pals independently engage in their own business. Papa recruits and screens Pals and "facilitate[s] trusted introductions" between members and Pals. Opp. at 19. Without Papa, Pals have no work; this is the antithesis of an independently established enterprise. Papa's failure to offer evidence of independent enterprise, compounded by its control over

client introductions, relations, and revenue, is fatal to its argument under Prong C.

### D. Papa Willfully Misclassified Papa Pals

There is no genuine factual dispute that Papa's misclassification decision was willful within the meaning of Labor Code § 226.8. Willfulness in this context is a companywide, policy-level question when, as here, the classification decision was deliberate, centralized, and uniformly applied. Papa cannot defeat summary adjudication by recasting that undisputed decision as a "fact issue" while offering no evidence that the classification was anything other than an intentional business choice.

Papa's effort to distinguish "willful" under § 203 from "willful misclassification" under § 226.8 is immaterial. Section 226.8 allows civil penalties where an employers "engage[s]" in the "willful misclassification of an individual as an independent contractor," and expressly defines willful misclassification as "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor." Lab. Code § 226.8(a), (i)(4). The statutory text therefore focuses on whether the hiring entity "voluntarily and knowingly" made the independent contractor classification decision, not whether it knew the classification was unlawful. "An employer's mistaken belief, even if held in good faith, does not preclude a finding of willfulness." *Diaz v. Grill Concepts Services, Inc.*, 23 Cal. App. 5th 859, 869 (2018). Papa admits it "carefully weighed the facts and circumstances before classifying Pals as independent contractors" and that it classified Pals as independent contractor from the start of the business. Opp. at 23-25. These are dispositive facts under § 226.8 and they are undisputed.

For the same reason, Papa's attempt to distinguish the *Amaral, Barnhill*, *Diaz.,* and *Naranjo* cases is misguided. These cases are not put forth for their underlying facts, but because they present the legal standard for "willfulness" in the context of the California Labor Code, based on the most prominent appellate authority considering that standard. Papa fails to present any authority that Plaintiff offers the wrong standard for willfulness, to present any evidence that the standard is not met, and to rebut Plaintiff's undisputed evidence that Papa acted willfully. Thus, summary judgment is appropriate.

### E. Papa's Uniform Classification of Papa Pals is a Pattern or Practice Under 226.8(c)

The "pattern of practice" requirement is easily met. Papa's classification decision was centralized and uniformly applied to all Pals on a companywide basis for years—precisely the kind of

-13-

**MEMORANDUM OF POINTS AND AUTHORITIES**

repeated, standardized conduct contemplated by § 226.8(c) to be a "pattern or practice." This is not, as Papa suggests, a "de facto" assumption. It is a record-based showing grounded in Papa's own admission that it adopted the independent contractor model from "day one" and applied it across the workforce. Bchara Dep. at. 124:18-23. Papa's EULA likewise confirms the standardized nature of the classification by expressly stating the is EULA "for an independent contractor relationship with Papa." Mot., Ex. 9 at 3. The evidence of Papa's pattern or practice of misclassification is undisputed.

Papa is simply mistaken that penalty claims here are "derivative" – the misclassification penalty sought by this motion is triggered by the willful misclassification determination. This is precisely how all PAGA penalties work – a violation of the Labor Code triggers a penalty.

### F. Papa's Evidentiary Objections are Meritless

Papa's objections mischaracterize the record and provide no basis to strike any portion of the motion. Papa's opposition isolates the challenged statements while ignoring that they are preceded by and followed with significant citations to the evidentiary record within the motion. For example, Papa seeks to strike Plaintiffs' statement that "[d]espite Defendant's complete reliance on Papa Pals to provide the care and companionship services that are the cornerstone of its business and the high degree of control Defendant exercises over Papa Pals." Mot. at 4. However, Plaintiffs thoroughly supports this this summarizing statement with specific citations to Papa's own website and marketing materials. Mot. at 3, Exs. 1, 6, 7. This is not a case where a party relies on "unsworn allegations" in briefing; Plaintiffs' factual assertions are grounded in sworn declarations and exhibits. Accordingly, *Coverdell* and *Smith*— which address unsupported allegations rather than record-backed facts—do not apply.

Papa's objections to Exhibits 1, 6, 8, 12-14, 16-18, and 21 also fail. Papa objects to Plaintiffs' use of its own website as evidence while simultaneously proffering separate areas of its website in support of its opposition. Opp. At 20 ("[I]t would have no need to disclaim such activity on its website. *See* Bchara Decl. ¶ 7. https://www.papa.com/corporate-wellness-programs"). Papa cannot object to the admissibility of its own public-facing statements while citing the same site in its brief. *See Keskinen v. Lush Handmade Cosmetics*, LLC, 2025 LX 223258, at *5 (C.D. Cal. June 24, 2025) ("Mr. Greenstone clearly states the date he visited the website, provided the URL, explained the portion of the site accessed, quoted the language he observed, and attached corresponding screenshots. This establishes an

1  adequate foundation for his testimony."). A "statement is not hearsay if it is offered against an opposing party and was made by that party." Fed. R. Evid. 801(d)(2)(A). *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) is inapt: Wady involved a third-party website in no way attributable to the party. Here, Plaintiffs rely on Papa's own website, marketing materials, job posting, and public-facing statements made by Papa. The hearsay objection fails because it is a party admission, and Papa relies on other portions of its website in its brief.

Moreover, public-facing statements are self-authenticating under Fed. R. Evid. 901(b)(4). The exhibits are not hearsay because they are offered to reflect how Papa publicly presents itself and its relationship to its Papa Pals, not for the truth of the matter asserted. *McGucken v. Triton Elec. Vehicle Ltd. Liab. Co.,* 2022 U.S. Dist. LEXIS 107618, at *8 (C.D. Cal. Mar. 21, 2022) ("Triton offers archives of its website available through the Wayback Machine for the limited purpose of showing the contents of the website on those days. This is not a statement at all, and thus falls outside the ambit of the hearsay rule."); *Abu-Lughod v. Calis,* 2015 U.S. Dist. LEXIS 189550, at *10 (C.D. Cal. May 20, 2015) (quoting *Telewizja Polska*, 2004 U.S. Dist. LEXIS 20845 at *5) ("to the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all— and thus fall outside of the ambit of the hearsay rule"). As such, the *Anderson* case is inapplicable. Likewise, the *Orr* case concerned unauthenticated loan documents used for the truth of the matter asserted; here, Plaintiffs' evidence is Papa's own materials that are readily verifiable public materials attributable to Papa and are independently admissible to show how Papa holds itself out and structures the work relationship—evidence directly relevant to the ABC test. Papa's evidentiary objections thus do not affect the admissibility of Plaintiffs' evidence and nothing in the motion should be stricken.

**III.    CONCLUSION**

As Papa Pals have been willfully misclassified as independent contractors and deprived of the protections of the California Labor Code, Plaintiffs respectfully request that this Court grant its motion, finding as a matter of law that Defendant misclassified Papa Pals as independent contractors and assessing civil penalties under the PAGA in the amount of $91,975,000.

///

///

Dated: December 5, 2025　　　　　　　　　**LEBE LAW, APLC**

By: _/s/ Jonathan M. Lebe_
　　　Jonathan M. Lebe
　　　Rayne A. Brown

Attorneys for Plaintiffs Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated

-16-
**MEMORANDUM OF POINTS AND AUTHORITIES**