Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Melissa M. Kurata (State Bar No. 285388)
Melissa@lebelaw.com
**Lebe Law, APLC**
3900 W Alameda Avenue, Fifteenth Floor
Burbank, CA 91505
Telephone: (213) 444-1973

Attorneys for Plaintiffs Jennifer Pardo and Evangeline Matthews,
Individually and on behalf of all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>Papa, Inc.; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:21-cv-06326-RS<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DECLINE SUPPLEMENTAL JURISDICTION [28 U.S.C. § 1367(c)]**<br><br><u>Hearing Information:</u><br>Date: September 3, 2026<br>Time: 1:30 p.m.<br>Hon. Richard Seeborg<br><br>TAC Filed: December 14, 2022<br>Trial Date: None Set |

## I. INTRODUCTION

The Motion to Decline Supplemental Jurisdiction filed by Plaintiffs Jennifer Pardo and Evangeline Matthews ("Plaintiffs") over their claim under the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq.*, and to sever that claim pursuant to Federal Rule of Civil Procedure 21 (the "Motion") should be granted in its entirety. Defendant's Opposition (the "Opposition") does not undermine a single one of the three independent statutory grounds for declination Plaintiffs raise; in fact, it addresses none of them on the merits.

First, Defendant does not dispute that the PAGA claim substantially predominates over the FLSA claims under 28 U.S.C. § 1367(c)(2), does not dispute that PAGA presents complex issues of California law under § 1367(c)(1), and does not so much as mention *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), or otherwise engage with the exceptional-circumstances analysis under § 1367(c)(4) at all. Nor does the Opposition dispute that severance under Rule 21 is the proper mechanism, or engage the *Artis* stop-the-clock analysis. An opposition silent on the merits of three independent statutory grounds concedes them. See *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1115 (N.D. Cal. 2010) (granting summary judgment where the plaintiff conceded a claim by failing to address it in her opposition).

Second, Defendant's argument that the Motion is "premature" ignores that this Court itself has already indicated at the April 16, 2026 Case Management Conference that it does not intend to exercise supplemental jurisdiction over the PAGA claim, a development Defendant's Opposition and its supporting declaration never address.

Third, Defendant's forum-shopping argument mistakes Plaintiffs' invocation of the tolling mechanism Congress created in 28 U.S.C. § 1367(d) for gamesmanship. The authority Defendant cites for that proposition, properly read, confirms that Plaintiffs are doing precisely what the statute contemplates, and one of Defendant's own cited cases does not involve supplemental jurisdiction at all.

Fourth, judicial economy and comity favor severance and dismissal now, because this Court has never reached the merits of the PAGA claim. Continued retention of the PAGA claim, while Defendant refuses to stipulate to a resolution of which court has jurisdiction, is itself the inefficiency Defendant claims to guard against. It is notable that Defendant's Opposition does not ask this Court to take supplemental jurisdiction over the PAGA claim and make a substantive ruling on Plaintiff's Motion for

Partial Summary Adjudication of those claims. This is because Defendant wishes for Plaintiffs' PAGA claim to remain in a jurisdictional limbo and never get adjudicated on the merits. If any party is playing games, it is Defendant.

For these reasons, and for the reasons set forth in the Motion, the Court should grant the Motion in its entirety.

## II. ARGUMENT

### A. Defendant Does Not Dispute, and Therefore Concedes, the Substantive Grounds for Declining Supplemental Jurisdiction

Defendant's Opposition never disputes that the PAGA claim substantially predominates over the FLSA claims under 28 U.S.C. § 1367(c)(2). It does not address the disparity between the PAGA claim's potential exposure of $91,975,000 (Motion at 5–6; Dkt. 120 at 2 n.1), and the comparatively modest FLSA collective claims. It does not address that resolving the PAGA claim requires adjudicating the rights of thousands of non-party aggrieved employees under an entirely separate statutory scheme. Moreover, it does not address the distinct proof requirements the PAGA claim presents.

Defendant's Opposition likewise never disputes that PAGA presents complex issues of California law under § 1367(c)(1), including the substantive complexity questions Defendant's own prior briefing raised regarding "willful misclassification" under Labor Code § 226.8 and the availability of PAGA's enhanced penalty tier absent proof of a "pattern or practice," or the still-developing manageability framework following *Estrada v. Royalty Carpet Mills, Inc.*, 15 Cal. 5th 582 (2024) as briefed in the Motion. (Motion at 6–8.) The Opposition also does not mention *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), or otherwise engage with the exceptional circumstances analysis under § 1367(c)(4) at all.

Defendant's only response is to insist that "[n]othing material has changed" since the Court's December 8, 2025 Order. (Opp. at 5.) That framing concedes the point rather than answering it: the December 8, 2025 Order is not neutral on the merits and it is itself Plaintiffs' strongest evidence for declination. Indeed, Defendant itself quotes the Court's assessment that there is "a significant chance that declining supplemental jurisdiction will be appropriate" because, among other reasons, the PAGA theories are "potentially novel or complex" and the state law issues would predominate over the remaining federal issues. (Opp. at 4 [quoting Dkt. 120].) Defendant nowhere argues otherwise. The Court

found the PAGA claim, "implicating a claimed right to over $90 million in penalties on behalf of thousands of non-parties, under a different standard for assessing employee classification, and involving numerous additional alleged Labor Code violations," to be "highly likely to 'substantially predominate.'" Dkt. 120 at 2–3 (quoted at Opp. at 4–5). Defendant cites this finding as though it favored retaining jurisdiction; it does the opposite. Nor can Defendant keep its own story straight: two pages after insisting that "[n]othing material has changed" (Opp. at 5), the Opposition identifies "[t]he only meaningful change" since the December 8, 2025 Order (Opp. at 6) is the filing of the State PAGA Action, while never mentioning the April 16, 2026 Case Management Conference and this Court's clear statements regarding declining supplemental jurisdiction or Defendant's own two demurrers in the State PAGA Action.

Further, the case for declination has grown stronger since December 2025. Defendant's own briefing in this Court insists that "willful misclassification" under Labor Code § 226.8 and PAGA's enhanced-penalty tier raise unresolved questions of statutory construction that no cited case has ever "considered or evaluated," (Motion at 7 [quoting Dkt. 118 at 23–25]), and Defendant's two demurrers in the State PAGA Action, filed April 3, 2026 and July 29, 2026, confirm that Defendant intends to litigate those state law questions unless it can keep the claims in the current jurisdictional limbo such that there is never an adjudication on the merits. (Lebe Decl. ¶¶ 11, 17.) Defendant fails to address any of this. An opposition silent on the merits of the very grounds a motion raises is not evidence that the merits favor the party staying silent.

**B. Plaintiffs' Motion Is Not Premature As It Implements Both the Procedure the Court Invited and the Course the Court Has Already Announced**

Defendant argues that the December 8, 2025 Order established an exclusive procedure under which only Defendant could raise supplemental jurisdiction, and only in connection with its own anticipated decertification motion. (Opp. at 4–5.) That misreads the Order. The language Defendant itself quotes is conditional and permissive: "*if* Papa intends to go forward with its motion to decertify the collective, it *may* include with that motion a request" regarding supplemental jurisdiction. (Opp. at 4–5 [quoting Dkt. 120 at 3, emphasis added].) The Court identified one vehicle, Defendant's supposed forthcoming decertification motion, while separately and explicitly directing the parties, in the

alternative, to "meet and confer and jointly propose an alternative procedural approach." Dkt. 120 at 3. Plaintiffs did exactly that: over the following six months, Plaintiffs asked Defendant no fewer than five times to stipulate to a resolution in either direction, dismissal of the PAGA claim here so it could proceed in the State PAGA Action or an affirmative exercise of supplemental jurisdiction by this Court. (Lebe Decl. ¶¶ 6, 8, 10, 12–14, Exs. 1, 3–6.) Defendant refused or ignored every proposal. Having rejected the very "alternative procedural approach" the Court invited, Defendant cannot now fault Plaintiffs for bringing the issue to the Court directly.

Further, at the April 16, 2026 Case Management Conference, this Court itself indicated that it was not inclined to exercise supplemental jurisdiction over the PAGA claim and that the claim should be litigated in the State PAGA Action. (Lebe Decl. ¶ 11.) Defendant's Opposition and its supporting declaration do not mention the April 16, 2026 Case Management Conference anywhere. That silence is telling: Defendant cannot maintain that "[n]othing material has changed" (Opp. at 5) while ignoring a material development in the case: this Court's own subsequent, more specific statement of its intent. Tellingly, Defendant does not engage with the Court's April 16, 2026 statements at all, even though Defendant's own counsel disputed Plaintiffs' characterization of those statements in writing months before this Motion was filed. (Lebe Decl. ¶ 14, Ex. 6.) If Defendant genuinely believed the Court's April 16, 2026 comments were as immaterial as its Opposition now suggests, it had no reason to dispute them in the first place.

The December 8, 2025 Order also does not require that Defendant's decertification motion be filed before this Court may address supplemental jurisdiction. The Order states only that Defendant "may" raise the issue in connection with such a motion, not that Plaintiffs must wait for Defendant to do so. Dkt. 120 at 3. Defendant's suggestion that the Court "did not otherwise grant Plaintiffs leave to file such motion" (Opp. at 4) supplies no basis for denying it. A district court's exercise of supplemental jurisdiction is not a benefit conferred on one party by leave of court; either party may raise § 1367(c) at any time, and a court may consider it *sua sponte*. Defendant cites no rule or authority requiring a plaintiff to obtain "leave" before asking the Court to address its own subject matter jurisdiction over a state law claim. The same is true of Defendant's claim to a "vested right to raise the issue" (Opp. at 5): the Opposition cites no authority for it, because there is none. A district court's § 1367(c) discretion is not

any party's property and courts may raise the question *sua sponte*. This is also not a disguised motion for reconsideration (Opp. at 1). The December 8, 2025 Order decided nothing about supplemental jurisdiction. It found the question "premature to conclude" either way and Defendant, tellingly, invokes neither Civil Local Rule 7-9 nor any reconsideration standard.

**C. Plaintiffs' Motion Is Not Forum Shopping As It Invokes the Tolling Mechanism Congress Created in 28 U.S.C. § 1367(d)**

Defendant devotes several pages to arguing that Plaintiffs are "forum shopping" because they seek a court-ordered dismissal under § 1367(c), which carries § 1367(d)'s tolling protection, rather than a voluntary dismissal, which does not. (Opp. at 6–8.) That is not forum shopping, it is following the statute Congress wrote. Section 1367(d) tolls the limitations period for a state claim while it is pending in federal court and for 30 days after it is dismissed, unless State law provides a longer period. 28 U.S.C. § 1367(d). The Supreme Court has described this as a "stop the clock" rule, enacted precisely so that a plaintiff whose claim is declined under § 1367(c) can refile in state court without a limitations bar, exactly the relief Plaintiffs request here. See *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018). If invoking a court-ordered § 1367(c) dismissal instead of a voluntary one were "forum shopping," no plaintiff could ever bring a § 1367(c) motion without inviting that label, a result Congress cannot have intended when it enacted a tolling provision for exactly that scenario. Defendant itself describes § 1367(d) as conferring "protections" (Opp. at 7); invoking a protection Congress enacted is not gamesmanship. And the Ninth Circuit has put the point beyond argument: in weighing the *Gibbs* values, a plaintiff's "subjective motivation for preferring a federal forum over a state forum" deserves "no weight," because "the motives of litigants in seeking Federal jurisdiction are immaterial." *Arroyo*, 19 F.4th at 1217 n.8 (quoting *Wheeler v. City & County of Denver*, 229 U.S. 342, 351 (1913)).

Indeed, *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1019 (C.D. Cal. 2011), the very case Defendant cites, confirms as much: tolling under § 1367(d) is available precisely where "a federal court declines to exercise supplemental jurisdiction over state law claims" under § 1367(c) and the claim is then "re-filed in state court." *Id. Centaur* denied tolling only because the plaintiff there sought to invoke it after a *voluntary* dismissal and refiling in a *different federal court* not a state court, and not a § 1367(c) order. Neither infirmity exists here: Plaintiffs seek an actual §

1367(c) order, and their PAGA claim is already pending in the State PAGA Action. *Centaur* undercuts, rather than supports, Defendant's forum-shopping argument.

Defendant's own authorities are inapposite. *Huerta v. Akima Facilities Mgmt., LLC*, No. 16-cv-00434-KAW, 2017 U.S. Dist. LEXIS 190044 (N.D. Cal. Nov. 15, 2017) denied a motion to disclaim *diversity* jurisdiction, a basis of jurisdiction the court found to exist independently of the pleadings, rendering § 1367(c)(3) inapplicable in the first place, after the plaintiff had affirmatively invoked and litigated under that jurisdiction for over a year, and where the plaintiff's stated reason for seeking state court was that his own counsel "has more experience" there. *Id.* at *15. None of that resembles this case. (Nor is *Huerta* a decision of "this Court," *contra* Opp. at 8—it is an unpublished decision of a different judge in a different case.) This Court, not Plaintiffs, first signaled that it would not retain jurisdiction over the PAGA claim, in its own December 8, 2025 Order and again at the April 16, 2026 Case Management Conference. (Lebe Decl. ¶¶ 5, 11.) Plaintiffs are not maneuvering to escape an adverse ruling on the merits because there has been none, nor are they seeking to find a more favorable judge. Plaintiffs are asking this Court to follow through on a course it has already announced, after six months of trying and failing to obtain Defendant's agreement to do so by stipulation.

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 U.S. Dist. LEXIS 26802 (N.D. Cal. Oct. 14, 2003), is not a supplemental jurisdiction case at all. It resolved a motion to transfer venue between two federal districts under 28 U.S.C. § 1404(a), after a related suit brought by the same counsel had been dismissed in another district following an adverse arbitration ruling. It says nothing about § 1367(c) or (d), and nothing about a plaintiff's choice between a federal and a state forum. The authority Defendant cites for the proposition that Plaintiffs are forum shopping in this context does not support it.

Defendant's remaining rhetoric is untethered to the record. The Opposition asserts that Plaintiffs received "multiple adverse rulings" and that Plaintiffs "readily admit they are seeking to simply relitigate these same claims in an alternative forum they perceive to be more favorable." (Opp. at 8.) Neither assertion carries a record citation, because neither is accurate. There has been no adverse ruling on the merits of any claim. The only substantive motion Plaintiffs filed was denied without prejudice, expressly without reaching the merits (Dkt. 120 at 1) and Plaintiffs "admit" no such thing. Plaintiffs seek to litigate

the PAGA claim in the forum this Court has already indicated is the appropriate one, in state court via the State PAGA Action.

Defendant's remaining points fare no better. Its assertion that Plaintiffs' individual Labor Code claims "would remain before this Court based on diversity jurisdiction" (Opp. at 8) is offered without citation to the operative complaint or to anything else and in any event it proves Plaintiffs' point: because this action continues here regardless, severance of the PAGA claim under Rule 21 is the proper mechanism, and the Opposition never addresses it. Defendant's suggestion that rulings on Plaintiffs' individual claims here could "bear directly on Plaintiffs' standing" in the State PAGA Action (Opp. at 8–9) is wrong on the law: an employee who has suffered a Labor Code violation does not lose standing as an "aggrieved employee" because her individual claims are resolved elsewhere. *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 80 (2020); *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1114 (2023). And any risk of "conflicting rulings" cuts against Defendant, not for it: on Defendant's preferred course, the same representative PAGA claim sits on two dockets indefinitely—three overlapping tracks instead of two.

What Defendant does not mention is that its own conduct mirrors the very gamesmanship it accuses Plaintiffs of. Defendant refuses to stipulate to a resolution in either direction (Lebe Decl. ¶¶ 6, 8, 10, 12–14), while simultaneously moving to abate or stay the State PAGA Action on the theory that the same claim belongs in this Court *(Id.* ¶¶ 9, 11, 17, Exs. 2, 8). Taken to its logical end, Defendant's position would leave Plaintiffs' PAGA claim with no forum in which it may proceed at all, precisely the jurisdictional limbo that the fairness factor identified in *Gibbs* forecloses. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

**D. Judicial Economy and Comity Favor Severance and Dismissal Now, Not Continued Jurisdictional Limbo**

Defendant argues that five years of litigation and this Court's familiarity with the case counsel against declination. (Opp. at 8–10.) But judicial economy is not measured by the calendar; it is measured by the judicial resources actually invested in resolving the claim at issue. This Court has not adjudicated a single substantive PAGA issue. It denied Plaintiffs' motion for partial summary adjudication without reaching the merits precisely because of the unresolved supplemental jurisdiction question. Dkt. 120 at 1–3. Severing and dismissing the PAGA claim now would waste no invested judicial resources, unlike

the circumstance the Ninth Circuit found problematic in *Arroyo*, where the district court had "effectively completed its adjudication of this entire case" before it considered the question of supplemental jurisdiction. *Arroyo*, 19 F.4th at 1204.

To the contrary, retaining jurisdiction indefinitely is itself the drain on judicial economy Defendant claims to be avoiding. Defendant concedes the premise: "the federal action will remain pending regardless of the outcome of Plaintiffs' Motion." (Opp. at 10.) Parallel proceedings therefore exist on any path; the only question is whether the PAGA claim proceeds in the one forum where it is already pending, or is parked on two dockets. Notably, Defendant's judicial economy argument cites no authority at all. (Opp. at 9–10.) Defendant's own demurrers argue that the State PAGA Action must be abated or stayed because the same claim remains pending here (Lebe Decl. ¶¶ 9, 11, 17), while Defendant simultaneously resists any order that would resolve that pendency by allowing the claim to proceed in one forum or the other. The result, if Defendant's position prevails, is a PAGA claim seeking tens of millions of dollars in penalties parked indefinitely on this Court's docket while an identical action sits abated in state court on Defendant's own motion, the opposite of efficient case management.

Comity likewise favors declination. "PAGA is purely a state law creature, and primary responsibility for developing and applying state law rests with the California courts." *Hernandez v. MasterCorp, Inc.*, 2020 U.S. Dist. LEXIS 239128, at *15 (C.D. Cal. Sept. 15, 2020); *see also Sheppard v. Staffmark Inv., LLC*, 2021 U.S. Dist. LEXIS 34726, at *8–9 (N.D. Cal. Feb. 23, 2021) (declining supplemental jurisdiction over PAGA claim). Severing the PAGA claim under Rule 21 and dismissing it without prejudice, a mechanism Defendant does not dispute, allows the state court already presiding over the State PAGA Action to resolve Defendant's alleged Labor Code violations on a single, comprehensive record, while Plaintiffs' FLSA and individual state-law claims proceed here undisturbed.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion, Plaintiffs respectfully request that the Court grant the Motion in its entirety and (1) sever the PAGA claim (the eleventh cause of action) from the remaining causes of action under Federal Rule of Civil Procedure 21; (2) decline to exercise supplemental jurisdiction over the severed PAGA claim under 28 U.S.C. § 1367(c)(1), (c)(2), and (c)(4); and (3) dismiss the severed PAGA claim without prejudice to Plaintiffs' ability to pursue that

claim in the State PAGA Action.

Dated: August 20, 2026

**LEBE LAW, APLC**

By: */s/ Jonathan M. Lebe*
Jonathan M. Lebe
Melissa M. Kurata

Attorneys for Plaintiffs Jennifer Pardo and Evangeline Matthews, individually and on behalf of all others similarly situated